No. 06-503 T
(Judge Christine O.C. Miller)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SALMAN RANCH LTD, a New Mexico Limited partnership,
and William J. Salman as Tax Matters Partner,

Plaintiff

v.

THE UNITED STATES,

Defendant

***MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
GROVER HARTT II
Senior Litigation Counsel
DAVID R. HOUSE
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366
(202) 514-9440 (facsimile)

Page

# TABLE OF CONTENTS


**Memorandum in Support of Defendant's Cross Motion for Summary Judgment And in Response to Plaintiff's Motion for Summary Judgment** . . . . . . . . . . . . . . . . . . . . 1

**Questioned Presented** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**I. Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**II. The Partners' Omission of $4,567,946 Million of Gross Income Qualifies as Substantial Pursuant to § 6501(e)** . . . . . . . . . . . . . . . . . . . . . . . . 12

**A. The Partners' Omission Meet Section 6501(e) Substantial Threshold** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*1. The Partners's 1999 Forms 1040 Omitted $4,567,946 of "Gross Income."* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*2. The partners 1999 Forms 1040 stated"Gross Income."* . . . . . . . 15

*3. The Partners' Omissions Greatly Exceeds Section 6501's 25 Percent Threshold* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**B. The Supreme Court's Holding in *Colony, Inc. V. Commissioner* Does Not Conflict with the Analysis or Result in this Case.** . . . . . . . 19

*1. The Partner's Income Is § 1231 Gain, But The Colony, Inc.'s Income Was Trade or Business Income Received from The Sale of Goods* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Page**

**(Continuation):**


2. *The Statute Governing the Partners' Assessment Is 26 U.S.C. § 6501, but the Statute Governing the Colony, Inc. Was § 6501's Predecessor in the Internal Revenue Code of 1939, 26 U.S.C. § 275* . . . . . . . . . . . . . . . . . . . . . . . . . 26

3. *The return at issue is the individual partners' Forms 1040.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**C. The Partners Did Not Adequately Disclose Their Omitted Income** . 32

1. *For purposes of § 6501(e)(1), the "return" on which the Disclosure must be made is that of the individual partners* . . . . . 32

2. *Section 6501(e) Requires Courts to Evaluate the Adequacy Of Return Disclosures, Not the Effectiveness the Taxpayer's Efforts at Concealment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

3. *The Partners' Disclosures Were Inadequate and Misleading* . . . 35

**III. The Partnership's Omission of $4,567,946 Million of Gross Income Qualifies as Substantial Pursuant to § 6229(c)** . . . . . . . . . . . . . . . . . . . . . . . . 41

**A. The Omission of $4,567,946 of Gross Income on the Partnership's Return Qualifies as Substantial Pursuant to § 6229(c)(2).** . . . . . . . . . . 41

1. *The form 1065 filed by Salman Ranch for the period ending December 31, 1999 omitted $4,567,946 Of "Gross Income."* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

2. *The stated gross income of Salman Ranch on its return for the period ending December 31, 1999, was $362,215* . . . . . . 43

3. *The omission of $4,567,946 from a return which stated gross income as $362,215 is substantial* . . . . . . . . . . . . . . 45

**Page**

**(Continuation):**

**B. Salman Ranch Failed to Adequately Disclose the Transactional Facts** . . . . . . . . . . 46

**Conclusion** . . . . . . . . . . 50

## TABLE OF AUTHORITIES

**Cases:**

*AD Global Fund v. United States*, Docket No. 06-5046 (Fed. Cir. March 2, 2007) . . . . . . . . . . 8

*BedRoc Ltd. L.L.C. v. United States*, 541 U.S. 176 (2004) . . . . . . . . . . 32

*Blum v. Stevenson*, 465 U.S. 886 (1984) . . . . . . . . . . 32

*CC & F Western Operations, L.P. v. Commissioner*, 273 F.3d 402 (1st Cir. 2001) . . . . . . . . . . 13, 33-34, 39, 42, 46

*Colm Producer v. United States*, 460 F. Supp. 2d 713 (D. N.D. Tex. 2006) . . . . . . . . . . 11

*Colony, Inc. v. Commissioner*, 26 T.C. 30, 31 (1965) . . . . . . . . . . 20, 21

*Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958). . . . . . . . . . . 19, 20, 26-29, 44-45

*Conn. Nat'l Bank v. Gerrnain*, 503 U.S. 249 (1992) . . . . . . . . . . 32

*Cruz v. Commissioner*, No. 15081-89, 1990 WL 178938, 60 T.C.M. (CCH) 1280 (Nov. 20, 1990) . . . . . . . . . . 31

*Davis v. Hightower*, 30 F.2d 549 (5th Cir. 1956) . . . . . . . . . . 42, 47

*Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103 (3d Cir. 2003) . . . . . . . . . . 7

*Estate of Fry v. Commissioner*, 88 T.C. 1020 (1987) . . . . . . . . . . 34, 39-40, 46

*In Re G-1 Holdings*, Civ. No. 02-3082, 2006 WL 259264 (D.N.J. Sept. 8, 2006) . . 34, 39

**Page**

**Cases (Continuation:**

*In Re G-1 Holdings*, Civ. 02–3082, 2006 WAL 3511150 (D.N.J. Dec, 5, 2006) . . . 35, 38

*Goodman v. United States,* 182, F.2d 915 (Ct. Cl. 1968) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Grant Oil Tool v. United States*, 381 F.2d 126 (Ct. Cl. 1961) . . . . . . . . . . . . . . . . . . . . . 25

*Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (Fed. Cl. 2006) . . . . . . . . . . . 32

*Harlan v. Commissioner*, 116 T.C. 31, 53-55 (2001), *acq.*
2002-7 I.R.B 496, 2002 WL 1814914 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Hoffman v. Commissioner*, 119 T.C. 140 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 31

*Insulglass Corp. v. Commissioner*, 84 T.C. 203, 210 (1985) . . . . . . 13-14, 17, 24, 42-44

*Klein v. Commissioner*, 537 F.2d 701 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Klien v. Commissioner*, 683 T.C. 585 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Lazerus v. United States*, 172 F Supp. 421 ( Ct. Cl. 1959) . . . . . . . . . . . . . . . . . . . . 23, 24

*Mecom v. Commissioner*, 101 T.C. 374, 382 (1993), *aff'd without published opinion*, 40 F.3d 385 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Norfolk Dredging Co. Inc. v. United States*, 375 F.3d1106 (Fed. Cir. 2004) . . . . . . . . . 32

*Park 'N Fly, Inc. v. Dollars & Fly, Inc.* 469 U.S. 189 (1985) . . . . . . . . . . . . . . . . . . . . . 32

*Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968). . . . . . . . . . . . . . . . . . 28- 29, 34, 46

*Quick's Trust v. Commissioner*, 54 T.C. 1336 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Retzer v. Wood*, 109 U.S. 185 (1883) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rhone Poulence Surfactants and Specialties, L.P. v. Commission*,
114 T.C. 533 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33-34

**Page**

**Cases (Continuation:**

*Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002) . . . . . . . . . . 7

*Schneider v. Commissioner*, T. C. Memo 1985-139; 1985 Tax Ct. Memo LEXIS 488* . . . . . . . . . . 13-14, 16, 24, 42-43, 44

*Walker v. Commissioner*, 46 T.C. 630 (1996) . . . . . . . . . . 42, 47-48

**Statutes:**

Internal Revenue Code of 1939 (26 U.S.C.):

§ 275 (1939) . . . . . . . . . . 26-27, 44-45

Internal Revenue of 1986 (26 U.S.C.):

§ 61 . . . . . . . . . . 13, 14, 16, 21

§ 701 . . . . . . . . . . 16

§ 702 . . . . . . . . . . 11, 16, 38

§ 703 . . . . . . . . . . 11, 38, 42

§ 722 . . . . . . . . . . 11

§ 733 . . . . . . . . . . 11

§ 752 . . . . . . . . . . 11

§ 754 . . . . . . . . . . 4

§1231 . . . . . . . . . . 11, 20, 22, 25

§ 1284 . . . . . . . . . . 30

§ 6111 . . . . . . . . . . 40

§ 6226 . . . . . . . . . . 15

Page

**Statutes (Continuation):**

§ 6229 . . . . . . . . . . *Passim*

§ 6501 . . . . . . . . . . *Passim*

§ 6707A . . . . . . . . . . 40

§ 7701 . . . . . . . . . . 16

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1284(a), 111 Stat. 788 (1997) . . . . . . . . . . 30

**Miscellaneous:**

Fed. R. Civ. P.8(c) . . . . . . . . . . 8

Federal Claims Court Rule 56 . . . . . . . . . . 1

Notice 2000-44, 2000-2 C.B. 255 . . . . . . . . . . 10, 40

Treasury Regulations (26 C.F.R):

§ 1.61 . . . . . . . . . . 13

§ 1.702-1 . . . . . . . . . . 31

§ 301.6111-1T . . . . . . . . . . 40

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

(Judge Christine O.C. Miller)

No. 06-503

SALMAN RANCH LTD, a New Mexico Limited partnership,
and William J. Salman as Tax Matters Partner,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

MEMORANDUM IN SUPPORT
OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT
AND IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has moved for summary judgment on the grounds that the notice of Final Partnership Administrative Adjustments ("FPAA") was mailed to Salman Ranch, Ltd, (Salman Ranch) untimely.[1] The United States opposes that motion and cross-moves for partial summary judgment pursuant to Rule 56(a) of the Rules of the United States Court of Federal Claims (RCFC), on the grounds that the FPAA was mailed timely.

The partners of Salman Ranch are the true taxpayers in this case. As a result of their use of a tax shelter of the type known as Son of BOSS, the taxpayers omitted $4,567,946 of income from their individual Form 1040 tax returns. For each of the partners, the amount of income

[1]Although reference is made in this Memorandum to "partners," the "partnership," and various purported entities, defendant does not concede that, under the applicable law, a viable partnership or the alleged entities existed.

omitted from their return was substantial with the result that the 6-year statute of limitations of 26 U.S.C. § 6501(e)[2] for assessing taxes was open for the partners' 1999 taxable year at the time the FPAA was issued. Although their use of the Son of BOSS tax shelter resulted in the omission of $4,567,946 of income, the partners' returns give no indication that any shelter transaction was involved at all. At best, their reporting was sloppy, incomplete, and misleading. At worst, it was designed to deceive. Either way, the partners failed to honor their self-reporting responsibility. This failure made it much more difficult for the IRS identify and ferret out their tax shelter transaction. The 6-year statute of §6501(e) applies and the FPAA in this case was timely mailed.

In the alternative, the partnership substantially omitted income from the partnership's return, with the result that the extension of the statute of limitations of § 6229(c)(2) applies giving the Service 6 years from the date the partnership return was filed to assess the taxes resulting from the determinations made by the FPAA. Just as the individual returns neglected to accurately report the Son of BOSS transaction, the partnership return of Salman Ranch failed to report that it was involved in any way with the Son of BOSS transaction the partners now claim was closed by the partnership. The 6-year extension of § 6229(c)(2) applies and the FPAA in this case was timely mailed.

## QUESTIONS PRESENTED

1. Whether the individual partners substantially omitted an amount of income which exceeded the gross income stated on their Forms 1040 filed for 1999 by 25%, with the result that the 6-year extension of the statute of limitations of § 6501(e) applies.

a. How much did the individual partners omit from gross income?

---

[2]All references to code sections are to the Internal Revenue Code of 1986, 26 U.S.C., unless otherwise designated.

b. How much gross income was stated on the partners' individual Forms 1040?

c. What did the partners disclose on their Forms 1040?

2. Whether the partnership substantially omitted an amount of income which exceeded the gross income stated on its Form 1065 filed for the period ending December 31, 1999, by 25%, with the result that the 6-year extension of § 6229(c)(2) applies.

a. How much did the partnership omit from gross income?

b. How much gross income was stated on the partnership's Form 1065?

c. What did the partnership disclose on its Form 1065?

## STATEMENT[3]

On January 1, 1987, Salman Ranch Ltd ("Salman Ranch") was formed and individuals who owned interests in a ranch in Mora County, New Mexico transferred their interests in the ranch to Salman Ranch in exchange for partnership interests. (Pl. Prop. Finding 7.) The principal business activity of Salman Ranch was "ranching" and its principal product or service was "crops & cattle." (Def. Prop. Finding 1.) On or about October 8, 1999, the partners in Salman Ranch entered into short sales of U.S. Treasury Notes which resulted in total proceeds of approximately $10,982,373. (Pl. Prop. Findings 10,11.) On or about October 8, 1999, or October 13, 1999, the partners allege they transferred the short positions and cash to Salman Ranch. (Pl. Prop. Finding 12.) Shortly after the transfers of cash and short positions to Salman Ranch, Salman Ranch closed the short position on the Treasury Notes at a cost of $10,980,866. (Pl. Prop. Finding 13).

In November of 1999, certain partners contributed portions of their partnership interests in Salman Ranch to three family partnerships. (Pl. Prop. Finding 15-17.) The transfer caused a

---

[3]The United States asserts the following facts for summary judgment purposes only. The United States may argue during the trial of this case's merits that the transactions described in this brief should be re-characterized or set aside and ignored.

technical termination of Salman Ranch as a partnership and Salman Ranch filed final partnership return for the period ending November 30, 1999. (Gov. Prop. Findings 4-5.) The final return filed by Salman Ranch for November 30, 1999, made an election pursuant to § 754 of the Internal Revenue Code. (Gov. Prop. Finding 6.) Nowhere in the return filed by Salman Ranch Ltd., for the period ending November 30, 1999, is there any reference to the assumption by Salman Ranch of the partners' liability to close the short positions in Treasury Notes. (Gov. Prop. Finding 7.) Nowhere in the return filed by Salman Ranch Ltd., for the period ending November 30, 1999, is there any reference to the partners' alleged contribution of proceeds from the short sale of Treasury Notes. (Gov. Prop. Finding 8.) Nowhere in the return filed by Salman Ranch Ltd., for the period ending November 30, 1999, is there any reference to Salman Ranch closing the short position of Treasury Notes. (Gov. Prop. Finding 9.) The return filed by Salman Ranch for the period ending November 30, 1999, does not contain any Form K-1 issued to any partner which reports a loss to any partner resulting from closing the short position in Treasury Notes. (Gov. Prop. Finding 10.)

On or about April 16, 2000, Salman Ranch filed its return for the period ending December 31, 1999. (Gov. Prop. Finding 15.) On the Form 1065 filed by Salman Ranch for the period ending December 31, 1999, Salman Ranch reported the sale of the ranch on Form 4797, and reported the gross proceeds from the sale as $7,188,588, and the cost or other basis as $6,850,276, with a gain of $38,312. (Gov. Prop. Finding 16.) The basis of the ranch as reported on Form 4797 attached to Salman Ranch's Form 4797 included the amounts from the alleged contribution of the proceeds from the short sale of Treasury Notes referred to in plaintiff's Proposed Finding 12, but was not reduced by the liability to close that short position. (Gov. Prop. Finding 17.) Nowhere on the partners' Forms 1040 are the gross proceeds from the sale of the ranch reflected.

The only item on the partners' returns indicating the sale of the ranch is the partner's share of the net gain, as calculated by the partnership. (Gov. Prop. Finding 36.)

On April 10, 2006, the Service issued an FPAA which made adjustments to the Form 1065 filed by Salman Ranch for the period ending December 31, 1999. (Gov. Prop. Finding 18.) Among the adjustments to Salman Ranch's Form 1065 made by the FPAA were an increase in gain from the sale of the ranch in the amount of $4,567,949, resulting in part from the reduction in basis in the ranch. (Gov. Prop. Finding 19.)

In each partners' Form 1040 filed for 1999, there is a reference on Schedule D to a transaction in Treasury Notes. The Schedule D for each partner reflects that the treasury notes were acquired on "various" dates and sold on October 8, 1999 for a small capital loss. (Gov. Prop. Finding 11.) There is no indication in the partners' individual Form 1040 returns filed for 1999 that the partnership had assumed the liability to cover the short position in Treasury Notes. (Gov. Prop. Finding 12.) There is no K-1 attached to the partners' individual Form 1040 returns filed for 1999 which reported the loss incurred when the partnership closed the short position in Treasury Notes and, in turn, passed that loss through to the partners as a partnership transaction. (Gov. Prop. Finding 13.) There is no indication in the partners' individual Form 1040 returns filed for 1999 that Salman Ranch had closed the short position in Treasury Notes for a loss. (Gov. Prop. Finding 14.)

William J. Salman held a partnership interest in Salman Ranch. (Gov Prop. Finding 20.) The William J. Salman Family Partnership also had a partnership interest in Salman Ranch, and Williams J. Salman was a partner in the WJS. (Gov. Prop. Finding 22.) William J. Salman's total share of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $787,234. (Gov. Prop. Finding 23.) On or about April 15, 2000, William J. Salman filed his

individual income tax return, Form 1040, for the period ending December 31, 1999. (Gov. Prop. Finding 24. ) William J. Salman stated gross income on his individual return for the period ending December 31, 1999, of approximately $208,000, without taking into account losses reported on schedule E of that return. (Gov. Prop. Finding 25.) If the adjustments made by the FPAA are determined to be correct, William J. Salman omitted from income an amount which is in excess of 25% of the amount of gross income stated on his individual Form 1040. (Gov. Prop. Finding 26.)

David M. Salman held a partnership interest in Salman Ranch as of December 31, 1999. (Gov. Prop. Finding 27.) The William J. Salman Family Partnership was also a partner in Salman Ranch as of December 31, 1999, and David J. Salman was a partner in WJS. (Gov. Prop. Finding 21, 28.) David M. Salman's total share of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $252,032. (Gov. Prop. Finding 29.) On or about August 17, 2000, David M. Salman filed his individual tax return, Form 1040, for the period ending December 31, 1999. (Gov. Prop. Finding 30.) David M. Salman stated gross income on his individual return for the period ending December 31, 1999, of approximately $193,224, taking into account only gross proceeds reported on schedule C and not taking into account losses reported on schedule E of that return. (Gov. Prop. Finding 31.) If the adjustments made by the FPAA are determined to be correct, David M. Salman omitted from income an amount which is in excess of 25% of the amount of gross income stated on his individual Form 1040. (Gov. Prop. Finding 32.)

On the Form 1065 filed by Salman Ranch for the period ending December 31, 1999, Salman Ranch stated its gross income as $362,215. (Gov. Prop. Finding 33.) If the adjustments to Salman Ranch's partnership return as determined by the FPAA are upheld, Salman Ranch omitted from income stated on its Form 1065 for the period ending December 31, 1999, the

amount of $4,567,946. (Gov. Prop. Finding 34.) If the adjustments to Salman Ranch's partnership return as determined by the FPAA are upheld, Salman Ranch omitted from income an amount which is in excess of 25% of the amount of gross income stated on its return. (Gov Prop. Finding 35.)

**ARGUMENT**

**I. INTRODUCTION**

It is undisputed that, if the general 3-year year statute of limitations of § 6501(a) with respect to the assessment of taxes applies is extended to 6 years in this case, the FPAA was timely mailed and the statute of limitations on assessment is suspended pursuant to § 6229(d)(1).[4]

The bar of the statute of limitations is an affirmative defense and, having raised this defense, plaintiff has the burden of proving it.[5] If Salman Ranch establishes a prima facie case that the three-year limitation period has expired, the United States has the burden of going forward to establish that either the partners or, in the alternative, Salman Ranch substantially omitted from their 1999 returns an item of income within the meaning of § 6501(e)(1)(A) as to the individual partners, or in the alternative, § 6229(c)(2) as to the partnership.[6] Once the United States makes this showing, the burden of going forward with the evidence shifts back to Salman

---

[4]In this case, William J. Salman and David M. Salman filed their returns on or after April 15, 2000. The FPAA was mailed on April 10, 2006 - less than six years later. Similarly, Salman Ranch filed its Form 1065 on after April 15, 2000. Thus, if a 6-year statute of limitations applies, the FPAA was timely mailed.

[5]*Hoffman v. Commissioner*, 119 T.C. 140, 146 (2002) (taxpayer contesting six-year statute of limitations under § 6501(e) has burden of proving that three-year statute under § 6501(a) applies). *See also Retzer v. Wood*, 109 U.S. 185, 187-88 (1883); *Mecom v. Commissioner*, 101 T.C. 374, 382 (1993), *aff'd without published opinion*, 40 F.3d 385 (5th Cir. 1994); Fed. R. Civ. P. 8(c); *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003); *Robinson v. Johnson*, 313 F.3d 128, 134-36 (3d Cir. 2002).

[6] *Hoffman*, 119 T.C. at 146.

Ranch, which must establish that the partners' 1999 Forms 1040 disclosed the Son of BOSS Transaction "in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." Salman Ranch also has the burden of establishing that it disclosed on its Form 1065 the Son of BOSS transaction.[7] "Notwithstanding the shifting of the burden of going forward, the burden of ultimate persuasion never shifts from the party who pleads the bar of the period of limitations," namely, Salman Ranch.[8] As shown below, Salman Ranch cannot meet this burden.

The Government has two alternative arguments with respect to the question of whether the statute of limitations for assessment of tax is extended to 6 years with the result that the issuance of the FPAA in this matter was timely. Although the statute of limitations for the assessment of tax is § 6501(a), each argument looks to a different statute, and, therefore, a different return to determine whether that general statute of limitations is extended to 6 years. If either 6-year extension of the statute is applied, the FPAA was timely mailed.

Generally, 26 U.S.C. § 6501(a) gives the IRS three years to assess a tax deficiency. The Federal Circuit determined in *AD Global Fund v. United States*[9], that, for partnership items,

---

[7] § 6501(e)(1)(A)(ii); *Hoffman*, 119 T.C. at 146. Making Salman Ranch bear the burden of defending the reporting of the transaction on its partners' and its own return is supported by "several compelling rationales: the vital interest of the government in acquiring its lifeblood, revenue . . . ; the taxpayer's readier access to the relevant information . . . ; and the importance of encouraging voluntary compliance by giving taxpayers incentives to self-report and to keep adequate records in case of dispute. . . . These are powerful justifications not to be disregarded lightly." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 21 (2000) (internal citations omitted). Unlike Salman Ranch, the United States was not a party to the 1999 Transaction and did not choose how to report the 1999 Transaction (or not) on Salman Ranch's or the partners' 1999 returns.

[8] *Hoffman*, at 146-47.

[9] *AD Global Fund v. United States*, Docket No. 06-5046 (Fed. Cir. March 2, 2007).

§ 6501 provided the statute of limitations within which the FPAA must issue, unless § 6229(a) extended that period. Section 6501(e) extends the assessment period of § 6501(a) to six years, however, where an individual partner makes a substantial omission from gross income on the partner's Form 1040. As presented below, § 6501(a) specifies that the return to be considered in determining whether there was a substantial omission from gross income under § 6501(e) is the individual partner's Form 1040. In this case the partners substantially omitted income from their individual Forms 1040 for 1999 with the result that the statute of limitations is extended to 6 years pursuant to § 6501(e).

In the alternative, § 6229(a) provides that the normal 3-year statute of limitations of § 6501(a) shall not expire before 3 years from the date the partnership return is filed. Section 6229(c)(2)(emphasis added) provides:

> If any partnership omits from gross income an amount properly included therein which is in excess of 25 percent of the amount of gross income stated on ***its*** return, subsection (a) shall be applied by substituting "6 years" for "3 years".

Therefore, pursuant to § 6229(c)(2), in determining whether the normal statute of limitations shall not expire before 6 years from the date the partnership return was filed, the return to be considered is the partnership's return. In this case, Salman Ranch substantially omitted an amount of income from its Form 1065 for 1999, so the 6-year extension of § 6229(c)(2) applies.

These two provisions which extend the normal 3-year statute of limitations of § 6501(a) to a 6-year period are designed to provide the IRS with more time to discover errors in a return where a taxpayer has omitted a "substantial" amount of income. The omitted income is substantial, under both provisions, if it exceeds 25% of gross income stated on the return. Failing to give the IRS the additional time prescribed by the Internal Revenue Code would turn the nation's self-reporting tax system on its head. Instead of largely relying upon taxpayers' reporting

to initially identify errors, the IRS would have to question the nature and amount of every return's reporting. Such a system would compel the IRS to audit every tax return filed by every taxpayer. The federal budget could not bear such a system's cost, and America's taxpayers would resent its intrusiveness.

This case is a striking example of why the six-year period is warranted. Through their various partnerships and a technical termination, the partners used an illogical transaction and a hollow legal interpretation to eliminate $4,567,946 million of income. According to plaintiffs' complaint and proposed findings, each partner entered into a short sale of U.S. Treasury Notes whereby they received cash in return for the obligation to provide Treasury Notes in the future. The partners then allegedly contributed the cash received as well as the obligation to close the short sale to Salman Ranch. For that alleged contribution of cash, the partners increased their outside basis in Salman Ranch by the cash, but did not reduce it by the assumption of Salman Ranch of the liability to close the short sale. The partners then allege that Salman Ranch closed the short sales, and, through a series of partnership accounting techniques, including a technical termination of the partnership by the transfer of some individual partnership interests to three family partnerships, transferred this inflated "outside" basis to Salman Ranch's basis in the ranch property. This is a variant of the Son of BOSS tax shelter described in Notice 2000-44.[10]

Among the fatal flaws in the Son of Boss transaction is the refusal to properly treat the partnership's assumption of the partners' liability to close the short sale. When a partner contributes an asset and a liability to a partnership, the partner's basis in the partnership is usually

[10] 2000-2 C.B. 255.

increased by the partner's carryover basis in the asset, [11] decreased by the liability assumption,[12] and increased by the partner's share of the liability assumed.[13] When the partnership later satisfies the liability, the partner's basis is decreased by the partner's share of the liability that is satisfied.[14] Thus, if the obligation to close the short sale was a liability, the basis adjustments from the proceeds and obligation contribution would have essentially offset each other providing no increase in basis. At least one District Court has agreed with the Government that the obligation to close the short sale is a liability for purposes of § 752.[15]

It is the inflated basis resulting from the Son of BOSS transaction which omitted gain from the sale of the ranch in the amount of $4,567,946. That omitted gain should have been reported by the partnership on its Form 1065 and each partner should have reported their individual share of that gain on their individual Forms 1040.[16]

As explained in the next sections of this brief, the dearth of information provided by the partners's individual returns did not "adequate[ly]...apprise the Secretary of the nature and amount" of this $4.5 million omission.[17] Although the omission's nature hinged upon a short sale of U.S. Treasury Notes and the alleged contribution to Salman Ranch of the proceeds and

---

[11] 26 U.S.C. § 722 (partner's basis in partnership equals value of contributed proceeds plus partner's adjusted basis in contributed property).

[12] 26 U.S.C. §§ 752(b) (partnership's assumption of partner's debt treated like money distribution), 733(1) (money distribution decreases partner's basis in partnership).

[13] 26 U.S.C. § 752(a).

[14] 26 U.S.C. § 752(b).

[15] *Colm Producer v. United States*, 460 F. Supp. 2d 713 (D. N.D. Tex. 2006).

[16] Section 703(a) provides that the taxable income of a partnership shall be computed in the same manner as in the case of an individual and that the items specified in § 702(a) shall be separately stated. Section 702(a)(3) provides that, in determining his income tax, each partner shall take into account his distributive share of the partnership's gain and losses from sales or exchanges of § 1231 property.

[17] 26 U.S.C. § 6501(e)(1)(A)(ii).

obligation to close the short sale, the partners' reporting failed to give even a hint that a short sale of Treasury Notes and contribution of the obligation to close the short position ever occurred. In fact, their reporting made it appear that the obligation never existed and that Salman Ranch was never involved in the transaction in any way.

## II. THE PARTNERS' OMISSION OF $4,567,946 MILLION OF GROSS INCOME QUALIFIES AS SUBSTANTIAL PURSUANT TO § 6501(e).

The partners omitted $4,567,946 of income from returns that reported a net gain of only $338,312 on the sale of the ranch. Each partner should have reported his share of the omitted gain from the sale of the ranch. The following analysis explains why that omission is substantial, entitling the United States to the six-year statute of limitations under 26 U.S.C. § 6501(e).

### A. The Partners' Omissions Meet Section 6501(e)'s Substantial Threshold.

Section 6501(e)(1)(A) of the Internal Revenue Code provides:

> (e) Substantial omission of items. – Except as otherwise provided in subsection (c)–
>
> (1) Income taxes.--In the case of any tax imposed by subtitle A–
>
> (A) General rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

26 U.S.C. § 6501(e)(1)(A).[18]

Section 6501(e) establishes an omission calculation that includes two numbers: omitted gross income and stated gross income. These two numbers are inserted into a fraction—omitted gross income is the numerator and stated gross income is the denominator. If the resulting

---

[18]The legislative history relevant to the enactment of this provision is not especially illuminating.

fraction exceeds 25 percent, then the omission qualifies as "substantial" and § 6501(e) replaces the taxpayer's general three-year assessment limitation period with a six-year period. As explained below, the partners' omission easily qualifies as substantial.

*1. The partners's 1999 Forms 1040 Omitted $4,567,946 of "Gross Income."*

When determining how much "gross income" was omitted, one must first determine the definition of "gross income." Courts generally look for that definition in 26 U.S.C. § 61. Section 61 provides the general definition of "gross income" for all Internal Revenue Code provisions.[19] Section 6501(e) provides an exception from section § 61's definition for sales of goods or services by a trade or business, but section §61's general definition applies to all other taxpayers – including individual taxpayers like the partners in Salman Ranch.[20] Thus, when defining "gross income" for § 6501(e) purposes, courts start with § 61.

Under section 61, *gain* from the sale of real or personal property is included in gross income, not *proceeds*. Section 61(a) defines "gross income" as "all income from whatever source derived." To illustrate this definition, § 61 provides a non-exclusive list of items that qualify as gross income. Included in that list are "*[g]ains* derived from dealings in property."(emphasis added) Treas. Reg. § 1.61-6(a) further defines these property gains as "the excess of the amount

---

[19] *See, e.g., Insulglass Corp. v. Commissioner*, 84 T.C. 203, 210 (1985); *Schneider v. Commissioner*, 1985 Tax Ct. Memo LEXIS 488, at *9-11 ("'gross income' has a well established meaning in the revenue laws, denoting statutory gross income as defined by section 61.").

[20] 26 U.S.C. § 6501(e)(1)(A)(i); *Insulglass*, 84 T.C. at 210; *Schneider*, 1985 Tax Ct. Memo LEXIS 488, at *9. *See also*, *CC & F Western Operations, L.P. v. Commissioner*, 273 F.3d 402, 406 n.2 (1st Cir. 2001) (at least doubtful that gross receipts test applies to activities other than the sale of goods and services).

realized over the unrecovered cost or other basis for the property sold or exchanged." In other words, gross income from property sales equals proceeds minus basis, not proceeds alone.[21]

The gain reported from the sale of ranch totaled 338,312.[22] Salman Ranch should have recognized and reported a gain of $4,906,261.[23] As explained above, the partners used a Son of BOSS tax shelter transaction to inflate their basis in the ranch. This inflated basis effectively hid $4,567,946 of gain from the sale of the ranch from that gain reported on the partnership return. All of that inflated basis is eliminated, however, by the FPAA issued to Salman Ranch.[24] The FPAA invalidates the Son of BOSS transaction; reduces the partners' outside basis in Salman Ranch by eliminating the artificial basis attributable to the short sale transaction; and increases the gain which should have been reported on the sale of the ranch. Thus, Salman Ranch omitted at least $4,567,949 of gross income from its reporting of the gain from the sale. The individual partners should have, but did not, report their respective shares of that $4,567,949 omitted gain. The omissions of their shares of the $4,567,949 unreported gain resulted, for each partner, in a substantial omission of income.

If we use the return of William J. Salman as an example of the individual partner's reporting, his Form 1040 for the period ending December 31, 1999, reported gain from the sale of

[21] *Insulglass*, 84 T.C. at 210; *Schneider*, 1985 Tax Ct. Memo LEXIS 488, at *10 ("The statute and underlying regulations are clear in requiring that a gain on the sale of property be included in gross income...Nowhere in the definition of gross income under section 61 is there authority to indicate that capital losses or the gross proceeds in a capital loss situation are to be included in the computation of gross income.").

[22] Gov. Prop. Finding 16.

[23] Gov. Prop. Finding 19.

[24] *See* FPAA.

the ranch as $58,312.[25] That amount should have been increased, however, by William J. Salman's share of the unreported gain from the sale of the ranch. The amount of gain from the sale of the ranch omitted from William J. Salman's Form 1040 was $787,324.[26] Similarly, David M. Salman reported the amount of $18,666, as his share of the gain from the ranch.[27] David M. Salman's share of the unreported gain is $252,032.[28]

*2. The partners 1999 Forms 1040 Stated "Gross Income."*

Determining the amount of the partners's stated gross income requires the Court to answer two questions: (1) where must gross income be stated; and (2) what qualifies as stated gross income. Section 6501's plain language answers the first question. Section 6501(e) refers to "gross income stated in *the return*." Section 6501(a) defines the "return" as follows:

> *For purposes of this chapter*, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).[29]

Here, the partners are the taxpayers, and the return required to be filed is their Form 1040. While Salman Ranch's partnership return, Form 1065, relates to the individual partners' Forms 1040,

---

[25]Gov. Prop. Finding 24. The United States is using William J. Salman's and David M. Salman's omitted gain and reporting for purposes of this Motion. Under the argument that the 6-year statute of limitations for assessment under § 6501(e) was open, a finding that one partner has substantially omitted income on his Form 1040 is sufficient for the FPAA to be considered timely mailed as to that partner. The Government is presenting its analysis as to two of the partners. If the remaining absentee partners wish to appear as parties to assert a statute of limitations argument as to each of them, they are already parties to this case. § 6226(c). The Government has the returns of all individual partners but one (which was destroyed) and this analysis results in a substantial omission as to each partner for which it has a return. If the Court needs that analysis provided as to each partner for which it has a return, the Government will provide it.

[26]Gov. Prop. Finding 23.

[27] Gov. Prop. Finding 31.

[28]Gov. Prop. Finding 29.

[29] 26 U.S.C. § 6501(a) (emphasis added).

§ 6501(a) expressly provides that Salman Ranch's Form 1065 is not a "return" in which gross income is stated for purposes of § 6501(e).

To explain, § 6501(a) refers to "the return required to be filed by the taxpayer." Salman Ranch is not a "taxpayer" because partnerships are not subject to income taxation.[30] Moreover, § 6501(a) excludes "a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit." Salman Ranch is a "person" under the Code.[31] The partners in Salman Ranch receive items of income, gain, loss, deduction or credit from Salman ranch pursuant to § 702(a). Section 6501(a) thus excludes Salman Ranch's Form 1065 from consideration as a "return" for purposes of § 6501(e)(1)(A). Therefore, the partners' stated gross income may only be found on their individual Forms 1040.

The answer to the second question – what qualifies as stated gross income – we turn to § 61. Within its general definition of gross income, § 61 includes items like gains, interest, and dividends. In the case of *Schneider v. Commissioner*, the Tax Court held that section 6501 gross income from a real estate sale equaled net gain, not proceeds.[32] In that case, the Schneiders reported $75,774 of wages, interest and Schedule C income, and a $4,250 loss from a sale of real property.[33] The proceeds from the real estate sale equaled $18,500, and the basis equaled $22,750.[34] The IRS argued that the Schneiders were subject to section 6501's 6-year limitation

---

[30] 26 U.S.C. § 701; *see also* 26 U.S.C. § 7701(a)(13) ("The term 'taxpayer' means any person subject to any internal revenue tax.").

[31] 26 U.S.C. § 7701(a)(1) ("The term 'person' shall be construed to mean and include an individual, a trust, estate, *partnership*, association, company or corporation.") (emphasis added).

[32] *Schneider,* 1985 Tax Ct. Memo LEXIS 488.

[33] *Id.* at *3 - *4.

[34] *Id.* at *4.

period because the IRS had discovered $23,184.42 of unreported income.[35] According to the IRS, this omission equaled more than 25 percent of reported gross income because reported gross income equaled only $75,774. The Schneiders, on the other hand, argued that the $18,500 of gross proceeds from their real estate sale should be included in total reported gross income.[36] Even though the Schneiders recognized a net loss from the real estate sale, the Schneiders argued that section 6501 applies to gross receipts instead of net income. If the IRS had included the $18,500, their omission would have equaled less than 25 percent because total reported income would have equaled $92,274. The Tax Court agreed with the IRS. After reviewing section 6501(e) and the legislative history underlying section 6501(e), the Tax Court concluded that the computation of section 6501(e) non-business gross income is "unaffected by...gross proceeds derived from dealing in real property."[37] Instead, non-business gross income includes net gain.[38] Thus, the Tax Court held that the Schneiders omitted substantial gross income.[39] For section 6501(e)'s purposes, therefore, gross proceeds are not included in stated income.

Similarly, in *Insulglass v. Commissioner*,[40] the taxpayer contended that stated gross income included the gross proceeds of $5,150,585 from the sale of commodities as reported on schedule D, and not the net gain of $202,202 reported on the return. The taxpayer was an investor and not in the trade or business of selling commodities. Because the taxpayer was not in the trade

---

[35] *Id.* at *5.
[36] *Id.* at *7.
[37] *Id.* at *11.
[38] *Id.* at *10.
[39] *Id.* at *15.
[40] 84 T.C. 203 (1985).

or business of selling commodities, only the net gain reported would be considered in computing stated gross income.

Applying the above two principles to our example of William J. Salman's Form 1040 for the period ending December 31, 1999, results in"stated" income as follows[41]:

| Line from 1040 | Income | amount reported | |
|---|---|---|---|
| 7 | wages | 76,016 | |
| 8 | interest | 31093 | |
| 9 | dividends | 13,398 | |
| 12 | schedule C | 4,800 | |
| 13 | capital gains | 72,034 | |
| 17 Sched. E | partnership | 4,666 | |
| Total income stated on return: | | | 208,385 |

Similarly, the stated income of David M. Salman is as follows:

| Line from 1040 | Income | amount reported |
|---|---|---|
| 7 | wages | 147,407 |
| 8(a) | interest | 4082 |
| 9 | dividends | 3,043 |
| 10 | refund | 124 |
| 12 | Schedule C | 3,832 |
| 13 | capital gain | 34,363 |
| 17 Schedule E | partnership | 1929 |
| 21 | other income | 2,400 |

---

[41]The amount stated for Schedule E is exclusive of any losses, even though some of the activities are clearly not trade or businesses. Section 6501(e)(1)(A)(i) provides that in the case of a trade or business, only the total amounts received or accrued from the sale of goods or services prior to diminution by the costs of such sales or services need be included in income. For purposes of this motion, the United States will assume that the schedule E activities are trade or business activities so that any deductions from income stated on the Schedules shall not reduce the stated income. The omission from income due to the Son of BOSS transaction and subsequent sale of the ranch is so substantial, that any dispute over whether a schedule E transaction would be a trade or business is immaterial. Line 12 consists of Schedule C amounts from the conduct of a trade or business. The amount for line 12 stated in these tables is the gross receipts without diminution for cost of sales or services pursuant to § 6501(e) (1)(A)(i).