Total income stated on return: 193,224

*3. The partners' Omissions Greatly Exceeds Section 6501's 25 Percent Threshold*

The last step in section 6501(e)'s substantial-omission determination is calculating the omission fraction: omitted income/stated income. If the fraction calculates a percentage higher than 25 percent, the omission is substantial, and section 6501(e)'s six-year assessment limitations period applies. The partners' fractions greatly exceeds 25 percent across the board. Again returning to our example of William J. Salman, the omitted income was $787,234. The stated income on William J. Salman's return was $208,385. The percentage of the omitted/stated income for William J. Salman is 377%. With respect to the example of David M. Salman, the omitted income was $252,032. The stated income on David M. Salman's return was $193,224. The percentage of the omitted/stated income for David M. Salman is 130%. Similar omissions occur in each partner's return. In fact, these omissions are so far in excess of the 25% threshold of § 6501(e) that quibbling over distinct items in the Forms 1040 will not present an issue of material fact resulting in an omission below the 25% threshold.

Consequently, section 6501(e)'s six-year limitations period applies to each partner's 1999 tax year, the FPAA in issue was timely, and partial summary judgment on the limitations issue should be granted in the United States' favor.

**B. The Supreme Court's Holding in *Colony, Inc. v. Commissioner* Does Not Conflict With the Analysis or Result in This Case.**

Plaintiff contends, relying on *Colony, Inc. v. Commissioner*[42], that there was no omission from income because the full amount of the sale proceeds was stated on the partnership return. As stated above, § 6501(a) provides that the return which is considered for purposes of the

---

[42] *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958).

computation of substantial omission of gross income under § 6501(e) is the individual Form 1040. In the Forms 1040 filed by the partners, the gross proceeds from the sale of the ranch are not reflected. In *Colony*, the return being considered for the computation of stated gross income was the corporate return – on which was stated the gross proceeds. Thus, *Colony* is inapplicable to the discussion of whether the individual partners omitted a substantial amount of income under § 6501(e).

Even if the partnership's Form 1065 could be considered for purposes of § 6501(e), and it cannot, plaintiff's reliance is misplaced because two of *Colony's* characteristics distinguish it from this case: (1) the income evaluated; and (2) the statute applied.

*1. The Partner's Income is § 1231 Gain, But The Colony, Inc.'s Income Was Trade or Business Income Received From the Sale of Goods*

In *Colony*, The Colony, Inc. was a real estate company in the business of selling residential lots.[43] The IRS determined that Colony had substantially omitted gross income in 1946 and 1947 because it had understated its net gain from the sale of a group real estate lots.[44] Colony had reported all sales proceeds, but the IRS asserted that it had overstated its cost basis by including unallowed development expenses.[45] This overstatement, the IRS argued, improperly decreased Colony's gain. Colony argued that it had not omitted any gross income because its gross income from the sale of real estate lots equaled sales proceeds unreduced by basis, not net gain.[46] The

---

[43] *Colony, Inc. v. Commissioner*, 26 T.C. 30, 31 (1965).

[44] *Colony,* 357 U.S. at 30.

[45] *Id.* at 32.

[46] *Id.* at 33.

Supreme Court agreed, and held that Colony had not omitted its gross income.

The facts in *Colony* include two critical and decisive differences from the facts of this case. First, unlike the present case, *Colony* involved no partnership or other pass-through entity. Second, Colony, Inc. was a corporation in the business of selling real estate lots. Therefore, Colony's income from the sale of real estate lots was income received *from the sale of goods or services*. Unlike Colony, Inc., Salman Ranch was in the business of ranching and selling cattle and crops – not ranches.[47] Despite plaintiff's attempts to declare the income from the sale of the ranch as trade or business income, it is income from a one-time sale of an asset. Therefore the proceeds from the sale of the ranch are not trade or business income received from the sale of goods or services and, because the basis was overstated, the partners omitted gross income from the return.

The distinction between the sale of the ranch as a sale of property in the ordinary course of business, or as a casual sale of an asset, is important because section 6501(e) treats the two kinds of income differently. For trade and business income like Colony's, section 6501(e)(1)(A)(i) defines "gross income" as "the total of the amounts received or accrued from the sale of goods or services...prior to diminution by the cost of such sales or services." In other words, gross income from a trade or business's sale of goods and services is gross receipts rather than net income. As discussed above, however, gross income from other than a trade or business's sale of goods is calculated in accordance with the general definition of gross income in § 61.

Plaintiff's reporting of the sale of the ranch on its Form 1065 is inconsistent with its current position that the sale was trade or business income from the sale of goods or services. The partnership return for the period ending December 31, 1999, includes Schedule F with line items

[47]Gov. Prop. Finding 1.

for amounts received from the sale of livestock, produce, grains and other products raised.[48] Although plaintiff now seeks to assert that proceeds from the sale of the ranch were from the sale of goods or services[49], Salman Ranch reported the sale on Form 4797 - the form used to report "§ 1231 gain"– and not on schedule F as profit or loss from farming. That characterization continued into the partners' Forms 1040. Section 1231 gain is gain from the sale of property used in a trade or business.[50] Property used in a trade or business is defined in § 1231(b). That subsection provides, in pertinent part:

> (b) DEFINITION OF PROPERTY USED IN A TRADE OR BUSINESS.– For purposes of this section:
>
> (1) GENERAL RULE.– The term "property used in a trade or business" means property used in the trade or business . . .and real property used in the trade or business, held for more than 1 year, which is not –
>
> (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year,
>
> (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

*     *     *     *     *

By treating the sale of the ranch as a sale of property used in a trade or business under § 1231 on its return, Salman Ranch acknowledged that the ranch was neither inventory nor "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." If the sale had fit either of those two categories, it could not receive favorable capital gains treatment under § 1231. Furthermore, the purpose of the Son of BOSS transaction in this case was to increase the basis in the ranch, thereby hiding a substantial amount

---

[48]Pl. Ex. A.

[49]Pl. Brief, at 13-14.

[50]§ 1231.

of the capital gain on the sale of the ranch. The whole transaction would have been pointless if the property involved was inventory subject to ordinary gain on the sale. The income from the sale of the ranch was not trade or business income from the sale of goods or services.

Case law supports the position that plaintiff's one-time sale of a portion of its ranch was not trade or business income from the sale of goods and services. The question of whether the sale of real estate was a sale of property held primarily for sale to customers in the ordinary course of business was present in *Goodman v. United States*[51]. In *Goodman*, the Court of Claims stated: "The normal course of taxpayers' business is not established by an individual transaction. It is the overall, factual situation that must govern a particular case."[52] In that case, the taxpayers' real estate holdings were numerous, of considerable value, and the turnover was constant. During an 8-year period, the taxpayers averaged 36 real estate transactions annually. The Court of Claims found that, where "the number of properties and sales thereof is great and frequent," the sales of real estate were sales in the ordinary course of the taxpayer's business and taxable as ordinary gain. Compare to this case where Salman Ranch sold part of its ranch in a one time sale.

Similarly, in *Lazerus v. United States*,[53] a taxpayer had owned a large farm for several years. He was engaged in operating movie theaters and used the farm as his home and avocation. He decided to turn part of the farm into a drive-in theater, and to finance the drive-in he would subdivide another part of the land and sell the subdivision. Plans went forward to subdivide the portion of the farm to be sold to finance the drive-in. In the meantime he abandoned his plans to construct the drive-in. The planned subdivision of the first tract went forward, including making improvements such as streets, utilities, streets and walks. Lazarus attempted to sell the

[51]182 F.2d 915 (Ct. Cl. 1968).
[52]*Id.* at 921.
[53]172 F. Supp. 421 (Ct. Cl. 1959).

subdivision as a single parcel, but failed. He then turned the lots over to a broker who sold them on a commission basis. During 1949, 25 of the 32 lots were sold. In 1950, Lazerus decided to sell another portion of his land. The second parcel was subdivided into 80 lots and were to sold by the same broker handling the first subdivision. In 1950, the final 7 lots from the first subdivision were sold and 12 lots from the second parcel were sold. Lazerus treated the gain from the lots as capital gain, and the Service contended the gain was ordinary gain.

The Court of Claims stated the issue as: "the basic question in each of these cases is whether the parcels of land sold by the taxpayer came within the category of 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."[54] After looking at numerous factors stated by other courts, the *Lazerus* Court held: "it must be concluded that the plaintiffs in 1950 were not engaged in the business of selling lots. Carrying on such a business ordinarily involves holding one's self out to others as engaged in it."[55] Here, Salman Ranch held itself out as being engaged in the business of ranching and selling cattle and crops – not selling real estate.

The cases of *Insulglass*[56] and *Schneider*[57], discussed in section II (A) (2) of the brief, are also instructive here. In *Schneider*, the taxpayer sold a parcel of real property at a loss and included its gross proceeds and cost basis on schedule D. Because the real property sale was not a trade or business transaction, the gross proceeds were not included in plaintiff's stated income for purposes of determining whether the omission of gain was substantial. Similarly, in *Insulglass*,

---

[54]*Lazerus*, 172 F. Supp. 421, 423-424.
[55]*Id.* at 428.
[56]*Insulglass v. Commissioner*, 84 T.C. 203 (1985).
[57]*Schneider,* 1985 Tax Ct. Memo LEXIS 488.

the petitioners sought to include the gross proceeds from the sale of commodities in stated income, not the net gain. The Tax Court determined the commodities transactions were not conducted in the ordinary course of the taxpayer's business, but, rather as investors. As a result, only the net gain was included in stated income, not gross proceeds.

Courts have also distinguished between inventory and § 1231 assets. In *Grant Oil Tool v. United States*[58], the Court of Claims considered whether tools rented out for oil drilling constituted inventory for purposes of excluding § 1231 treatment. "Inventory is, in its present context, simply stated, property held for sale."[59] The Court of Claims went on to hold: "To be consistent with the scope and purpose of § 1231, 'the inventory' it excludes must be that from which the taxpayer gets his normal sales profits."[60] In this case, Salman Ranch does not get its normal sales profits from the sale of ranches, therefore the ranch cannot be considered inventory.

Compare this sale of plaintiff's ranch to the sale of the residential lots by Colony, Inc., under the above principles. The sale of real estate by Colony, Inc., were sales of property held primarily for sale to customers in the ordinary course of the trade or business. In that case, there was no omission of income because the gross proceeds of the sale – undiminished by the cost of goods sold – were stated on the return and included in stated income. Accordingly, any overstatement of basis by Colony was irrelevant to the computation. With respect to the sale of the ranch by Salman Ranch, the stated gross income included only the net gain from the sale of the ranch – not the gross proceeds. Thus, while Colony omitted no gross income from its return,

[58] 381 F. 2d 126 (Ct. Cl. 1961).
[59] *Id.* at 397.
[60] *Id.*

both the partners and the partnership in this case clearly did by omitting the proper net gain.[61]

*2. The Statute Governing the Partners' Assessment is 26 U.S.C. § 6501, but the Statute Governing The Colony, Inc. was § 6501's Predecessor in the Internal Revenue Code of 1939, 26 U.S.C. § 275*

Another critical difference between Colony's and this case is the code section at issue. In this case, the Court is applying section 6501, but in *Colony*, the Supreme Court interpreted § 6501's predecessor 26 U.S.C. § 275 (1939). The flush language in section 275(c)'s omission provision is almost identical to section 6501(e):

> If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.[62]

But § 275(c) did not contain § 6501(e)'s gross income definition in § 6501(e)(1)(A)(i):

> In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services;

or § 6501(e)'s adequate disclosure provision in § 6501(e)(1)(A)(ii):

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

---

[61] The partnership omitted a substantial amount of income under the reasoning of the cases presented here and *Colony*. As presented in Section II(B)(3), below, for purposes of § 6501(e), however, we view the omission in light of the individual partners' Forms 1040 and not the Form 1065 filed by Salman Ranch. § 6501(a). What the case law and principles stated in this argument show, however, is even if both the partners' Forms 1040 and Salman Ranch's Form 1065 were considered together, the partnership and partners omitted a substantial item of income by overstating the basis and underreporting the net gain.

[62] 26 U.S.C. § 275(c) (1939).

The absence of those two provisions from § 275 is important for two reasons: (1) the current statute clarifies the definition of gross income, which the Supreme Court was considering in *Colony*, and (2) it provides a statutory remedy that the Supreme Court provided judicially.

First, § 275 did not define "gross income," but § 6501(e) does. Section 6501(e)(1)(A)(i) states that "in the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services...prior to diminution by the cost of such sales or services." Thus, § 6501 applies *Colony's* gross receipts test only to certain trade and business income – that from the sale of goods or services. This limited application reflects that Congress did not intend the gross receipts test to apply to other types of income like the sale of property used in a trade or business. Otherwise, Congress would not have needed to carve out an exception for trade and business income and the subsection added in 1954 is surplusage.

Second, § 6501's disclosure safe harbor eliminates the Supreme Court's primary justification for its interpretation of gross income under the old law. The Court stressed that the IRS should not receive an extended assessment period if an omission does not put the IRS "at a special disadvantage in detecting errors."[63] The Court assumed that an omission of net income caused by inflated basis would never put the IRS at a special disadvantage, so it concluded that gross income must be defined as gross receipts. Even though gain income was omitted from Colony's return, the Supreme Court determined that there was no omission for § 275's purposes because the IRS was not placed at a "special disadvantage." In effect, the Supreme Court conflated the definition of omission with adequate disclosure principles.

---

[63] *Colony*, 357 U.S. at 36.

Congress's enactment of section 6501(e)'s adequate disclosure provision eliminated the need to conflate omission principles with adequate disclosure principles.

Section 6501(e)(2)(A)(ii) provides that, even if a taxpayer omits income from the return's gross income calculation, the six-year limitation period will not apply to taxpayers that otherwise disclose the omitted income "in a manner adequate to apprise the Secretary of the nature and amount of such item." Section 6501(e) now establishes a two-step process: (1) determine whether a substantial omission occurred; (2) determine whether that omission was otherwise adequately disclosed.

The Fifth Circuit recognized this two-step mandate in *Phinney v. Chambers*.[64] In that case, the taxpayer and her husband held an installment note that they had received in exchange for stock they held as community property. When the husband died, the executor of his estate took possession of the entire note under a state law provision that allowed community debts to be paid out of community property. While in the estate's possession, the note was paid in full. In accordance with its interpretation of the installment recognition method, the estate prepared a trust tax return showing the taxpayer's community share of the note payment as proceeds received from the sale of stock. The trust return did not report a gain, however, because it reported a basis in the stock equal to the proceeds. Part of this basis apparently originated from a basis step-up that the taxpayer claimed upon her husband's death. The IRS subsequently denied this basis step-up and issued a deficiency notice over three years after the taxpayer's trust and individual returns were filed. The IRS asserted that section 6501(e)'s six-year assessment period applied because the taxpayer had substantially omitted her income. The taxpayer, on the other hand, asserted that no omission occurred.

[64] *Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968).

The taxpayer in *Phinney*, like the plaintiff here, relied upon *Colony, Inc. v. Commissioner* to argue that no "omission" of income can occur where a taxpayer reports the correct amount of proceeds.[65] Since her trust return had reported the correct amount of note proceeds, she argued that section 6501(e)'s six-year assessment period did not apply. The Fifth Circuit disagreed concluding that "the enactment of [section 6501(e)'s adequate disclosure exemption] makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item or income" or a misstatement "of the nature of an item of income."[66] The Fifth Circuit went on to determine that the taxpayer's disclosure of proceeds did not qualify for section 6501(e)'s adequate disclosure exemption.[67]

*Phinney's* analysis of section 6501(e)'s first step applies to the partners here. That omission analysis establishes that the partners omitted $4,567,946 from returns which stated only $338,312 of income. The next step, determining whether the omitted income is otherwise adequately disclosed, is discussed below in Part C.

---

[65] *Id.* at 683.

[66] *Id.* at 685.

[67] *Id.* at 684-685. A statement in *Phinney* may lead one to conclude that the Fifth Circuit conflated section 6501(e)'s omission and adequate disclosure principles, but a close inspection shows that it did not. The Fifth Circuit states that "if an item of income is shown on the face of the return or an attached statement that is not shown in a manner sufficient to enable the secretary by reasonable inspection of the return to detect the errors then it is the *omission* of 'an amount' properly includable in the return." *Id.* at 685 (emphasis added). Read in isolation, it appears that the Fifth Circuit is using adequate disclosure principles—"shown in a manner sufficient to enable the secretary...to detect errors"—to determine whether an omission occurred. A close inspection shows, however, that the Fifth Circuit was actually referring to adequate disclosure principles. Immediately after the above quote, the Fifth Circuit states, "It seems here that there can be no substantial argument that the *disclosure* made by the bank's return was '*adequate* to apprise the Secretary or his delegate of the nature and amount of such item.'" *Id.* (emphasis added).

*3. The return at issue is the individual partners' Forms 1040.*

As shown above, the fact that gross proceeds were stated on Salman Ranch's Form 1065 is irrelevant to the question of whether the partners omitted a substantial item of gross income because the sale of the ranch was not a sale of goods or services in the ordinary course of business. Even if the proceeds could be considered as trade or business income, and they are not, the Form 1065 filed by Salman Ranch is still irrelevant to the question of whether the partners omitted income from their Forms 1040. As previously noted, the last sentence of § 6501(a) provides that "[f]or purposes of this chapter [*i.e.*, Chapter 66 of the Code], the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." Congress added this sentence to § 6501(a) in the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1284(a), 111 Stat. 788, 1038 (1997). This amendment is effective for tax years beginning after August 5, 1997. Pub. L. No. 105-34, § 1284(b), 111 Stat. 1038 (1997). Thus amended, § 6501(a) applies to the partners' 1999 tax year.

Prior to 1997, there was a debate about the definition, under § 6501(e), of "gross income stated in *the return*." When applying section 6501(e) to taxpayer-partners, some argued that income stated in "the return" included income stated in both the taxpayer's return and a proportionate share of the gross receipts stated in the partnership's return.[68] Others argued that income stated in "the return" included only income stated in the taxpayer's return, *i.e.*, partnership income is accounted for through flow-through items reported on the taxpayer's return.[69] Treas.

[68] *See Klein v. Commissioner*, 537 F.2d 701 (2d Cir. 1976) (discussing "return" issue as part of innocent spouse determination); *Harlan v. Commissioner*, 116 T.C. 31, 53-55 (2001); *Klien v. Commissioner*, 683 T.C. 585, 589-590 (1975) (IRS arguing that section 6501(e)'s plain language refers only to income reported on the taxpayer's return).

[69] *Id.*

Reg. § 1.702-1(c)(2) and four cases reviewing *pre-1997* tax years attempted to resolve that debate by concluding, on the basis of the regulation, that a partner's stated gross income includes income stated in both the taxpayer's return and the partner's share of gross receipts (not gross income) stated on the partnership's return.[70]

Therefore, while plaintiff is incorrect that the gross proceeds, rather than net gain, from the sale of the ranch would be used to determine stated income under pre-1997 law, the partners could have considered the income stated on the Form 1065 filed by Salman Ranch in calculating their stated gross income. The 1997 amendment to § 6501(a) changes that. It resolved the previous debate over what was meant by "return" by explicitly defining "the return" as only the partner's return. For post-1997 tax years, § 6501's plain language defines "the return" as only the taxpayer's return. Thus, the partners' individual share of Salman Ranch's income is accounted for through the flow-through items reported on their Form 1040, not through gross receipts reported on Salman Ranch's Form 1065. In this case, the partners did not report gross proceeds on their Forms 1040.[71]

---

[70] *See Hoffman v. Commissioner*, 119 T.C. 140 (2002); *Harlan v. Commissioner*, 116 T.C. 31 (2001), *acq.* 2002-7 I.R.B. 496, 2002 WL 1814914; *Cruz v. Commissioner*, No. 15081-89, 1990 WL 178938, 60 T.C.M. (CCH) 1280 (Nov. 20, 1990); Treas. Reg. § 1.702-1(c)(2) (partnerships). *See also Klein v. Commissioner*, 537 F.2d 701 (2d Cir. 1976) (discussing "return" issue as part of an innocent spouse determination).

[71] Gov. Prop. Findings 24 and 31.

**C. THE PARTNERS DID NOT ADEQUATELY DISCLOSE THEIR OMITTED INCOME.**

*1. For purposes of § 6501(e)(1), the "return" on which the disclosure must be made is that of the individual partners.*

Plaintiff argues that there was adequate disclosure of the amount omitted from income because the partnership return disclosed the gross proceeds of the sale of the ranch.[72] As set forth above, the "return" in question is the individual partner's Form 1040, not Salman Ranch's Form 1065. The provision for adequate disclosure is found in § 6501(e)(1(ii), which provides:

> (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

Plaintiff fails to recognize that the adequate disclosure with respect to § 6501(e)(1)(A)(ii) must be made on the *taxpayer's* return – in this case the partners' Forms 1040.

When a statute's text is plain and unambiguous, the Supreme Court has repeatedly held that statutory construction begins and ends with that text.[73] Courts should resort to legislative history, administrative interpretations, and other extrinsic tools only if a statute's text is ambiguous.[74] Therefore, the return for purposes of considering wether the income was adequately

---

[72]Plaintiff's brief at 14-16.

[73] *E.g., BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176, 183 (2004); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985); *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 328-329 (Fed. Cl. 2006).

[74] *E.g., Blum v. Stevenson*, 465 U.S. 886, 896 (1984) ("Where...resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."); *Norfolk Dredging Co. Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004); *Grapevine*, 71 Fed. Cl. at 336 ("the fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do"). *See also Conn. Nat'l Bank v. Gerrnain*, 503 U.S. 249, 253-54 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says.").

disclose under § 6501(e)(1)(A)(ii) is that of the taxpayer - the individual partners - and not the return of any person from whom the "taxpayer has received an item of income, gain, loss, deduction, or credit."

*2. Section 6501(e) Requires Courts to Evaluate the Adequacy of Return Disclosures, Not the Effectiveness the Taxpayer's Efforts at Concealment.*

Any consideration of the adequacy of a taxpayer's disclosure on a return should begin with the fundamental precept that our system of tax administration is founded upon "self-reporting." If the elementary question ever shifts from "Did the taxpayer make a good faith, forthright effort to report the information relevant to the income he received in a tax year?" to "Was the taxpayer clever enough to provide the absolute bare minimum needed to escape?", then the integrity of that self-reporting system is in danger.

The undisputed facts of this case reveal a carefully calculated attempt to hide behind what the partners hoped was the bare minimum of disclosure. Section 6501(e)(1)(A)(ii) states that omitted income shall not be taken into account, "if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." Some courts have used the word "clue" to describe this disclosure standard,[75] but as the First Circuit stated in *CC & F Western Operations, L.P. v. Commissioner*, the standard requires "far more than a mere clue that might intrigue Sherlock Holmes."[76] The First Circuit even questioned whether it was appropriate to use the word "clue" when describing § 6501(e)'s disclosure standard: "The use of the clue language in decisions construing § 6501's

---

[75] *See, e.g., Rhone Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 557 (2000); *Quick's Trust v. Commissioner*, 54 T.C. 1336, 1347 (1970) ("The touchstone in cases of this type is whether respondent has been furnished with a 'clue' to the existence of the error.").

[76] *CC & F Western*, 273 F.3d 402. *See also*, *Quick's Trust*, 54 T.C. at 1347.

adequate disclosure provision likely reflects an impulse to create a sense of continuity (unfortunately false) between Colony and § 6501's adequate disclosure test."[77] Instead of a mere clue, courts require § 6501(e) disclosures "to be sufficiently detailed to apprise [the IRS] of the nature and amount of the transaction so that a decision as to whether to select the return for audit may be a reasonably informed one."[78] The Fifth Circuit explained this standard another way in *Phinney v. Chambers*: "if an item of income...is not shown in a manner sufficient to enable the secretary by reasonable inspection of the return to detect the errors then it is the omission of 'an amount' properly includable in the return."[79]

The First Circuit stressed in *CC&F Western* that section 6501(e)'s disclosure standard must be placed within its context: "the safe harbor provision…has to be read in light of its purpose, namely, to give the taxpayer the shorter limitations period where the taxpayer omitted a particular income item from its calculations but disclosed it in substance."[80]

Adopting the First Circuit's analysis in *CC&F*, a district court in New Jersey recently held in *In re G-I Holdings, Inc.* that a taxpayer had not adequately disclosed its omitted income.[81] In that case, which grew out of the *Rhone-Poulenc* Tax Court case, GAF Chemicals claimed that a transfer of property from it to a partnership qualified as a non-taxable contribution to the partnership's capital. The United States, on the other hand, argued that the transfer was a taxable disguised sale. The issue before the court was whether, under section 6501(e), GAF had

---

[77] *CC & F Western*, 273 F.3d at 407.

[78] *Estate of Fry v. Commissioner*, 88 T.C. 1020, 1023 (1987). *See also, Phinney v. Chambers*, 392 F.2d 680, 685 (5th Cir. 1968) (disclosure must reasonably allow IRS to detect error).

[79] *Phinney*, 392 F.2d at 685.

[80] *CC & F* 273 F.3d at 407; *see also In re G-I Holdings*, Civ. No. 02-3082, 2006 WL 2595264, at *3 (D.N.J. Sept. 8, 2006) (following *CC&F*'s analysis as "the most reasonable and practical approach").

[81] *In re G-I Holdings*, Civ. No. 02-3082, 2006 WL 2595264, at *3 (D.N.J. Sept. 8, 2006).

adequately disclosed the income that the United States asserted GAF had omitted. GAF claimed that it had adequately disclosed its transaction because its return reported a handful of items like the identity of the partnership, related interest expense, related interest income, and two labeled income adjustments on GAF's Sch. M-1.[82] The court carefully considered those items and held that they did not qualify as adequate disclosure: "Here, the taxpayer omitted the item from its calculations and argues that the disconnected dots on its treasure map sufficiently disclosed it in substance. The Court rejects this position."[83] GAF moved for reconsideration, but the court denied their motion, holding that the adequate disclosure standard does not "speak to what a sophisticated IRS agent may have discovered about the 1990 Transaction had he or she decided, based on various unconnected entries in the 1990 GAF Return, to embark on a full-scale and exhaustive investigation."[84] The court went on to provide a stinging summary of its holding:

> . . . In short, the adequate disclosure standard is not met by a retrospective demonstration that the transaction was not so well concealed that a competent IRS agent could not have unraveled the scheme given diligent efforts. Such a standard would turn the statute on its head and turn the inquiry from the adequacy of Debtors' disclosure to the effectiveness of its efforts at concealment.[85]

*3. The Partners' Disclosures Were Inadequate and Misleading.*

Because § 6501(a) defines "return" as only the taxpayer's return, the statute precludes consideration of Salman Ranch's Form 1065 in determining whether the individual partners adequately disclosed the transaction in this case. Even if the returns were considered together, as they could have been prior to the 1997 amendment, the reporting on the partners' Forms 1040 and

---

[82] *Id.* at *6.
[83] *Id.* at *8.
[84] *In re G-I Holdings*, Civ. No. 02-3082, 2006 WL 3511150, at *2 (D.N.J. Dec. 5, 2006).
[85] *Id.*

on Salman Ranch's Form 1065 falls well short of § 6501(e)'s adequate disclosure standard. In fact, the reporting on the returns was misleading.

The plaintiff alleges the initial steps in the Son of BOSS transaction which produced the inflated basis at issue in this case occurred as follows[86]:

1) On or about October 8, 1999, the partners in Salman Ranch sold Treasury Notes short.

2) Shortly thereafter, the partners then contributed the proceeds from the short sale of the stock as well as the liability to close the short position to the partnership.

3) The partnership closed out the short positions.

On the partners' Forms 1040 , the only part of the entire transaction that was reported appeared on schedule D as an individual loss. There is no indication that the partnership was involved in any way. Here is the part of Schedule D attached to the return of William J. Salman which reflects the Treasury Note transaction:

SCHEDULE D (Form 1040)
Department of the Treasury Internal Revenue Service (99)

**Capital Gains and Losses**

► Attach to Form 1040. ► See Instructions for Schedule D (Form 1040).
► Use Schedule D-1 for more space to list transactions for lines 1 and 8.

OMB No. 1545-0074
**1999**
Attachment Sequence No. 12

Name(s) shown on Form 1040: WILLIAM J. & MARJORIE R. SALMAN
Your social security number: [redacted]

**Part I Short-Term Capital Gains and Losses - Assets Held One Year or Less**

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) GAIN or (LOSS) Subtract (e) from (d) |
|---|---|---|---|---|---|
| 1 400 SH LEHMAN BROS. | 11/26/98 | 10/22/99 | 26,459 | 19,765 | 6,694 |
| 700 SH ROSS STORES | 04/24/98 | 12/29/98 | 24,566 | 34,125 | -9,559 |
| LOSS ON ROSS SH REPORTED 1998 | 04/24/98 | 12/29/98 | 34,125 | 24,566 | 9,559 |
| US TREASURY NOTE | Various | 10/08/99 | 1,951,575 | 1,951,879 | -304 |
| 2 Enter your short-term totals, if any, from Schedule D-1, line 2 | | 2 | | | |

---

[86]Plaintiff's Proposed Findings 10-13.

The date of acquisition of the stock is stated as "various" and sale date of the stock is stated as October 8, 1999 – the date the short position was allegedly entered into by the partners. A loss is reported on William J. Salman's individual schedule D attached to his Form 1040.

Similarly, the portion of the Schedule D attached to David M. Salman's form 1040 for the period ending December 31, 1999, reflects exactly the same reporting as that on William J. Salman's return and is shown below:

**SCHEDULE D (Form 1040)**
Department of the Treasury Internal Revenue Service (99)

**Capital Gains and Losses**

▶ Attach to Form 1040. ▶ See Instructions for Schedule D (Form 1040).

OMB No. 1545-0074
**1999**
Attachment Sequence No. 12

Name(s) shown on Form 1040: DAVID M & AVA SALMAN

Your social security number: [redacted]

**Part I Short-Term Capital Gains and Losses - Assets Held One Year or Less**

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired / (c) Date sold | (d) Sales price | (e) Cost or other basis | (f) GAIN or (LOSS) Subtract (e) from (d) |
|---|---|---|---|---|
| 1 48 shs Ford Motor Company | 05/24/99 08/24/99 | 2,377. | 2,766. | <389.> |
| 33829 shs Unit EIF Select Ten Indus 98B | 06/01/98 05/24/99 | 36,354. | 32,931. | 3,423. |
| US Treasury Note | VARIOUS 10/08/99 | 617,912. | 618,009. | <97.> |
| 500 shs Garden.Com Inc. | 09/16/99 09/17/99 | 9,775. | 6,000. | 3,775. |

If the transaction occurred as Salman Ranch now contends, this reporting is, at best, misleading. From the individual Forms 1040, there is simply no indication that Salman Ranch was involved in any way in the Treasury Note transaction, much less any indication that this transaction substantially affected the basis that Salman Ranch claims it had in its real property. The listing of the date acquired for the stock on the partners' Schedule D as "various" prevents anyone from discovering that the stock was acquired after the date it was sold, which might have indicated a short sale of stock. There is no K-1 from Salman Ranch to the partner reporting the loss incurred on closing the short sale. Thus, there is absolutely no opportunity for the person reviewing the partners' Forms 1040 to learn that the Treasury Note transaction was a short sale,

that the proceeds from the short sale and obligation to close the short sale were contributed to Salman Ranch, and that Salman Ranch had closed out the short position.

The Form 1065 filed by Salman Ranch for the period ending November 30, 1999, is completely silent with respect to the Treasury Note transaction. From that return, it would appear that Salman Ranch had nothing to do with that transaction. There is no indication in a Schedule D or anywhere else in that Form 1065 that a liability to close the short position in Treasury Notes had been contributed to Salman Ranch and that Salman Ranch closed out that position for a loss. Sections 703(a) and 702(a) require that short term capital losses be stated separately by the partnership. There are no Forms K-1 attached to the Form 1065 which report the partners' shares of the loss incurred by Salman Ranch.

Even if we review the partners' returns and the partnership return together, these returns was inadequate and misleading and fail to provide adequate disclosure. The complete failure of the partnership and partners to report that the partnership was in any way connected to a short sale and subsequent close of the short position in Treasury Notes, demonstrates their unwillingness to provide even a clue that might have led the IRS to their shelter transaction.

The partners' reporting is also inadequate because it fails to identify a crucial element in the transaction they used to generate $10 million of basis: the obligation to close the treasury short sale. Neither the partners' Forms 1040 nor Salman Ranch's Form 1065 give any indication that the obligation to close the short position was incurred by the partners, transferred to Salman Ranch, immediately fulfilled by Salman Ranch, and treated as a non-liability for tax purposes. The returns give no hint that the obligation ever existed. Similarly, in *G-I Holdings*, the corporate return at issue failed to disclose the existence of the nonrecourse bank loan that financed the

disputed transaction.[87] In fact, Salman Ranch's Form 1065 failed to disclose that it was involved in closing the short sale at all.

Plaintiff attempts to convince the Court that Salman Ranch followed all of the IRS's rules for filling out tax returns with respect to the sale of the ranch, but neglects to inform the Court that the individual partners and Salman Ranch failed to accurately reflect the transaction in the Treasury Notes which inflated the basis reflected on Salman Ranch's return and was used to omit a substantial amount of gain on the sale. Even if plaintiff were correct that the partnership return adequately reflected the sale of the ranch, merely reporting the sale price and basis in a transaction such as this does not satisfy § 6501(e)'s disclosure standard.[88] In *Estate of Fry v. Commissioner*, for example, the Tax Court held that a taxpayer's disclosure of the basis and proceeds of a stock sale was both misleading and incomplete.[89] The taxpayer in that case, Fry, owned stock in a closely-held corporation named Smith Land & Improvement Corporation.[90] Upon Fry's death, Smith Corp. agreed to redeem Fry's stock from the estate for an up-front payment of land that the estate claimed was worth $150,000 and subsequent payments totaling $1 million.[91] Instead of disclosing the transaction as a *redemption* of stock for land, Fry's estate reported the transaction as a *sale* for an up-front payment of $150,000 and subsequent payments totaling $1 million.[92] The IRS challenged the estate's gain calculation, because it asserted that the land was actually worth

---

[87] *G-I Holdings*, 2006 WL 2595264, at *7.

[88] *See, e.g., CC & F Western*, 273 F.3d 402 (incorrect disclosure of proceeds and basis held insufficient); *Estate of Fry*, 88 T.C. 1020 (misleading and incomplete disclosure of stock sale held inadequate).

[89] *Estate of Fry*, 88 T.C. 1020 (1987).

[90] *Id.* at 1021.

[91] *Id.*

[92] *Id.* at 1022-1023.

\$1.4 million.[93] The IRS also asserted that section 6501(e)'s 6-year limitation period applied because Fry's estate omitted \$1.25 million of gain and did not adequately disclose this gain. The Tax Court agreed. In particular, the court held that the estate should have disclosed the corporation's redemption because a transaction between a corporation and its shareholder "warrants special scrutiny."[94] In addition, the court held that describing the redemption for real estate as a cash sale to a presumably unrelated party was "materially misleading."[95]

As in *Fry*, the mere disclosure of basis and proceeds by Salman Ranch on its Form 1065 was both insufficient and materially misleading. It was insufficient because neither the partnership nor the partners disclosed anything about their use of an abusive shelter transaction to manufacture basis. A reasonable inspection of Salman Ranch's partnership return and the partners' individual returns provides no information about the partners' contribution of the short-sale obligation and proceeds from the short sale, or the partnership's treatment of that short-sale obligation and closing of the short position.[96] The importance of this information for audit selection purposes is highlighted by 26 U.S.C. § 6111. Section 6111 requires tax advisors to explicitly disclose Son of BOSS transactions.[97] Nevertheless, neither Salman Ranch's return nor the partners' individual returns provide any indication that the shelter transactions existed. In fact, the returns misled the IRS.

---

[93] *Id.* at 1022.
[94] *Id. at* 1023.
[95] *Id.*
[96] *See* Gov. Prop. Findings 7-16, Exh. A-D attached to Declaration of David House.
[97] 26 U.S.C. § 6111. *See also*, 26 U.S.C. § 6707A (penalties for failure to include reportable transaction information with return); Treas. Reg. § 301.6111-1T (questions and answers about tax shelter registration); IRS Notice 2000-44, 2000-2 C.B. 255 (alerting taxpayers that artificial basis transactions like Salman Ranch's transaction are improper).

**III. THE PARTNERSHIP'S OMISSION OF $4,567,946 MILLION OF GROSS INCOME QUALIFIES AS SUBSTANTIAL PURSUANT TO § 6229(c).**

In the alternative to the argument that the individual partners had a substantial omission of income pursuant to § 6501(e), the 3-year statute of limitations of § 6501(a) is extended by the provisions of § 6229(a) and (c)(2). Section § 6229(a) provides that the normal 3-year statute of limitations of § 6501(a) shall not expire before 3 years from the date the partnership return is filed. Section 6229(c)(2)(emphasis added) provides:

> (2) SUBSTANTIAL OMISSION OF INCOME. – If any partnership omits from gross income an amount properly included therein which is in excess of 25 percent of the amount of gross income stated on ***its*** return, subsection (a) shall be applied by substituting "6 years" for "3 years".

In this case, the Salman Ranch's partnership return for the period ending December 31, 1999, was filed on or about April 16, 2000. Because the partnership omitted more than 25% of its income on that return, the statute of limitations for assessing tax did not expire before April 16, 2006. In this case FPAA issued on April 10, 2006. Therefore the FPAA was mailed timely and suspended the statute of limitations pursuant to § 6229(d).

**A. THE OMISSION OF $4,567,946 OF GROSS INCOME ON THE PARTNERSHIP'S RETURN QUALIFIES AS SUBSTANTIAL PURSUANT TO § 6229(c)(2).**

In determining whether the normal statute of limitations shall not expire before 6 years from the date the partnership return was filed, the same analysis with respect to the omission as presented in Part IIA above takes place. For purposes of § 6229(c)(2), however, the return to be considered in this analysis is the partnership's return.

To determine whether the partnership's omission of the gain in this case was substantial, two numbers must be computed: omitted gross income and stated gross income. These two numbers are inserted into a fraction—omitted gross income is the numerator and stated gross

income is the denominator. If that fraction is greater than 25%, the partnership's omission was substantial, and the 6-year extension of § 6229(c)(2) to the general statute of limitations of § 6501 applies.

*1. The Form 1065 filed by Salman Ranch for the period ending December 31, 1999 omitted $4,567,946 of "Gross Income."*

The question, again, is what is the definition of gross income. The taxable income of the partnership is determined in the same way as that of an individual, with some exceptions not pertinent here.[98] As a result, the analysis conducted with respect to the individual partners in section IIA of this brief is pertinent here. Therefore, the partnership's gross income includes *gain from the sale of real estate*, not gross proceeds.[99] Therefore, when Salman Ranch omitted gain as a result of its artificially high basis, it omitted income.

Plaintiff contends that the dispute in this case is over the legal characterization of a disclosed transaction, so that there is no omission of income.[100] Otherwise, runs plaintiff's argument, a taxpayer must always adopt the Commissioner's position on its return. Plaintiff is wrong on two points. First, the taxpayer need not adopt the Commissioner's position on its return – it is merely required to disclose the material transactional facts on its return. Second, as discussed above, the shelter basis transaction was not disclosed on any return, so there was no disclosure of the transaction.[101] Plaintiff's argument on this point is actually one of adequate

[98] § 703(a).

[99] § 61; *Insulglass*, 84 T.C. at 210; *Schneider*, 1985 Tax Ct. Memo LEXIS 488, at *9. *See also*, *CC & F Western Operations, L.P. v. Commissioner*, 273 F.3d 402, 406 n.2 (1st Cir. 2001) (at least doubtful that gross receipts test applies to activities other than the sale of goods and services).

[100] Plaintiff's Brief, pp. 16-17.

[101] The cases cited by plaintiff in support of its position, *Davis v. Hightower*, 230 F.2d 549 (5th Cir. 1956), and *Walker v. Commissioner*, 46 T.C. 630 (1966), are adequate disclosure cases and will be discussed below.

disclosure. As shown in part IIB of this brief, there was no adequate disclosure for purposes of § 6501(e)(2)(A)(ii). The disclosure issue with respect to § 6229(c)(2) is discussed below.

The gain reported from the sale of ranch totaled 338,312.[102] The partnership should have recognized and reported a gain of $4,906,261.[103] Thus, the partnership omitted $4,567,946 of income.

*2. The stated gross income of Salman Ranch on its return for the period ending December 31, 1999, was $362,215 .*

The return of Salman Ranch for the period ending December 31, 1999 reflects a loss from farming. Because the trade or business of Salman Ranch included raising crops and livestock, the gross proceeds from Schedule F should be included.[104] The return also included rental income and interest and dividend income. The return also reported gain from the sale of the

[102]Gov. Prop. Finding 16.
[103]Gov. Prop. Finding 19.
[104]*Colony*, 357 U.S. 28 (1958), *Insulglass*, 84 T.C. 203 (1985); *Schneider*, 1985 Tax Ct. Memo LEXIS 488, (1985).

ranch in the amount of $338,312. Therefore, the December 31, 1999, Form 1065 reported the following income[105]:

Salman Ranch

| Line from 1065 | amount reported | |
|---|---|---|
| Schedule F- gross receipts | 17,716 | |
| Schedule K-Line 2, rental | 1,142 | |
| Sch. K, line 4a, interest | 260 | |
| Sch. K, line 5, dividends | 4,785 | |
| Form 4797, line 2, 1231 gain | 338,312 | |
| Total income stated on return: | | 362,215 |

The analysis with respect to the inclusion of gain from the sale of the ranch under § 6501(e) in part II is similar to that here. The holding of *Colony* that gross receipts from trade or business income is included in stated income does not require inclusion of the gross proceeds of the ranch where Salman Ranch was not in the trade or business of selling real estate.[106]

In *Colony*, the Supreme Court interpreted the language of § 275(c) of the Internal Revenue Code of 1939. That section provided:

> If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

[105]While it is possible that there are minor differences as to inclusion in stated income of items other than the gross proceeds from the sale, the omission of income from the sale of the ranch is so large as to render any such differences non-material.

[106]*Colony*, 357 U.S. 28 (1958), *Insulglass*, 84 T.C. 203 (1985); *Schneider*, 1985 Tax Ct. Memo LEXIS 488, (1985).

Section 6229(c)(2) provides:

> (2) SUBSTANTIAL OMISSION OF INCOME. – If any partnership omits from gross income an amount properly included therein which is in excess of 25 percent of the amount of gross income stated on ***its*** return, subsection (a) shall be applied by substituting "6 years" for "3 years".

Like § 275(c) of the 1939 Code, § 6229(c)(2) does not contain the definition of income contained in § 6501(e)(1)(A)(i). In interpreting § 275(c), the Supreme Court in *Colony* stated that its interpretation of § 275(c) of the 1939 act, which is similar to § 6229(c)(2), was in harmony with § 6501(e) – even though § 6501(e) specifically provides that gross receipts are only used where the income is trade or business income from the sale of goods or services.[107] The Supreme Court's statement makes sense when one recalls that the taxpayer in *Colony* was in the trade or business of selling real estate. Therefore, even though § 6229(c)(2) does not contain the definition of income presented in § 6501(e), unless the sale of the ranch was trade or business income, and it is not, it is the net gain and not the gross proceeds which is included in stated income for purposes of the substantial omission computation of § 6229(c)(2). Thus, only the reported net gain of $338,312 from the sale of the ranch is included in stated income.

*3. The omission of $4,567,946 from a return which stated gross income as $362,215 is substantial.*

The remaining part of the analysis as to whether there was a substantial omission of income is merely determining whether stated gross income over the omitted income is greater than 25%. In the case of Salman Ranch, the computation is: $4,567,946/362,215 = 1261%. The partnership's omission of income was substantial.

---

[107]*Colony*, at 37.

**B. SALMAN RANCH FAILED TO ADEQUATELY DISCLOSE THE TRANSACTIONAL FACTS .**

Plaintiff contends that Salman Ranch adequately disclosed the transaction by reporting gross proceeds from the sale of the ranch and the inflated basis from the Son of BOSS transaction to reflect the net gain reported on the ranch. Plaintiff is in error. Although the language of § 6229(c)(2) is silent as to whether an adequate disclosure safe harbor exists in the context of that statute,[108] even if an adequate disclosure provision existed, it was impossible for anyone reviewing the partnership return to determine Salman Ranch's involvement in the Son of BOSS transaction which inflated the basis that resulted in the omission of income.

As shown in Part II(A)(3) of this brief, not only has the disclosure of the transaction which inflated the basis in the ranch been inadequate, the manner of disclosure has been, at best, misleading. The standard for whether the omission has been adequately disclosed is whether the disclosure is "sufficiently detailed to apprise [the IRS] of the nature and amount of the transaction so that a decision as to whether to select the return for audit may be a reasonably informed one."[109] The Fifth Circuit explained this standard another way in *Phinney v. Chambers*: "if an item of income...is not shown in a manner sufficient to enable the secretary by reasonable inspection of the return to detect the errors then it is the omission of 'an amount' properly includable in the return."[110]

---

[108] *See*, *CC&F Western v. Commissioner,* 273 F.3d 402, 402 (1st Cir. 2001): "it is debatable whether this adequate disclosure safe harbor should even be read into section 6229(c), which is applicable here and contains no such language."
[109] *Estate of Fry v. Commissioner*, 88 T.C. 1020, 1023 (1987). *See also, Phinney v. Chambers*, 392 F.2d 680, 685 (5th Cir. 1968) (disclosure must reasonably allow IRS to detect error).
[110] *Phinney*, 392 F.2d at 685.

Plaintiff contends that a mere dispute as to "the legal construction to be applied to a disclosed transaction" does not arise to an omission from gross income.[111] Plaintiff cites to *Davis v. Hightower*[112] and *Walker v. Commissioner*[113] as support for this proposition. *Hightower* is not even remotely comparable to the present case, however. In the first place, Mr. Hightower's income tax returns "fully and accurately stated" all of the material transactional facts, involving several sales of cotton bales. *Hightower*, 230 F.2d at 553. Salman Ranch cannot plausibly claim that its 1999 tax returns fully and accurately state the material facts of the short sale transaction.

Moreover, the only point of contention in *Hightower* was whether the income from the cotton sales was capital gain income, as reflected on Mr. Hightower's tax returns, or ordinary income, as the Commissioner contended.[114] The issue was ***not*** whether Mr. Hightower had failed to ***disclose*** the contested gross income – he plainly did – but rather, whether he had correctly ***characterized*** such income as capital gain rather than ordinary income. Here, in contrast, the gain from Salman Ranch's sale of property is undisclosed. As it is factually distinguishable, *Hightower* is inapposite.

Similarly, plaintiff's citation of *Walker v. Commissioner*,[115] falls flat for the same reason. In *Walker*, the Commissioner asserted that the taxpayer, by improperly treating a sale of property as an installment sale, had understated her gross income by more than 25% of the income shown on the return. Holding that the six-year statute of limitations under § 6501(e) was inapplicable,

[111]Pl. Brief, pp. 16-17.
[112]*Davis v. Hightower*, 230 F.2d 549 (5th Cir. 1956).
[113]*Walker v. Commissioner*, 46 T.C. 630 (1966).
[114]*Hightower*, 230 F.2d at 551.
[115]*Walker v. Commissioner*, 46 T.C. 630 (1966).

because the tax returns in question fully, and thus adequately, disclosed the material transactional facts, the Tax Court reasoned as follows:

> The item claimed to have been omitted from gross income is the difference between the amount shown by the petitioner in her return as net long-term capital gain (considering the sale in question as an installment sale) and the amount which the respondent determined she should have reported as net long-term capital gain (treating the sale in question as not an installment sale). However, the return filed by the partnership disclosed the gross profit derived or to be derived from the sale and the portion thereof treated as income in the year of sale. It thus disclosed the amount which would be considered gross income omitted if the use of the installment method was not proper. And, of course, it disclosed the nature of the item – long-term capital gain from the sale of property.[116]

Thus, in *Walker*, the taxpayer's return stated the amount of gross income which was omitted if the taxpayer's characterization of the transaction were not proper. In this case, Salman Ranch and its partners, reported the transaction in such a way as to conceal that part of the transaction which is now being disputed.

Section 6229(c)(2) references the income stated on the *partnership's* return. Therefore, the question is whether the Form 1065 of Salman Ranch disclosed the transaction. Again, plaintiff contends that the inflated basis in the ranch was obtained through the short sale of treasury notes after which the proceeds from the short sale and the liability to close out the short position were first contributed to Salman Ranch. Plaintiff also contends that Salman Ranch then closed out the short position for a loss. The sale of the ranch was reported on Form 1231 filed with the partnership return which merely reported the gross amount received and the basis which had been inflated by the Son of BOSS transaction using the short position in Treasury Notes.[117] Nowhere on the Form 1065 filed by Salman Ranch for the period ending December 31, 1999, or even on the Form 1065 return filed by Salman Ranch for the period ending November 30, 1999,

[116] *Walker*, 46 T.C. at 639.

[117] Plaintiff's Exhibit A to Decl. of William J. Salman, Form 1231.

was it ever disclosed that Salman Ranch was involved in any way in the Son of BOSS transaction. The reporting by Salman Ranch fails to meet any type of disclosure standard.

Even if the Forms 1065 filed by Salman Ranch are viewed together with the Forms 1040 filed by the partners, it is clear the reporting of the transaction was designed to prevent the Service from being able to detect errors upon reviewing the returns. The partners reported the transaction involving the Treasury Notes on their individual returns as if it was merely a number of purchases of the Treasury Notes (dates of acquisition were reported as "various") *followed* by the sale of the Notes on October 8, 1999, for a small loss. There is no reporting that the liability to close the short sale was contributed to Salman Ranch. There is no Schedule D attached to the Salman Ranch Form 1065 revealing its role in closing out the short position for a loss. There is no K-1 from Salman Ranch reporting the loss on the sale to the individual partners to alert the Service that Salman Ranch had closed out the position for the loss. There is simply nothing in any return to suggest the partnership was involved in any way with the Treasury Note transaction. There is simply nothing in any return filed that would alert the Service that the sale of the ranch needed to be investigated.

The above analysis of the partners' Form 1040 and Salman Ranch's Form 1065 gives the Court's all it needs to determine the adequate disclosure issue. There was absolutely no disclosure on any return that the partnership was involved in a Son of BOSS transaction.
If and when the United States is given the opportunity to conduct discovery and try this case's merits, the United States believes that the complete facts of this case will make Salman Ranch's omission that much more compelling. We believe that the evidence will establish that the Son of BOSS tax shelter employed by the partners was carefully designed to create the lowest possible profile in order to keep it off of the Service's radar screen.

## CONCLUSION

The individual partners of Salman Ranch omitted from their return an amount of income that was in excess of the gross income stated on their returns. Accordingly, the 6-year statute of § 6501(e) applies and the FPAA was timely mailed. § 6229(d)(1) suspends the statute of limitations for assessment upon mailing the FPAA. In the alternative, Salman Ranch omitted from its return an amount of income that was in excess of the gross income stated on that return. Accordingly, the 6-year statute of § 6229(c)(2) applies and the FPAA was timely mailed and the statute of limitations for assessment is suspended pursuant to § 6229(d)(1).

Therefore the United States asks the Court to grant the United States Motion for Partial Summary Judgment by holding that the adjustments reflected in the 2001 FPAA are not barred by limitations, so that the Court may determine Salman Ranch's 1999 partnership items, in order that the IRS may thereafter assess tax against the partners of Salman Ranch.

Respectfully submitted,

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
GROVER HARTT, III
Senior Litigation Counsel
s/Grover Hartt, III
OF COUNSEL