See p. 20,601 for regulations not amended to reflect law changes

and the resulting application of the look-through rules of section 904(d)(3). Accordingly, under paragraph (e) of this section, the Commissioner cannot treat PRS as an aggregate of its partners for purposes of determining X's foreign tax credit limitation.

(g) *Effective date.*—Paragraphs (a), (b), (c), and (d) of this section are effective for all transactions involving a partnership that occur on or after May 12, 1994. Paragraphs (e) and (f) of this section are effective for all transactions involving a partnership that occur on or after December 29, 1994.

(h) *Scope and application.*—This section applies solely with respect to taxes under subtitle A of the Internal Revenue Code, and for purposes of this section, any reference to a federal tax is limited to any tax imposed under subtitle A of the Internal Revenue Code.

(i) *Application of nonstatutory principles and other statutory authorities.*—The Commissioner can continue to assert and to rely upon applicable nonstatutory principles and other statutory and regulatory authorities to challenge transactions. This section does not limit the applicability of those principles and authorities. [Reg. § 1.701-2.]

☐ [*T.D.* 8588, 12-29-94. *Amended by T.D.* 8592, 4-12-95.]

**[Reg. § 1.702-1]**

**§ 1.702-1. Income and credits of partner.**—(a) *General rule.*—Each partner is required to take into account separately in his return his distributive share, whether or not distributed, of each class or item of partnership income, gain, loss, deduction, or credit described in subparagraphs (1) through (9) of this paragraph. (For the taxable year in which a partner includes his distributive share of partnership taxable income, see section 706(a) and § 1.706-1(a). Such distributive share shall be determined as provided in section 704 and § 1.704-1.) Accordingly, in determining his income tax:

(1) Each partner shall take into account, as part of his gains and losses from sales or exchanges of capital assets held for not more than 1 year (6 months for taxable years beginning before 1977; 9 months for taxable years beginning in 1977), his distributive share of the combined net amount of such gains and losses of the partnership.

(2) Each partner shall take into account, as part of his gains and losses from sales or exchanges of capital assets held for more than 1 year (6 months for taxable years beginning before 1977; 9 months for taxable years beginning in 1977), his distributive share of the combined net amount of such gains and losses of the partnership.

(3) Each partner shall take into account, as part of his gains and losses from sales or exchanges of property described in section 1231 (relating to property used in the trade or business and involuntary conversions), his distributive share of the combined net amount of such gains and losses of the partnership. The partnership shall not combine such items with items set forth in subparagraph (1) or (2) of this paragraph.

(4) Each partner shall take into account, as part of the charitable contributions paid by him, his distributive share of each class of charitable contributions paid by the partnership within the partnership's taxable year. Section 170 determines the extent to which such amount may be allowed as a deduction to the partner. For the definition of the term "charitable contribution", see section 170(c).

(5) Each partner shall take into account, as part of the dividends received by him from domestic corporations, his distributive share of dividends received by the partnership, with respect to which the partner is entitled to a credit under section 34 (for dividends received on or before December 31, 1964), an exclusion under section 116, or a deduction under part VIII, subchapter B, chapter 1 of the Code.

(6) Each partner shall take into account, as part of his taxes described in section 901 which have been paid or accrued to foreign countries or to possessions of the United States, his distributive share of such taxes which have been paid or accrued by the partnership, according to its method of treating such taxes. A partner may elect to treat his total amount of such taxes, including his distributive share of such taxes of the partnership, as a deduction under section 164 or as a credit under section 901, the subject to the provisions of sections 901 through 905.

(7) Each partner shall take into account, as part of the partially tax-exempt interest received by him on obligations of the United States or on obligations of instrumentalities of the United States, as described in section 35 or section 242, his distributive share of such partially tax-exempt interest received by the partnership. However, if the partnership elects to amortize premiums on bonds as provided in section 171, the amount received on such obligations by the partnership shall be reduced by the amortizable bond premium applicable to such obligations as provided in section 171(a)(3).

(8)(i) Each partner shall take into account separately, as part of any class of income, gain, loss, deduction, or credit, his distributive share of the following items: recoveries of bad debts, prior taxes, and delinquency amounts (section 111); gains and losses from wagering transactions (section 165(d)); soil and water conservation expenditures (section 175); nonbusiness expenses as described in section 212; medical, dental, etc., expenses (section 213); expenses for care of certain dependents (section 214); ali-

h partner shall take into account, as
gains and losses from sales or ex-
property described in section 1231
property used in the trade or busi-
voluntary conversions), his distribu-
f the combined net amount of such
sses of the partnership. The partner-
ot combine such items with items set
ubparagraph (1) or (2) of this

h partner shall take into account, as
charitable contributions paid by him,
tive share of each class of charitable
is paid by the partnership within the
's taxable year. Section 170 deter-
xtent to which such amount may be
a deduction to the partner. For the
f the term "charitable contribution",
70(c).

h partner shall take into account, as
dividends received by him from do-
orations, his distributive share of div-
ved by the partnership, with respect
e partner is entitled to a credit under
for dividends received on or before
1, 1964), an exclusion under section
eduction under part VIII, subchapter
of the Code.

h partner shall take into account, as
taxes described in section 901 which
aid or accrued to foreign countries or
ns of the United States, his distribu-
f such taxes which have been paid or
the partnership, according to its
treating such taxes. A partner may
at his total amount of such taxes,
is distributive share of such taxes of
hip, as a deduction under section 164
t under section 901, the subject to the
f sections 901 through 905.

h partner shall take into account, as
partially tax-exempt interest received
obligations of the United States or on
of instrumentalities of the United
escribed in section 35 or section 242,
tive share of such partially tax-ex-
st received by the partnership. How-
e partnership elects to amortize
n bonds as provided in section 171,
received on such obligations by the
shall be reduced by the amortizable
um applicable to such obligations as
section 171(a)(3).

ach partner shall take into account
as part of any class of income, gain,
tion, or credit, his distributive share
wing items: recoveries of bad debts,
and delinquency amounts (section
and losses from wagering transac-
n 165(d)); soil and water conserva-
ditures (section 175); nonbusiness
described in section 212; medical,
expenses (section 213); expenses for
tain dependents (section 214); alimony, etc., payments (section 215); amounts representing taxes and interest paid to cooperative housing corporations (section 216); intangible drilling and developments costs (section 263(c)); pre-1970 exploration expenditures (section 615); certain mining exploration expenditures (section 617); income, gain, or loss to the partnership under section 751(b); and any items of income, gain, loss, deduction, or credit subject to a special allocation under the partnership agreement which differs from the allocation of partnership taxable income or loss generally.

(ii) Each partner must also take into account separately the partner's distributive share of any partnership item which, if separately taken into account by any partner, would result in an income tax liability for that partner, or for any other person, different from that which would result if that partner did not take the item into account separately. Thus, if any partner is a controlled foreign corporation, as defined in section 957, items of income that would be gross subpart F income if separately taken into account by the controlled foreign corporation must be separately stated for all partners. Under section 911(a), if any partner is a bona fide resident of a foreign country who may exclude from gross income the part of the partner's distributive share which qualifies as earned income, as defined in section 911(b), the earned income of the partnership for all partners must be separately stated. Similarly, all relevant items of income or deduction of the partnership must be separately stated for all partners in determining the applicability of section 183 (relating to activities not engaged in for profit) and the recomputation of tax thereunder for any partner. This paragraph (a)(8)(ii) applies to taxable years beginning on or after July 23, 2002.

(iii) Each partner shall aggregate the amount of his separate deductions or exclusions and his distributive share of partnership deductions or exclusions separately stated in determining the amount allowable to him of any deduction or exclusion under subtitle A of the Code as to which a limitation is imposed. For example, partner A has individual domestic exploration expenditures of $300,000. He is also a member of the AB partnership which in 1971, in its first year of operation has foreign exploration expenditures of $400,000. A's distributable share of this item is $200,000. However, the total amount of his distributable share that A can deduct as exploration expenditures under section 617(a) is limited to $100,000 in view of the limitation provided in section 617(h). Therefore, the excess of $100,000 ($200,000 minus $100,000) is not deductible by A.

(9) Each partner shall also take into account separately his distributive share of the taxable income or loss of the partnership, exclusive of items requiring separate computations under subparagraphs (1) through (8) of this paragraph. For limitation on allowance of a partner's distributive share of partnership losses, see section 704(d) and paragraph (d) of § 1.704-1.

(b) *Character of items constituting distributive share.*—The character in the hands of a partner of any item of income, gain, loss, deduction, or credit described in section 702(a)(1) through (8) shall be determined as if such item were realized directly from the source from which realized by the partnership or incurred in the same manner as incurred by the partnership. For example, a partner's distributive share of gain from the sale of depreciable property used in the trade or business of the partnership shall be considered as gain from the sale of such depreciable property in the hands of the partner. Similarly, a partner's distributive share of partnership "hobby losses" (section 270) or his distributive share of partnership charitable contributions to organizations qualifying under section 170(b)(1)(A) retains such character in the hands of the partner.

(c) *Gross income of a partner.*—(1) Where it is necessary to determine the amount or character of the gross income of a partner, his gross income shall include the partner's distributive share of the gross income of the partnership, that is, the amount of gross income of the partnership from which was derived the partner's distributive share of partnership taxable income or loss (including items described in section 702(a)(1) through (8)). For example, a partner is required to include his distributive share of partnership gross income:

(i) In computing his gross income for the purpose of determining the necessity of filing a return (section 6012(a));

(ii) In determining the application of the provisions permitting the spreading of income for services rendered over a 36-month period (section 1301, as in effect for taxable years beginning before January 1, 1964);

(iii) In computing the amount of gross income received from sources within possessions of the United States (section 937).

(iv) In determining a partner's "gross income from farming" (sections 175 and 6073); and

(v) In determining whether the de minimis or full inclusion rules of section 954(b)(3) apply.

(2) In determining the applicability of the 6-year period of limitation on assessment and collection provided in section 6501(e) (relating to omission of more than 25 percent of gross income), a partner's gross income includes his distributive share of partnership gross income (as described in section 6501(e)(1)(A)(i)). In this respect, the amount of partnership gross income from which was derived the partner's distributive share of any item of partnership income, gain, loss, deduction, or credit (as included or disclosed in the partner's return) is considered as an amount of gross income stated in the partner's return for the purposes of section 6501(e).

See p. 20,601 for regulations not amended to reflect law changes

For example, A, who is entitled to one-fourth of the profits of the ABCD partnership, which has $10,000 gross income and $2,000 taxable income, reports only $300 as his distributive share of partnership profits. A should have shown $500 as his distributive share of profits, which amount was derived from $2,500 of partnership gross income. However, since A included only $300 on his return without explaining in the return the difference of $200, he is regarded as having stated in his return only $1,500 ($300/$500 of $2,500) as gross income from the partnership.

(d) *Partners in community property States.*—If separate returns are made by a husband and wife domiciled in a community property State, and only one spouse is a member of the partnership, the part of his or her distributive share of any item or items listed in paragraph (a)(1) through (9) of this section which is community property, or which is derived from community property, should be reported by the husband and wife in equal proportions.

(e) *Special rules on requirement to separately state meal, travel, and entertainment expenses.*—Each partner shall take into account separately his or her distributive share of meal, travel, and entertainment expenses paid or incurred after December 31, 1986, by partnerships that have taxable years beginning before January 1, 1987, and ending with or within partners' taxable years beginning on or after January 1, 1987. In addition, with respect to skybox rentals under section 274(l)(2), each partner shall take into account separately his or her distributive share of rents paid or incurred after December 31, 1986, by partnerships that have taxable years beginning before January 1, 1989, and ending with or within partners' taxable years beginning on or after January 1, 1987.

(f) *Cross references.*—For special rules in accordance with the principles of section 702 applicable solely for the purpose of the tax imposed by section 56 (relating to the minimum tax for tax preferences) see § 1.58-2(a). In the case of a disposition of an oil or gas property by the partnership, see the rules contained in section 613A(c)(7)(D) and § 1.613A-3(e). [Reg. § 1.702-1.]

☐ [*T.D.* 6175, 5-23-56. *Amended by T.D.* 6605, 8-14-62; *T.D.* 6777, 12-15-64; *T.D.* 6885, 6-1-66; *T.D.* 7192, 6-29-72; *T.D.* 7564, 9-11-78; *T.D.* 7728, 10-31-80; *T.D.* 8247, 4-5-89; *T.D.* 8348, 5-10-91; *T.D.* 9008, 7-22-2002 *and T.D.* 9194, 4-6-2005.]

**[Reg. § 1.702-2]**

**§ 1.702-2. Net operating loss deduction of partner.**—For the purpose of determining a net operating loss deduction under section 172, a partner shall take into account his distributive share of items of income, gain, loss, deduction, or credit of the partnership. The character of any such item shall be determined as if such item were realized directly from the source from which realized by the partnership, or incurred in the same manner as incurred by the partnership. See section 702(b) and paragraph (b) of § 1.702-1. To the extent necessary to determine the allowance under section 172(d)(4) of the nonbusiness deductions of a partner (arising from both partnership and nonpartnership sources), the partner shall separately take into account his distributive share of the deductions of the partnership which are not attributable to a trade or business and combine such amount with his nonbusiness deductions from nonpartnership sources. Such partner shall also separately take into account his distributive share of the gross income of the partnership not derived from a trade or business and combine such amount with his nonbusiness income from nonpartnership sources. See section 172 and the regulations thereunder. [Reg. § 1.702-2.]

☐ [*T.D.* 6175, 5-23-56.]

**[Reg. § 1.702-3T]**

**§ 1.702-3T. 4-year spread (temporary).**—(a) *Applicability.*—This section applies to a partner in a partnership if—

(1) The partnership is required by section 806 of the Tax Reform Act of 1986 (the 1986 Act), Pub. L. No. 99-514, 100 Stat. 2362, to change its taxable year for the first taxable year beginning after December 31, 1986 (partnership's year of change); and

(2) As a result of such change in taxable year, items from more than one taxable year of the partnership would, but for the provisions of this section, be included in the taxable year of the partner with or within which the partnership's year of change ends.

(b) *Partner's treatment of items from the partnership's year of change.*—(1) *In general.*—Except as provided in paragraph (c) of this section, if a partner's share of "income items" exceeds the partner's share of "expense items," the partner's share of each and every income and expense item shall be taken into account ratably (and retain its character) over the partner's first 4 taxable years beginning with the partner's taxable year with or within which the partnership's year of change ends.

(2) *Definitions.*—(i) *Income items.*—For purposes of this section, the term "income items" means the sum of—

(A) The partner's distributive share of taxable income (exclusive of separately stated items) from the partnership's year of change,

(B) The partner's distributive share of all separately stated income or gain items from the partnership's year of change, and

(C) Any amount includible in the partner's income under section 707(c) on account of payments during the partnership's year of change.

if any. See section 1.170A-1(c)(2)
. of "fair market value."

*:contributions; information required*
*ıctions for taxable years beginning*
*1983.*—(1) *In general.*—This par-
ıll apply to deductions for chari-
ions made in taxable years
: January 1, 1983. At the option
the requirements of this para-
ıll also apply to all charitable
ade on or before December 31,
the requirements of paragraphs
ıis section). In connection with
ıctions for charitable contribu-
shall state in their income tax
: of each organization to which a
; made and the amount and date
yment of each contribution. If a
made in property other than
ayer shall state the kind of prop-
l, for example, used clothing,
:urities, the method utilized in
fair market value of the prop-
the contribution was made, and
the amount of the contribution
der section 170(e). If a taxpayer
ın one cash contribution to an
:ing the taxable year, then in lieu
ash contribution and the date of
xpayer may state the total cash
to such organization during the
taxpayer who elects under para-
f §1.170A-8 to apply section
contributions and carryovers of
ıl gain property must file a state-
turn indicating that he has made
showing the contributions in the
ıd carryovers from preceding
: applies. For the definition of the
t capital gain property", see par-
§1.170A-8.

*:tion by individual of property other*
is paragraph (d)(2) shall apply to
:haritable contributions made in
:ginning before January 1, 1983.
f the taxpayer, the requirements
h (d)(2) shall also apply to con-
perty made on or before Decem-
n lieu of the requirements of
this section).

ame and address of the organiza-
: contribution was made.

.ate of the actual contribution.

scription of the property in suffi-
identify the particular property
:luding in the case of tangible
ıysical condition of the property
:ontribution, and, in the case of
ıame of the issuer, the type of
vhether or not such security is
l on a stock exchange or in an
r market.



See p. 20,601 for regulations not amended to reflect law changes

(iv) The manner of acquisition, as, for example, by purchase, gift, bequest, inheritance, or exchange, and the approximate date of acquisition of the property by the taxpayer or, if the property was created, produced, or manufactured by or for the taxpayer, the approximate date the property was substantially completed.

(v) The fair market value of the property at the time the contribution was made, the method utilized in determining the fair market value, and, if the valuation was determined by appraisal, a copy of the signed report of the appraiser.

(vi) The cost or other basis, adjusted as provided by section 1016, of property, other than securities, held by the taxpayer for a period of less than five years immediately preceding the date on which the contribution was made and, when the information is available, of property, other than securities, held for a period of five years or more preceding the date on which the contribution was made.

(vii) In the case of property to which section 170(e) applies, the cost or other basis, adjusted as provided by section 1016, the reduction by reason of section 170(e)(1) in the amount of the charitable contribution otherwise taken into account, and the manner in which such reduction was determined.

(viii) The terms of any agreement or understanding entered into by or on behalf of the taxpayer which relates to the use, sale, or disposition of the property contributed, as, for example, the terms of any agreement or understanding which—

(A) Restricts temporarily or permanently the donee's right to dispose of the donated property.

(B) Reserves to, or confers upon, anyone other than the donee organization or other than an organization participating with such organization in cooperative fund raising, any right to the income from such property, to the possession of the property, including the right to vote securities, to acquire such property by purchase or otherwise, or to designate the person to have such income, possession, or right to acquire, or

(C) Earmarks contributed property for a particular charitable use, such as the use of donated furniture in the reading room of the donee organization's library.

(ix) The total amount claimed as a deduction for the taxable year due to the contribution of the property and, if less than the entire interest in the property is contributed during the taxable year, the amount claimed as a deduction in any prior year or years for contributions of other interests in such property, the name and address of each organization to which any such contribution was made, the place where any such property which is tangible property is located or kept, and the name of any person, other than the organization to which the property giving rise to the deduction was contributed, having actual possession of the property.

(e) [Reserved]

(f) *Substantiation of charitable contributions of $250 or more.*—(1) *In general.*—No deduction is allowed under section 170(a) for all or part of any contribution of $250 or more unless the taxpayer substantiates the contribution with a contemporaneous written acknowledgment from the donee organization. A taxpayer who makes more than one contribution of $250 or more to a donee organization in a taxable year may substantiate the contributions with one or more contemporaneous written acknowledgments. Section 170(f)(8) does not apply to a payment of $250 or more if the amount contributed (as determined under §1.170A-1(h)) is less than $250. Separate contributions of less than $250 are not subject to the requirements of section 170(f)(8), regardless of whether the sum of the contributions made by a taxpayer to a donee organization during a taxable year equals $250 or more.

(2) *Written acknowledgment.*—Except as otherwise provided in paragraphs (f)(8) through (f)(11) and (f)(13) of this section, a written acknowledgment from a donee organization must provide the following information—

(i) The amount of any cash the taxpayer paid and a description (but not necessarily the value) of any property other than cash the taxpayer transferred to the donee organization;

(ii) A statement of whether or not the donee organization provides any goods or services in consideration, in whole or in part, for any of the cash or other property transferred to the donee organization;

(iii) If the donee organization provides any goods or services other than intangible religious benefits (as described in section 170(f)(8)), a description and good faith estimate of the value of those goods or services; and

(iv) If the donee organization provides any intangible religious benefits, a statement to that effect.

(3) *Contemporaneous.*—A written acknowledgment is contemporaneous if it is obtained by the taxpayer on or before the earlier of—

(i) The date the taxpayer files the original return for the taxable year in which the contribution was made; or

(ii) The due date (including extensions) for filing the taxpayer's original return for that year.

(4) *Donee organization.*—For purposes of this paragraph (f), a donee organization is an organization described in section 170(c).

(5) *Goods or services.*—Goods or services means cash, property, services, benefits, and privileges.

(6) *In consideration for.*—A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment. Goods or services a donee organization provides in consideration for a payment by a taxpayer include goods or services provided in a year other than the year in which the taxpayer makes the payment to the donee organization.

(7) *Good faith estimate.*—For purposes of this section, good faith estimate means a donee organization's estimate of the fair market value of any goods or services, without regard to the manner in which the organization in fact made that estimate. See § 1.170A-1(h)(4) for rules regarding when a taxpayer may treat a donee organization's estimate of the value of goods or services as the fair market value.

(8) *Certain goods or services disregarded.*—(i) *In general.*—For purposes of section 170(f)(8), the following goods or services are disregarded—

(A) Goods or services that have insubstantial value under the guidelines provided in Revenue Procedures 90-12, 1990-1 C.B. 471, 92-49, 1992-1 C.B. 987, and any successor documents. (See § 601.601(d)(2)(ii) of the Statement of Procedural Rules, 26 CFR part 601.); and

(B) Annual membership benefits offered to a taxpayer in exchange for a payment of $75 or less per year that consist of—

*(1)* Any rights or privileges, other than those described in section 170(l), that the taxpayer can exercise frequently during the membership period. Examples of such rights and privileges may include, but are not limited to, free or discounted admission to the organization's facilities or events, free or discounted parking, preferred access to goods or services, and discounts on the purchase of goods or services; and

*(2)* Admission to events during the membership period that are open only to members of a donee organization and for which the donee organization reasonably projects that the cost per person (excluding any allocable overhead) attending each such event is within the limits established for "low cost articles" under section 513(h)(2). The projected cost to the donee organization is determined at the time the organization first offers its membership package for the year (using section 3.07 of Revenue Procedure 90-12, or any successor documents, to determine the cost of any items or services that are donated).

(ii) *Examples.*—The following examples illustrate the rules of this paragraph (f)(8).

*Example 1. Membership benefits disregarded.* Performing Arts Center *E* is an organization described in section 170(c). In return for a payment of $75, *E* offers a package of basic membership benefits that includes the right to purchase tickets to performances one week before they go on sale to the general public, free parking in *E*'s garage during evening and weekend performances, and a 10% discount on merchandise sold in *E*'s gift shop. In return for a payment of $150, *E* offers a package of preferred membership benefits that includes all of the benefits in the $75 package as well as a poster that is sold in *E*'s gift shop for $20. The basic membership and the preferred membership are each valid for twelve months, and there are approximately 50 performances of various productions at *E* during a twelve-month period. *E*'s gift shop is open for several hours each week and at performance times. *F*, a patron of the arts, is solicited by *E* to make a contribution. *E* offers *F* the preferred membership benefits in return for a payment of $150 or more. *F* makes a payment of $300 to *E*. *F* can satisfy the substantiation requirement of section 170(f)(8) by obtaining a contemporaneous written acknowledgment from *E* that includes a description of the poster and a good faith estimate of its fair market value ($20) and disregards the remaining membership benefits.

*Example 2. Contemporaneous written acknowledgment need not mention rights or privileges that can be disregarded.* The facts are the same as in Example 1, except that *F* made a payment of $300 and received only a basic membership. *F* can satisfy the section 170(f)(8) substantiation requirement with a contemporaneous written acknowledgment stating that no goods or services were provided.

*Example 3. Rights or privileges that cannot be exercised frequently.* Community Theater Group *G* is an organization described in section 170(c). Every summer, *G* performs four different plays. Each play is performed two times. In return for a membership fee of $60, *G* offers its members free admission to any of its performances. Non-members may purchase tickets on a performance by performance basis for $15 a ticket. *H*, an individual who is a sponsor of the theater, is solicited by *G* to make a contribution. *G* tells *H* that the membership benefit will be provided in return for any payment of $60 or more. *H* chooses to make a payment of $350 to *G* and receives in return the membership benefit. *G*'s membership benefit of free admission is not described in paragraph (f)(8)(i)(B) of this section because it is not a privilege that can be exercised frequently (due to the limited number of performances offered by *G*). Therefore, to meet the requirements of section 170(f)(8), a contemporaneous written acknowledgment of *H*'s $350 payment must include a description of the free admission benefit and a good faith estimate of its value.

*Example 4. Multiple memberships.* In December of each year, *K*, an individual, gives each of her six grandchildren a junior membership in Dinosaur Museum, an organization described in section 170(c). Each junior membership costs $50,

a package of basic membership
cludes the right to purchase tick-
nces one week before they go on
neral public, free parking in *E's*
evening and weekend perform-
% discount on merchandise sold
. In return for a payment of $150,
ge of preferred membership ben-
des all of the benefits in the $75
l as a poster that is sold in *E's* gift
The basic membership and the
bership are each valid for twelve
here are approximately 50 per-
arious productions at *E* during a
period. *E's* gift shop is open for
each week and at performance
on of the arts, is solicited by *E* to
bution. *E* offers *F* the preferred
enefits in return for a payment of
makes a payment of $300 to *E*. *F*
substantiation requirement of sec-
by obtaining a contemporaneous
vledgment from *E* that includes a
the poster and a good faith esti-
market value ($20) and disregards
membership benefits.

2. *Contemporaneous written ac-*
*need not mention rights or privileges*
*egarded.* The facts are the same as
except that *F* made a payment of
ived only a basic membership. *F*
e section 170(f)(8) substantiation
ith a contemporaneous written ac-
t stating that no goods or services
.

3. *Rights or privileges that cannot be*
*ntly.* Community Theater Group *G*
ation described in section 170(c).
r, *G* performs four different plays.
erformed two times. In return for a
ee of $60, *G* offers its members free
ny of its performances. Non-mem-
chase tickets on a performance by
basis for $15 a ticket. *H*, an individ-
ponsor of the theater, is solicited by
contribution. *G* tells *H* that the
benefit will be provided in return
ent of $60 or more. *H* chooses to
ent of $350 to *G* and receives in
mbership benefit. *G's* membership
admission is not described in par-
)(B) of this section because it is not
at can be exercised frequently (due
l number of performances offered
fore, to meet the requirements of
(8), a contemporaneous written ac-
nt of *H's* $350 payment must in-
iption of the free admission benefit
ith estimate of its value.

e 4. *Multiple memberships.* In De-
h year, *K*, an individual, gives each
ndchildren a junior membership in
seum, an organization described in
. Each junior membership costs $50,


See p. 20,601 for regulations not amended to reflect law changes

and *K* makes a single payment of $300 for all six memberships. A junior member is entitled to free admission to the museum and to weekly films, slide shows, and lectures about dinosaurs. In addition, each junior member receives a bimonthly, non-commercial quality newsletter with information about dinosaurs and upcoming events. *K's* contemporaneous written acknowledgment from Dinosaur Museum may state that no goods or services were provided in exchange for *K's* payment.

(9) *Goods or services provided to employees or partners of donors.*—(i) *Certain goods or services disregarded.*—For purposes of section 170(f)(8), goods or services provided by a donee organization to employees of a donor, or to partners of a partnership that is a donor, in return for a payment to the organization may be disregarded to the extent that the goods or services provided to each employee or partner are the same as those described in paragraph (f)(8)(i) of this section.

(ii) *No good faith estimate required for other goods or services.*—If a taxpayer makes a contribution of $250 or more to a donee organization and, in return, the donee organization offers the taxpayer's employees or partners goods or services other than those described in paragraph (f)(9)(i) of this section, the contemporaneous written acknowledgment of the taxpayer's contribution is not required to include a good faith estimate of the value of such goods or services but must include a description of those goods or services.

(iii) *Example.*—The following example illustrates the rules of this paragraph (f)(9).

*Example.* Museum *J* is an organization described in section 170(c). For a payment of $40, *J* offers a package of basic membership benefits that includes free admission and a 10% discount on merchandise sold in *J's* gift shop. *J's* other membership categories are for supporters who contribute $100 or more. Corporation *K* makes a payment of $50,000 to *J* and, in return, *J* offers *K's* employees free admission for one year, a tee-shirt with *J's* logo that costs *J* $4.50, and a gift shop discount of 25% for one year. The free admission for *K's* employees is the same as the benefit made available to holders of the $40 membership and is otherwise described in paragraph (f)(8)(i)(B) of this section. The tee-shirt given to each of *K's* employees is described in paragraph (f)(8)(i)(A) of this section. Therefore, the contemporaneous written acknowledgment of *K's* payment is not required to include a description or good faith estimate of the value of the free admission or the tee-shirts. However, because the gift shop discount offered to *K's* employees is different than that offered to those who purchase the $40 membership, the discount is not described in paragraph (f)(8)(i) of this section. Therefore, the contemporaneous written acknowledgment of *K's* payment is required to include a description of the 25% discount offered to *K's* employees.

(10) *Substantiation of out-of-pocket expenses.*—A taxpayer who incurs unreimbursed expenditures incident to the rendition of services, within the meaning of § 1.170A-1(g), is treated as having obtained a contemporaneous written acknowledgment of those expenditures if the taxpayer—

(i) Has adequate records under paragraph (a) of this section to substantiate the amount of the expenditures; and

(ii) Obtains by the date prescribed in paragraph (f)(3) of this section a statement prepared by the donee organization containing—

(A) A description of the services provided by the taxpayer;

(B) A statement of whether or not the donee organization provides any goods or services in consideration, in whole or in part, for the unreimbursed expenditures; and

(C) The information required by paragraphs (f)(2)(iii) and (iv) of this section.

(11) *Contributions made by payroll deduction.*—(i) *Form of substantiation.*—A contribution made by means of withholding from a taxpayer's wages and payment by the taxpayer's employer to a donee organization may be substantiated, for purposes of section 170(f)(8), by both—

(A) A pay stub, Form W-2, or other document furnished by the employer that sets forth the amount withheld by the employer for the purpose of payment to a donee organization; and

(B) A pledge card or other document prepared by or at the direction of the donee organization that includes a statement to the effect that the organization does not provide goods or services in whole or partial consideration for any contributions made to the organization by payroll deduction.

(ii) *Application of $250 threshold.*—For the purpose of applying the $250 threshold provided in section 170(f)(8)(A) to contributions made by the means described in paragraph (f)(11)(i) of this section, the amount withheld from each payment of wages to a taxpayer is treated as a separate contribution.

(12) *Distributing organizations as donees.*—An organization described in section 170(c), or an organization described in 5 CFR 950.105 (a Principal Combined Fund Organization for purposes of the Combined Federal Campaign) and acting in that capacity, that receives a payment made as a contribution is treated as a donee organization solely for purposes of section 170(f)(8), even if the organization (pursuant to the donor's instructions or otherwise) distributes the amount received to one or more organizations described in section 170(c). This paragraph (f)(12) does not apply, however, to a case in which the distribu-

See p. 20,601 for regulations not amended to reflect law changes

tee organization provides goods or services as part of a transaction structured with a view to avoid taking the goods or services into account in determining the amount of the deduction to which the donor is entitled under section 170.

(13) *Transfers to certain trusts.*—Section 170(f)(8) does not apply to a transfer of property to a trust described in section 170(f)(2)(B), a charitable remainder annuity trust (as defined in section 664(d)(1)), or a charitable remainder unitrust (as defined in section 664(d)(2) or (d)(3) or §1.664-(3)(a)(1)(i)(*b*)). Section 170(f)(8) does apply, however, to a transfer to a pooled income fund (as defined in section 642(c)(5)); for such a transfer, the contemporaneous written acknowledgment must state that the contribution was transferred to the donee organization's pooled income fund and indicate whether any goods or services (in addition to an income interest in the fund) were provided in exchange for the transfer. The contemporaneous written acknowledgment is not required to include a good faith estimate of the income interest.

(14) *Substantiation of payments to a college or university for the right to purchase tickets to athletic events.*—For purposes of paragraph (f)(2)(iii) of this section, the right to purchase tickets for seating at an athletic event in exchange for a payment described in section 170(l) is treated as having a value equal to twenty percent of such payment. For example, when a taxpayer makes a payment of $312.50 for the right to purchase tickets for seating at an athletic event, the right to purchase tickets is treated as having a value of $62.50. The remaining $250 is treated as a charitable contribution, which the taxpayer must substantiate in accordance with the requirements of this section.

(15) *Substantiation of charitable contributions made by a partnership or an S corporation.*—If a partnership or an S corporation makes a charitable contribution of $250 or more, the partnership or S corporation will be treated as the taxpayer for purposes of section 170(f)(8). Therefore, the partnership or S corporation must substantiate the contribution with a contemporaneous written acknowledgment from the donee organization before reporting the contribution on its income tax return for the year in which the contribution was made and must maintain the contemporaneous written acknowledgment in its records. A partner of a partnership or a shareholder of an S corporation is not required to obtain any additional substantiation for his or her share of the partnership's or S corporation's charitable contribution.

(16) *Purchase of an annuity.*—If a taxpayer purchases an annuity from a charitable organization and claims a charitable contribution deduction of $250 or more for the excess of the amount paid over the value of the annuity, the contemporaneous written acknowledgment must state whether any goods or services in addition to the annuity were provided to the taxpayer. The contemporaneous written acknowledgment is not required to include a good faith estimate of the value of the annuity. See §1.170A-1(d)(2) for guidance in determining the value of the annuity.

(17) *Substantiation of matched payments.*—(i) *In general.*—For purposes of section 170, if a taxpayer's payment to a donee organization is matched, in whole or in part, by another payor, and the taxpayer receives goods or services in consideration for its payment and some or all of the matching payment, those goods or services will be treated as provided in consideration for the taxpayer's payment and not in consideration for the matching payment.

(ii) *Example.*—The following example illustrates the rules of this paragraph (f)(17).

*Example.* Taxpayer makes a $400 payment to Charity *L*, a donee organization. Pursuant to a matching payment plan, Taxpayer's employer matches Taxpayer's $400 payment with an additional payment of $400. In consideration for the combined payments of $800, *L* gives Taxpayer an item that it estimates has a fair market value of $100. *L* does not give the employer any goods or services in consideration for its contribution. The contemporaneous written acknowledgment provided to the employer must include a statement that no goods or services were provided in consideration for the employer's $400 payment. The contemporaneous written acknowledgment provided to Taxpayer must include a statement of the amount of Taxpayer's payment, a description of the item received by Taxpayer, and a statement that *L*'s good faith estimate of the value of the item received by Taxpayer is $100.

(18) *Effective date.*—This paragraph (f) applies to contributions made on or after December 16, 1996. However, taxpayers may rely on the rules of this paragraph (f) for contributions made on or after January 1, 1994. [Reg. §1.170A-13.]

☐ [*T.D.* 8002, 12-26-84. *Amended by T.D.* 8003, 12-26-84; *T.D.* 8199, 5-4-88; *T.D.* 8623, 10-11-95 *and T.D.* 8690, 12-13-96.]

**[Reg. §1.170A-14]**

**§1.170A-14. Qualified conservation contributions.**—(a) *Qualified conservation contributions.*—A deduction under section 170 is generally not allowed for a charitable contribution of any interest in property that consists of less than the donor's entire interest in the property other than certain transfers in trust (see §1.170A-6 relating to charitable contributions in trust and §1.170A-7 relating to contributions not in trust of partial interests in property). However, a deduction may be allowed under section 170(f)(3)(B)(iii) for the value of a qualified conservation contribution if the requirements of this section are met. A qualified conservation contri-