**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Salman Ranch LTD, a New Mexico Limited Partnership, and William J. Salman as Tax Matters Partner Partner, | § | |
| | § | Case No. 06-503-T |
| Plaintiffs, | § | |
| | § | Judge Christine O.C. Miller |
| v. | § | |
| | § | |
| United States of America, | § | |
| | § | |
| Defendant. | § | |

PLAINTIFFS' RESPONSE TO DEFENDANT'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, Plaintiffs respond to the United States' Proposed Findings of Uncontroverted Fact, as follows:

1. The trade or business of Salman Ranch was ranching and its principal product or services was "crops & cattle." (Salman Ranch Form 1065 for the period ending November 30, 1999, House Decl., Ex. A; Salman Ranch Form 1065 for the period ending December 31, 1999, House Decl., Ex. B.)

**Response:**

Plaintiffs agree.

2. The partners in Salman Ranch, Ltd., ("Salman Ranch") increased their basis in their partnership interests by the amount of the proceeds received from the short sales of Treasury Notes and alleged to have been transferred to the partnership. (FPAA Explanation of Items, Para. C.)

**Response:**

Plaintiffs disagree that the proceeds from the short sales of Treasury Notes was only alleged to have been transferred to Salman Ranch. These proceeds were, in fact, transferred to Salman Ranch (Declaration of Wm. Salman ¶ 13). It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the contribution of these proceeds is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

3. The partners did not decrease their bases in their partnership interests by the obligation to close the short positions also alleged to have been transferred. (Complaint para. 18(1); FPAA; Ex. A, para. 4).

**Response:**

Plaintiffs disagree that the obligation to close the short sales of Treasury Notes was only alleged to have been transferred to Salman Ranch. This obligation was, in fact, transferred to Salman Ranch (Declaration of Wm. Salman ¶ 13). It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the assumption of this obligation is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

4. In November of 1999, certain partners contributed portions of their partnership interests in Salman Ranch to 3 family partnerships. (Pl. Prop. Finding 15-17.) The transfer caused a technical termination of the Salman Ranch as a partnership and Salman Ranch filed final partnership return for the period ending November 30, 1999. (House Decl. Ex. A.)

**Response:**

Plaintiffs agree.

5. On or about April 18, 2000, Salman Ranch Ltd. filed a final return, Form 1065, for the period ending November 30, 1999. A true and correct copy of that return is attached as Exhibit A to the Declaration of David House filed in Appendix A to the Cross Motion for Summary Judgment of the United States.

**Response:**

Plaintiffs disagree as the final return filed by Salman Ranch contained the taxpayer identification numbers that have been redacted and did not contain the receipt and "Do Not Process" stamps, the handwritten notations, interlineations and/or marginalia inserted on this document after its filing with the IRS. It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of these differences, however.

6. The final return filed by Salman Ranch for November 30, 1999, made an election to adjust basis pursuant to § 754 of the Internal Revenue Code. (House Decl., Exhibit A.)

**Response:**

Plaintiffs disagree to the extent that the return made an election. Salman Ranch made this election in a written statement filed with the partnership return as required by Treasure Regulation § 1.754-1. It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this semantic difference, however. Plaintiffs further note that this election is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

7. Nowhere in the return filed by Salman Ranch Ltd., for the period ending November 30, 1999, is there any reference to the assumption by Salman Ranch of the partners' liability to close the partners' short positions in Treasury Notes. (House Decl., Exhibit A.)

**Response:**

Plaintiffs disagree with the implication that the obligation to close the short sales of Treasury Notes was a liability and disagree with the implication that the obligation to close the short sales of Treasury Notes was required to be disclosed on this return. The obligation was fulfilled shortly after October 13, 1999 and, thus, was not in existence on November 30, 1999. (Declaration of Wm. Salman ¶¶ 13 and 14) It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the assumption of this obligation is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

8. Nowhere in the return filed by Salman Ranch Ltd., for the period ending November 30, 1999, is there any reference to the partners' alleged contribution of proceeds from the short sale of Treasury Notes. (House Decl., Exhibit A.)

**Response:**

Plaintiffs disagree that the proceeds from the short sales of Treasury Notes was only alleged to have been transferred to Salman Ranch. These proceeds were, in fact, transferred to Salman Ranch (Declaration of Wm. Salman ¶ 13). It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the contribution of these proceeds is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

9. Nowhere in the return filed by Salman Ranch Ltd., for the period ending November 30, 1999, is there any reference to Salman Ranch closing the short position of Treasury Notes for a loss. (House Decl., Exhibit A.)

**Response:**

Plaintiffs disagree that the proper reporting of the closing of the short position was to report the results on the return filed by Salman Ranch Ltd. It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of the proper reporting of this transaction, however, as the short sale transaction is irrelevant to the issues raised in the motion and cross-motion for summary judgment. The closing of the short sale resulted in a loss and, thus, no income was omitted as to such transaction. The issues raised as to summary judgment include whether the Plaintiffs omitted any income from the sale of the Ranch (which they did not) or whether Plaintiffs adequately disclosed the sale of the Ranch (which they did).

10. The return filed by Salman Ranch for the period ending November 30, 1999, does not contain any Form K-1 issued to any partner which reports a loss to any partner resulting from closing the short position in Treasury Notes. (House Decl., Exhibit A.)

**Response:**

Plaintiffs disagree that the proper reporting of the closing of the short position was to report the results on the return filed by Salman Ranch (and, thence, on the Form K-1s issued to the partners of Salman Ranch). It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of the proper reporting of this transaction, however, as the short sale transaction is irrelevant to the issues raised in the motion and cross-motion for summary judgment. The closing of the short sale resulted in a loss and, thus, no income was omitted as to such transaction. The issues raised as to summary judgment include whether the Plaintiffs omitted any income from the sale of the Ranch (which they did not) or whether Plaintiffs adequately disclosed the sale of the Ranch (which they did).

11. In each partners' Form 1040 filed for 1999, there is a reference on Schedule D to a transaction in Treasury Notes. The Schedule D for each partner reflects that the treasury notes were acquired on "various" dates and sold on October 8, 1999 for a small loss. (House Decl. paras. 11, 12, and 13, Exhibits C and D.)

**Response:**

Plaintiffs agree.

12. There is no indication in the partners' individual Form 1040 returns filed for 1999 that the partnership had assumed the liability to cover the short position in Treasury Notes. (House Decl. Exhibits C and D.)

**Response:**

Plaintiffs disagree with the implication that the obligation to close the short sales of Treasury Notes was a liability and disagree with the implication that the assumption of the obligation to close the short sales of Treasury Notes was required to be disclosed on these returns. There is nowhere on an individual Form 1040 to reflect the assumption of this obligation or any indication in the IRS instructions, the Internal Revenue Code or the Treasury Regulations that such an assumption (even if this obligation were a liability for tax purposes) should be (or is required to be) shown on an individual Form 1040. It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the assumption of this obligation is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

13. There is no Form K-1 attached to the partners' individual Form 1040 returns filed for 1999 that indicated Salman Ranch had passed a loss incurred on closing the short position in Treasury Notes through to the partners of Salman Ranch. (House Decl. para. 14, Exhibits C and D.)

**Response:**

Plaintiffs disagree for the reasons stated in response to Defendant's proposed finding ¶ 10. Plaintiffs further disagree with the implication that Schedule K-1 is required to be attached to an individual Form 1040 (or that it is even common practice for to attach such schedule to an individual Form 1040). (See Schedule E to Form 1040 and instructions therefor). It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the reporting of the transaction in Treasury Notes is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

14. There is no indication in the partners' individual Form 1040 returns filed for 1999 that Salman Ranch had closed the short position in Treasury Notes for a loss. (House Decl. para. 14, Exhibits C and D.)

**Response:**

Plaintiffs disagree as Schedule D of each individual Form 1040 did reflect that the transaction in Treasury Notes had been closed for a loss and disagree with the implication that it was required that the individual Form 1040 reflect the involvement of Salman Ranch in that transaction. It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of this difference, however, as the reporting of the transaction in Treasury Notes is irrelevant to the issues raised in the motion and cross-motion for summary judgment.

15. On or about April 16, 2000, Salman Ranch filed its return for the period ending December 31, 1999. (House Decl., Ex. B.)

**Response:**

Plaintiffs agree.

16. On the Form 1065 filed by Salman Ranch for the period ending December 31, 1999, Salman Ranch reported the sale of the ranch on Form 4797, and reported the gross proceeds from the sale as $7,188,588, and the cost or other basis as $6,850,276, with a gain of $338,312. (House Decl., Ex. B.)

**Response:**

Plaintiffs agree.

17. The basis of the ranch as reported on Form 4797 attached to Salman Ranch's Form 4797 included the amounts from the alleged contribution of the proceeds from the short sale of Treasury Notes referred to in plaintiff's Proposed Finding 12, but was not reduced by the obligation to close that short position. (FPAA, Ex. A to plaintiff's complaint, Explanation of Items, para. A.)

**Response:**

Plaintiffs disagree that the proceeds from the short sales of Treasury Notes was only alleged to have been transferred to Salman Ranch. These proceeds were, in fact, transferred to Salman Ranch (Declaration of Wm. Salman ¶ 13). Plaintiffs further disagree that the basis include the amounts from the alleged contribution of proceeds. The basis of the Ranch was adjusted pursuant to adjustments permitted under 26 U.S.C. § 722 and upon election under 26 U.S.C. § 754. Plaintiffs further disagree with the implication that they were required (in the aforementioned permissible adjustment to basis) to reduce basis for the obligation to close the short sale. It is possible that Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment could be decided regardless of these disagreements, however, as the transaction in Treasury Notes and the adjustments to basis (as well as all other adjustments to basis with which the Defendant does not take issue with) are irrelevant to the issues raised in the motion and cross-motion for summary judgment.

18. On April 10, 2006, the Service issued an FPAA which made adjustments to the Form 1065 filed by Salman Ranch for the period ending December 31, 1999. (FPAA, Exhibit A to plaintiff's complaint.)

**Response:**

Plaintiffs agree.

19. The adjustments to Salman Ranch's partnership return for the period ending December 31, 1999, as determined by the FPAA, included an increase in gain from the sale of the ranch in the amount of $4,567,949. The total gain from the sale of the ranch as determined by the FPAA was $4,906,261. (Ex. A to plaintiff's complaint, Explanation of Items, para. A.)

**Response:**

Plaintiffs disagree with the implication that these adjustments are correct but agree that the FPAA makes these adjustments. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that this adjustment is correct, however.

20. William J. Salman held a partnership interest in Salman Ranch as of December 31, 1999, of 1.2498%. (Ex. A to Decl. of William J. Salman.) William J. Salman's share from his partnership interest in Salman Ranch of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $57,090 ($4,567,949 x 1.2498%).

**Response:**

Plaintiffs disagree. As of December 31, 1999, William J. Salman held a general partner interest of 0.7498% and a limited partner interest of 0.5%. (Declaration of Wm. Salman ¶ 18). Plaintiffs disagree with the implication that the proposed increase in the FPAA is correct but agree that the FPAA makes the adjustment. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that these are semantic differences and that the adjustment in the FPAA is correct.

21. William J. Salman Family Partnership held partnership interest in Salman Ranch as of December 31, 1999, of 28.8708%. (Ex. A to Decl. Of William J. Salman.) William J. Salman Family Partnership's share from its partnership interest in Salman Ranch of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $1,318,803 ($4,567,949 x 28.8708%).

**Response:**

Plaintiffs disagree with the implication that the adjustments in the FPAA are correct but agree that the FPAA makes these adjustments. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that the adjustments are correct, however.

22. William J. Salman held a partnership interest in William J. Salman Family Partnership as of December 31, 1999, of 55.371%. (Ex. B to Decl. of William J. Salman.) William J. Salman's allocated share from his partnership interest in William J. Salman Family Partnership of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $730,234 ($1,318,803 x 55.371%).

**Response:**

Plaintiffs disagree. As of December 31, 1999, William J. Salman held a general partner interest of 0.8% and a limited partner interest of 54.571%. (Ex. B. to Declaration of Wm. Salman). Plaintiffs disagree with the implication that the proposed increase in the FPAA is correct but agree that the FPAA makes the adjustment. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that these are semantic differences and that the adjustment in the FPAA is correct.

23. William J. Salman's total share of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $787,234. (Prop. Findings 20 and 22.)

**Response:**

Plaintiffs disagree with the implication that these adjustments are correct but agree that the FPAA makes these adjustments. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that the adjustments are correct, however. Plaintiffs further disagree that the sum of $730,234 and $57,090 is $787,234. The sum of those numbers is $787,324.

24. On or about April 15, 2000, William J. Salman filed his individual income tax return, Form 1040, for the period ending December 31, 1999. A true and correct copy of that return is attached to the Declaration of David R. House as Exhibit C. (House Decl., Ex. C.)

**Response:**

Plaintiffs agree.

25. William J. Salman stated gross income on his individual return for the period ending December 31, 1999, of approximately $208,000, including the amount of $58,312 as his share of gain from the sale of the ranch, without taking into account losses reported on schedule E of that return. That return does not report the gross proceeds received by Salman Ranch for the sale of the ranch. (House Decl., para. 15, Ex. C.)

**Response:**

Plaintiffs disagree with the implication that gross income for purposes of 26 U.S.C. §§ 6229(c)(2) and 6501(e)(1) is approximately $208,000. The individual return of William J. Salman specifically references Salman Ranch and WJS FLP and the partnership return of Salman Ranch (by such references in Schedule E of the individual return made part of the individual return of William J. Salman) does report the gross proceeds received in the sale of the Ranch.

26. If the adjustments made by the FPAA are determined to be correct, William J. Salman understated the income on his individual Form 1040 by more than 25%. ($787,234 / $208,000).

**Response:**

If the adjustments made by the FPAA as to the basis that Salman Ranch had in the Ranch are determined to be correct, Plaintiffs agree that William J. Salman understated the income on his individual Form 1040 but disagree that an understatement of income is the same as an omission of gross income under 26 U.S.C. §§ 6229(c)(2) and 6501(e)(1) and disagree with the implication of this proposed finding.

27. David M. Salman held a partnership interest in Salman Ranch as of December 31, 1999, of .5000%. (Ex. A to Decl. of William J. Salman.) David M. Salman's share from his partnership interest in Salman Ranch of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $22,840 ($4,567,949 x .5%).

**Response:**

Plaintiffs disagree. As of December 31, 1999, David M. Salman held a general partner interest of 0.7498% and a limited partner interest of 0.5%. (Declaration of Wm. Salman ¶ 18 and Ex. A to Decl. of Wm. Salman). Plaintiffs disagree with the implication that the proposed increase in the FPAA is correct but agree that the FPAA makes the adjustment. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that the adjustment in the FPAA is correct. Based on that adjustment, David M. Salman's direct share of this adjustment would be $57,090 ($4,567,949 x (0.5% + 0.7498%)).

28. David M. Salman held a general partnership interest in William J. Salman Family Partnership as of December 31, 1999, of .0779 and a limited partnership interest of 17.3009% for a combined interest of 17.3788%. (Ex. B to Decl. of William J. Salman.) David M. Salman's allocated s increase hare from his partnership interest in William J. Salman Family Partnership of the proposed in gain from the sale of the ranch as determined by the FPAA is $229,192 ($1,318,803 x 17.3788%). (Gov. Prop. Finding 21.)

**Response:**

To the extent Plaintiffs can discern the meaning of this proposed finding of fact, Plaintiffs disagree. David M. Salman has never owned an interest in William J. Salman Family Partnership. As of December 31, 1999, David M. Salman held a general partner interest of 0.8% and a limited partner interest of 47.6934% in David M. Salman Family Partnership. David M. Salman Family Partnership held a 28.6785% limited partner interest in Salman Ranch as of December 31, 1999. Plaintiffs disagree with the implication that the proposed increase in the FPAA is correct but agree that the FPAA makes the adjustment. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that the adjustment in the FPAA is correct. On that assumption, David M. Salman's share of the increase from his interest in Salman Ranch through David M. Salman Family Partnership would be $635,273 ($4,567,949 x 28.6785% x (0.8% + 47.6934%)).

29. David M. Salman's total share of the proposed increase in gain from the sale of the ranch as determined by the FPAA is $252,032. (Prop. Findings 27 and 28.)

**Response:**

Plaintiffs disagree with the implication that these adjustments are correct but agree that the FPAA makes these adjustments. For purposes of Plaintiffs' Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment, however, the Court may assume that the adjustments are correct, however. Plaintiffs further disagree that David M. Salman's total share of the proposed increase is $252,032 and, instead calculate it as $692,363. ($57,090 + $635,273).

30. On or about August 17, 2000, David M. Salman filed his individual tax return, Form 1040, for the period ending December 31, 1999. A true and correct copy of that return is attached to the Declaration of David House as Exhibit D. (House Decl., Ex. D.)

**Response:**

Plaintiffs agree.

31. David M. Salman stated gross income on his individual return for the period ending December 31, 1999, of approximately $193,224, including the amount of $18,666 as his share of the gain from the sale of the ranch, taking into account only gross proceeds reported on schedule C and not taking into account losses reported on schedule E of that return. That return does not report the gross proceeds received by Salman Ranch for the sale of the ranch. (House Decl., para. 15, Ex. D.)

**Response:**

Plaintiffs disagree with the implication that gross income for purposes of 26 U.S.C. §§ 6229(c)(2) and 6501(e)(1) is approximately $193,223. The individual return of David M. Salman specifically references Salman Ranch and DMS FLP and the partnership return of Salman Ranch (by such references in Schedule E of the individual return made part of the individual return of David M. Salman) does report the gross proceeds received in the sale of the Ranch.

32. If the adjustments made by the FPAA are determined to be correct, David M. Salman omitted from income an amount which is in excess of 25% of the amount of gross income stated on his individual Form 1040. ($252,032 /$193,224).

**Response:**

Even if the adjustments made by the FPAA as to the basis that Salman Ranch had in the Ranch are determined to be correct, Plaintiffs disagree that David M. Salman omitted any income under 26 U.S.C. §§ 6229(c)(2) and 6501(e)(1).

33. On the Form 1065 filed by Salman Ranch for the period ending December 31, 1999, Salman Ranch stated its gross income as $362,215. (House Decl., para. 6, Ex. B.)

**Response:**

Plaintiffs disagree that the gross income for purposes of 26 U.S.C. §§ 6229(c)(2) and 6501(e)(1) was stated as $362,215. As stated in the Plaintiffs' Memorandum, the gross income for purposes of these statutes includes the gross proceeds received in the sale of the Ranch.

34. If the adjustments to Salman Ranch's partnership return as determined by the FPAA are upheld, Salman Ranch omitted the amount of $4,567,946 from the income reported on the Form 1065 for the period ending December 31, 1999. (Gov. Prop. Finding 18.)

**Response:**

Even if the adjustments in the FPAA are upheld, Plaintiffs disagree that Salman Ranch's partnership return omitted any income.

35. If the adjustments to Salman Ranch's partnership return as determined by the FPAA are upheld, Salman Ranch omitted from income an amount which is in excess of 25% of the amount of gross income stated on his individual Form 1040. ($4,576,946/$362,215.)

**Response:**

Even if the adjustments in the FPAA are upheld, Plaintiffs disagree that Salman Ranch's partnership return omitted any income. It is unclear to what individual Form 1040 this proposed finding refers, but Plaintiff disagrees that any individual Form 1040 of the direct or indirect partners of Salman Ranch omitted any income.

36. Nowhere on the partners' Forms 1040 are the gross proceeds from the sale of the ranch reflected. The only item on the partners' returns indicating the sale of the ranch is the partner's share of the net gain, as calculated by the partnership. (House Decl. para. 15, Ex. C and D.)

**Response:**

Plaintiffs disagree. Each partners' Form 1040 (as required by IRS instructions thereto) contains Schedule E that contains reference to Salman Ranch and the appropriate family partnership. By that reference, each partner included the relevant disclosure and proceeds from the sale of the Ranch on its Form 1040 (either by making the information returns of Salman Ranch and the appropriate family partnership a part thereof or an attachment thereto).

Respectfully submitted on May 14, 2007,

By: s/ Adam M. Cohen
Adam M. Cohen, attorney of record
Colorado State Bar No. 31924
Alan Poe, of counsel
Colorado State Bar No. 7641

HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, Colorado 80202
(303) 295-8372 Telephone
(303) 295-8261 Facsimile
acohen@hollandhart.com
apoe@hollandhart.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2007, I electronically filed the foregoing Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Fact with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

David R. House
U.S. Department of Justice—Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Adam M. Cohen
Adam M. Cohen

3692501_1.DOC