**No. 06-503 T**
**(Judge Christine O.C. Miller)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

SALMAN RANCH LTD, A NEW MEXICO LIMITED PARTNERSHIP, AND WILLIAM J. SALMON AS TAX MATTERS PARTNER,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
DAVID R. HOUSE
GROVER HARTT III
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

**Page**

## TABLE OF CONTENTS

Reply Memorandum in Support of Defendant's Cross-Motion for Summary Judgment. . . . . 1

Questions Presented. . . . . 3

Argument. . . . . 4

I. The 6-year statute of limitations of § 6501(e) applies to the individual partners in this case. . . . . 4

A. The "return" for purposes of § 6501(e) is the "return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction , or credit.)". . . . . 4

1. Plaintiffs' reliance on a regulation promulgated in 1960 is misplaced.. . . . . 10

B. The omission of income was substantial. . . . . 11

1. The Sale of the Ranch Was Not a Sale of "Goods" Within the Meaning of § 6501(e)(1)(A)(I).. . . . . 11

2. The Supreme Court's *Colony* Decision Is Inapposite. . . . . 12

C. The adequate disclosure requirement is not met where the partner's reporting of the short sale that allegedly inflated the Ranch's basis by over $4.5 million was deceptive.. . . . . 13

Conclusion. . . . . 20



2495559.1

**Page**

***TABLE OF AUTHORITIES***

***Cases:***


*AD Global Fund, LLC v. United States*, __ F.3d __, 2007 WL. 624366 (Fed. Cir. March 2, 2007). . . . . . . . . . 9

*Badaracco v. Commissioner*, 464 U.S. 386 (1984). . . . . . . . . . 5, 6, 8, 13, 18

*BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176 (2004).. . . . . . . . . . 5, 7

*Blum v. Stevenson*, 465 U.S. 886 (1984). . . . . . . . . . 6

*Bufferd v. Commissioner*, 506 U.S. 523 (1993).. . . . . . . . . . 7, 8

*CC & F Western*, 273 F.3d 402 (First Cir. 2001). . . . . . . . . . 12, 13, 14, 16, 17

*Caldera v. J.S. Alberici Construction Co.*, 153 F.3d 1381 (Fed. Cir. 1998). . . . . . . . . . 11

*Caulfield v. Commissioner*, 33 F.3d 991 (8th Cir. 1994).. . . . . . . . . . 18

*Colm Producer v. United States*, 460 F. Supp. 2d 713 (D. N.D. Tex. 2006).. . . . . . . . . . 14

*Colony,Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958).. . . . . . . . . . 3, 4, 12, 13, 15, 16

*Coltec v. United States*, 454 F.3d 1340 (Fed. Cir. 2006).. . . . . . . . . . 14

*Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944). . . . . . . . . . 17

*E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456 (1924).. . . . . . . . . . 6

*Estate of Fry v. Commissioner*, 88 T.C. 1020 (1987). . . . . . . . . . 13, 16

*Frane v. Commissioner*, 98 T.C. at 356-57. . . . . . . . . . 13

*In re G-I Holdings Inc.*, 2006 WL. 2595264 (D.N.J. 2006). . . . . . . . . . 17

*In re G-I Holdings Inc.*, 2006 WL. 3511150 (D.N.J. 2006). . . . . . . . . . 14, 17,19

*Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324 (Fed. Cl. 2006).. . . . . . . . . . 5, 13

*Gregory v. Helvering*, 293 U.S. 465 (1935).. . . . . . . . . . 14

Page

***Cases (Continuation):***


*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gutierrez v. Ada*, 528 U.S. 250 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*H.J. Heinz v. United States*, Fed. Cl. No. 03-2847, 2007 WL. 1536885 (May 24, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Helvering v. Mitchell*, 303 U.S. 391 (1938).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Insulglass Corp. v. Commissioner*, 84 T.C. 203 (1985). . . . . . . . . . . . . . . . . . . 13, 17, 19

*Estate of Kluener v. Commissioner*, 154 F.3d 630 (6th Cir. 1998). . . . . . . . . . . . . . . . . 18

*Lawson v. Commissioner*, T.C. Memo 1994-286, 1994 WL. 273946, 4-6 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re Lilly*, 76 F.3d 568 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Miller v. Commissioner*, T.C. Memo 1992-612, 1992 WL. 279823 (1992). . . . . . . . . . 17

*Norfolk Dredging Co. Inc. v. United States*, 375 F.3d 1106 (Fed. Cir. 2004). . . . . . . . . . 6

*Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968). . . . . . . . . . . . . . . . . . . 13, 15, 16, 17

*Schneider v. Commissioner*, T.C. Memo 1985-139, 49 T.C.M. (CCH) 1032 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Taylor v. United States*, 417 F.2d 991 (5th Cir. 1969).. . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973). . . . . . . . . . . . . 9

*Page*

**Statutes:**

Internal Revenue Code of 1939, § 275 (26 U.S.C.) . . . . . . . . . . 12, 16

Internal Revenue Code of 1986 (26 U.S.C.):

§ 61 . . . . . . . . . . 12, 13

§ 701 . . . . . . . . . . 7, 8

§ 702 . . . . . . . . . . 7

§ 752 . . . . . . . . . . 14

§ 1014 . . . . . . . . . . 15

§ 1239 . . . . . . . . . . 9

§ 1284 . . . . . . . . . . 4, 10, 11

§ 1363 . . . . . . . . . . 7

§ 1366 . . . . . . . . . . 7

§ 6226 . . . . . . . . . . 8, 9

§ 6501 . . . . . . . . . . *Passim*

§ 6229 . . . . . . . . . . 1-3, 9, 10, 17

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 (1997) . . . . . . 4, 9, 10, 11

**Miscellaneous:**

25 Fed. Reg. 11,867 (Nov. 26, 1960) . . . . . . . . . . 10

Treasury Regulations (26 C.F.R):

§ 1.702-1(c)(2) . . . . . . . . . . 10

§ 301.6231(a)(3) . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Judge Christine O.C. Miller

No. 06-503 T

SALMAN Ranch LTD, a New Mexico Limited partnership,
and William J. Salmon as Tax Matters Partner,
Plaintiffs,

v.

THE UNITED STATES OF AMERICA,
Defendant.

REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs have moved for summary judgment on the grounds that the notice of Final Partnership Administrative Adjustments ("FPAA") issued to Salman Ranch was untimely.[1] The United States cross-moved for partial summary judgment on the grounds that the FPAA was mailed within the 6-year statute of limitations of § 6501(e)(2)[2] as to the individual partners, or, in the alternative, within the 6-year statute of limitations of § 6229(c)(2) with respect to the partnership. Plaintiffs have filed their Response ("Pl. Response") to the Cross-Motion, and the government files this Reply.

[1]Although reference is made in this Memorandum to "partners," the "partnership," and various purported entities, defendant does not concede that, under the applicable law, a viable partnership or the alleged entities existed.

[2]All references to code sections are to the Internal Revenue Code of 1986, 26 U.S.C., unless otherwise designated.

As set forth in the Government's opening brief, the partners of Salman Ranch are the true taxpayers in this case. In preparation for the sale of the Ranch held by the Partnership, the partners engaged in a tax shelter of the type known as Son of BOSS. As a result of the use of that shelter, the partnership claimed an artificially inflated basis in the ranch that resulted in an omission of $4,567,946 of income from the partners' Form 1040 tax returns. That amount was sufficient to trigger the 6-year statute of limitations of 26 U.S.C. § 6501(e). As a result, the partners' 1999 taxable years were open at the time the FPAA issued. Although their use of the Son of BOSS tax shelter resulted in the omission of $4,567,946 of income, the partners' returns give no indication that any shelter transaction was involved. In fact, the partners reported the short sale transaction as if each had conducted a separate treasury stock transaction for a loss with no participation by the partnership. Plaintiffs now contend the partnership closed out the transaction for the loss and increased its basis in the Ranch through the transaction. The partners failed to honor their self-reporting responsibility. This failure made it much more difficult for the IRS identify and ferret out their tax shelter transaction. The 6-year statute of §6501(e) applies and the FPAA in this case was timely mailed. Similarly, the omission of $4,567,946 of income on the partnership return is substantial within the meaning of § 6229(c)(2). Further, the plaintiffs failed to adequately disclose the Son of BOSS transaction and the inflated basis in the Ranch. Therefore, the 6-year statute of limitations of § 6229(c) applies to the partnership with the result that the FPAA was timely mailed.

The plaintiffs' response brief does nothing to bolster its summary judgment motion and, in fact, confirms that the United States is entitled to the six-year periods under §§ 6501(e)(1)(A) and 6229(c)(2) as a matter of law. Plaintiffs make the assertion that income was not received in

the stock transaction with the implication that the deceptive reporting was proper.[3] Yet, the partnership is relying on the short sale transaction to inflate the basis in the Ranch, while contending that the 3-year statute of limitations applies because of adequate disclosure – despite the deceptive reporting. This the very type of transaction and reporting for which makes the 6-year statutes of § 6501(e) and § 6229(c)(2) necessary.

Plaintiff's Response to the Government's cross motion relies on the argument that failure to accurately report the shelter transaction and the nature of the inflated basis in the Ranch does not result in a substantial omission of income. Plaintiffs contend that the partnership's return must be considered part of the individual partner's return and the gross proceeds from the sale of the Ranch as reported on the partnership return must be considered for purposes of § 6501(e), despite plain statutory language to the contrary. Plaintiffs also present a distorted definition of trade or business gross income under § 6501(e)(1)(A)(i) of the code. Further, plaintiffs misconstrue the holding of *Colony Inc. v. Commissioner* to include § 6501(e)(1)(A)(i), a provision not even before the Supreme Court insofar as its enactment postdated by several years the events at issue in that case. We respond to these arguments below.

**QUESTIONS PRESENTED**

I. Whether the 6-year statute of limitations of § 6501(e) applies to the individual partners in this case.

A. Whether the "return" for purposes of § 6501(e) is the "return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction , or credit.)"

1. Whether plaintiffs' reliance on a regulation promulgated in 1960 is misplaced.

---

[3] Pl. Response, at 14.



2495559.1

B. Whether the omission of income was substantial.

1. Whether the sale of the Ranch was a sale of "Goods" within the meaning of § 6501(e)(1)(A)(i).

2. Whether the Supreme Court's *Colony*[4] decision is applicable.

C. Whether the adequate disclosure requirement is met where the partner's reporting of the short sale that allegedly inflated the Ranch's basis by over $4.5 million was deceptive.

## ARGUMENT

### I. The 6-year statute of limitations of § 6501(e) applies to the individual partners in this case.

#### A. The "return" for purposes of § 6501(e) is the "return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction , or credit.)"

As the Government established in its opening brief the 6-year statute of limitations of § 6501(e) applies in this case. Plaintiffs argue that the Court must look to both the partnership return and the individual partners' Forms 1040 in determining whether the 6-year statute of § 6501(e) applies. Section 6501(a), however, expressly defines "return" as excluding a partnership return for purposes of the chapter governing limitations. Plaintiffs' arguments seek to find ways around the plain meaning of the statute without success.

The last sentence of § 6501(a) provides, in pertinent part, (emphasis added):

> *For purposes of this chapter*, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

The statute was amended in 1997 to add this sentence.[5] The first part of this sentence refers to

---

[4] *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958)

[5] Taxpayer Relief Act of 1997, P.L. 105-34, § 1284(a), 111 Stat. 788, 1038 (1997).

"this chapter" – a reference to Chapter 66, which governs the statute of limitations for assessment of taxes and collection. Of importance to this case is the fact that Congress has made this definition of "return" apply throughout Chapter 66. Reading the 1997 amendment to § 6501(a) to exclude its application to § 6501(e)(1)(A), as the plaintiffs urge, would accord the term "return" two different meanings – a broad meaning for purposes of § 6501(e) that would encompass not only the taxpayer's return but also the returns of his pass-through entities as well, and a narrower meaning for purposes of § 6501(a) and the remainder of Chapter 66. Such an interpretation would violate the canon *noscitur a sociis*, literally "a word is known by the company it keeps."[6] The term "return" appears dozens of times in section 6501. As the "subject of such relentless repetition," it must be presumed to have a consistent meaning.[7] On such reasoning, the Supreme Court and Third Circuit have held that § 6501(e)(1)(A) must be construed *in pari materia* with §§ 6501(c)(1) and 6501(c)(3).[8] This rule of consistency also applies to the term "return" in §§ 6501(a) and 6501(e)(1)(A).

When a statute's text is plain and unambiguous, the Supreme Court has repeatedly held that statutory construction begins and ends with that text.[9] Courts should resort to legislative history, administrative interpretations, and other extrinsic tools only if a statute's text is

---

[6] *Gustafson v. Alloyd Co*., 513 U.S. 561, 575 (1995).

[7] *Gutierrez v. Ada*, 528 U.S. 250, 255 (2000).

[8] *Badaracco*, 464 U.S. at 395-96 (interpretation of term "return" under sections 6501(c)(1) and 6501(e)(1)(A) must not yield inconsistent treatment of taxpayers); *Badaracco*, 693 F.2d at 302 (same); *id*. at 301 n.6 (sections 6501(c)(1) and 6501(c)(3) must be construed *in pari materia*).

[9] See, e.g., *BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176, 183 (2004); *Grapevine Imports, Ltd. v. United States*, 71 Fed. Cl. 324, 328-329 (Fed. Cl. 2006). .

ambiguous.[10] There is no ambiguity here. Further, § 6501 is an assessment limitations statute. It restricts the United States' sovereign right to assess and collect taxes. Such a waiver, the Supreme Court has instructed, "must receive a strict construction in favor of the government." [11] Section 6501(a)'s last sentence employs restrictive language. With this restrictive language, Congress directed that the term "return" means the taxpayer's return alone, not information returns or returns filed by flow-through entities, like Salman Ranch, that may somehow be related to the taxpayer. The language of the sentence added by the amendment, including its parenthetical, could hardly be any plainer, and it must be strictly construed in any case. Strictly construing its 1997 amendment as the law requires, § 6501(a)'s plain language compels the conclusion that each individual partner's 1999 Form 1040 is the only "return" that is relevant in determining "the amount of gross income stated in the return" under section 6501(e)(1)(A) with respect to that partner. Similarly, that Form 1040 is the only "return" that is relevant in determining whether the amount of omitted income was disclosed on the return. [12]

Plaintiffs next seek to resort to legislative history to justify straying from the plain

---

[10]See, e.g., *Blum v. Stevenson*, 465 U.S. 886, 896 (1984); *Norfolk Dredging Co. Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004).

[11]*E.I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924). See also *Badaracco v. Commissioner*, 464 U.S. 386 (1984) (section 6501 is strictly construed in favor of the government).

[12] Plaintiffs seek to avoid the plain meaning of the statute by contending that using the plain meaning of the statute would lead to absurd results. There is nothing absurd about providing the Service with additional time to examine a return where there has been a substantial omission of income from that return – without having to look to any return of a person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit. This is particularly true where the reporting of the transaction which caused the omission is confusing and misleading as occurred in this instance.

meaning of the statute.[13] While such a review is not relevant where the meaning of the statute is plain[14], the legislative history does not contradict the fact that the statute defines "return" for purposes of the entire chapter governing limitations and does not exclude § 6501(e) from that definition, as plaintiffs would have the Court interpret it.

Plaintiffs argue that, by enacting the 1997 amendment to § 6501(a), Congress intended merely to clarify that the "return" that starts the running of the statute of limitations is the return filed by a partner or S corporation shareholder, not any return filed by a related partnership or S corporation, in accordance with the holding in *Bufferd v. Commissioner*.[15] According to the plaintiffs, Congress did not intend to define which "return" a court must look to in order to determine when the statute of limitations ends.[16] This argument fails.

In *Bufferd*, the Supreme Court addressed the pre-1997 version of § 6501(a), which pegged the applicable statute of limitations to the date on which "the return was filed," but did not specify whether the "return" in question was the Form 1040 filed by the S corporation shareholder, against whom the IRS had assessed the tax, or the Form 1120S filed by the related S corporation.[17] Sustaining the Commissioner's position, the Court held that the "return referred to in § 6501(a) is the return of the taxpayer against whom a deficiency is assessed."[18] Further, while

---

[13]Pl. Response, p. 5.

[14]*BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176, 183 (2004)

[15]506 U.S. 523 (1993).

[16]Pl. Response 5-6.

[17]S corporations, like partnerships, are pass-through entities. Like a partner in a partnership, a shareholder in an S corporation reports her share of the S corporation's items of income, gain, loss, deduction, or credit. *See* 26 U.S.C. §§ 701-702, 1363, 1366.

[18]*Bufferd*, 506 U.S. at 527.

it found the pre-1997 version of § 6501(a) unambiguous, the Court stated that it would uphold the Commissioner's interpretation even if the statute were ambiguous, because "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government."[19] Therefore, *Bufferd* itself confirms that the United States' reading of § 6501(a) is correct.

The plaintiffs also contend that our plain reading of § 6501(a) is at odds with the unified partnership proceedings (*i.e.*, TEFRA proceedings) prescribed by Subchapter C of Chapter 63 of the Code. In the plaintiffs' view, TEFRA proceedings require the returns of a partnership and its partners to be "analyzed as a whole," and that the "statute of limitations on assessments as it relates to partnership items . . . be determined in a unified proceeding that must, by its nature, consider the partnership return."[20] Again, plaintiffs are wrong.

The United States' position and the statutory framework for TEFRA proceedings are in complete harmony. Section 6501 prescribes the general statute of limitations on assessment that applies to partners (but not partnerships).[21] Congress amended § 6501(a) in the Taxpayer Relief Act of 1997 to exclude partnership returns from consideration in determining the partner-level statute of limitations on assessment. In the same legislation, recognizing that partners have a stake in asserting their personal statute of limitations defenses, Congress amended § 6226(d)(1) to allow a partner to participate in a TEFRA proceeding "for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with

---

[19] *Id*. at 527 n.6 (quoting *Badaracco*, 464 U.S. at 392).

[20] Pl. Response at 7.

[21] Partnerships are not subject to income tax. 26 U.S.C. § 701.

respect to such person," and granted "the court having jurisdiction of such action . . . jurisdiction to consider such assertion."[22]

This jurisdictional grant would be meaningless if the partner-level statute of limitations under § 6501, including the six-year extended period under § 6501(e)(1)(A), depended on the gross income reported in (or omitted from) the partnership return – a partnership item over which the courts independently exercise jurisdiction in TEFRA proceedings.[23] If sustained, the plaintiffs' position would offend "the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973). It also strains reason to conclude that Congress simultaneously enacted the 1997 amendments to §§ 6501(a) and 6226(d)(1) with the intention that the latter provision nullify the former.

Moreover, Congress has spelled out the precise situation in which a partnership return's contents may affect a partner's statute of limitations under § 6501. Section 6229(a) prescribes a minimum three-year period that "may extend the regular statute of limitations in § 6501(a) for assessments to individual partners."[24] If a partnership return omits a substantial sum of gross income, section 6229(c)(2) extends this minimum limitation period to six years.

Given its limited function, section 6229(c)(2) plainly cannot supersede the general rule under § 6501(a). Under § 6501(a), the 12/31/99 Partnership Return is irrelevant to whether the

---

[22] 26 U.S.C. § 6226(d)(1); Pub. L. No. 105-34, § 1239(b), 111 Stat. 788, 1027-28 (1997).

[23] *See* 26 U.S.C. § 6226(f) (grant of jurisdiction to determine "partnership items" in TEFRA proceedings); 26 C.F.R. § 301.6231(a)(3)-1(a)(1)(I) (defining "partnership items" to include "[i]tems of income, gain, loss, deduction, or credit of the partnership").

[24] *AD Global Fund, LLC v. United States*, __ F.3d __, 2007 WL 624366 at *3 (Fed. Cir. March 2, 2007).

six-year partner-level statute of limitations under § 6501(e)(1)(A) applies to the individual partners of Salman Ranch. For purposes of applying the 25 percent omission-of-income test under § 6501(e)(1)(A)(i) and the adequate disclosure standard under § 6501(e)(1)(A)(ii), the only return that matters is the partner's 1999 Form 1040. If the six-year period under § 6501(e)(1)(A) applies, § 6229(c)(2) may – but not always – further extend that period, but that is no reason to import the 12/31/99 Partnership Return into the threshold analysis under § 6501(e)(1)(A), when § 6501(a) expressly forbids that approach.

**1. Plaintiffs' reliance on a regulation promulgated in 1960 is misplaced.**

The Taxpayer Relief Act of 1997 amended § 6501(a) to add the definition of "return" to the Chapter on limitations.[25] Plaintiffs now contend that the statute means something other than what its plain language provides. Plaintiffs seek support in a regulation promulgated prior to 1997 and cases interpreting the statute as it existed prior to the addition of the definition of return to the statute.

Plaintiffs assert that our plain reading of § 6501(a)'s last sentence – defining the "return" as that of the taxpayer/partner, not the related partnership – conflicts with a Treasury regulation, 26 C.F.R. § 1.702-1(c)(2).[26] This argument lacks merit. Treas. Reg. § 1.702-1(c)(2) was promulgated in 1960.[27] Congress amended § 6501(a) to add the last sentence therein, quoted

---

[25] P.L. 105-34, § 1284(a), 111 Stat. 788, 1038 (1997).

[26] Pl. Response at 9-10.

[27] 25 Fed. Reg. 11,867 (Nov. 26, 1960). Plaintiffs also assert that other portions of § 1.702 were amended after 1997, but none of those amendments dealt with the portion of the regulations on which plaintiffs now rely.

above, in 1997.[28] "Statutes trump conflicting regulations."[29]

**B. The omission of income was substantial.**

**1. The Sale of the Ranch Was Not a Sale of "Goods" Within the Meaning of § 6501(e)(1)(A)(i).**

Our prior submissions demonstrate that the six-year period under § 6501(e)(1)(A) applies in this case, because the partners' individual 1999 Form 1040 omitted gross income that far exceeded 25% of the gross income stated in that return.[30] With respect to William J. Salman, whose omission of income was 378%, plaintiffs do not dispute our arithmetic.[31] Instead, relying on the "trade or business" exception under § 6501(e)(1)(A)(i), plaintiffs argue there was no omission of gross income because the 12/31/99 Partnership Return reports the $7,188,588 gross sale price of the Ranch. But this exception, as previously explained, does not apply because the Ranch's sale was not a "sale of goods" under § 6501(e)(1)(A)(i).[32]

Attempting to confuse the issue, plaintiffs contend the Ranch's artificially inflated basis

---

[28] Pub. L. No. 105-34, § 1284(a), 111 Stat. 788, 1038 (1997).

[29] *Caldera v. J.S. Alberici Constr. Co.*, 153 F.3d 1381, 1383 n.** (Fed. Cir. 1998). For the same reason, the case law cited by the plaintiffs is inapposite. (Pl. Response, at 6 & n.12.) All the cited cases dealt with pre-1997 tax years, and none interpreted § 6501(e)(1)(A) in light of the 1997 amendment to section 6501(a).

[30] *See* US Memo pp. 12-19.

[31] Nor is there a dispute of material fact with respect to the fact that David M. Salman's omission exceeded 25% of the gross income stated on the return. Pl. Response to Defendant's Proposed findings #27-29, sets forth the math with respect to David M. Salman's understatement. David M. Salman reported gross income of $193,224. According to plaintiffs, his share of the FPAA adjustment from the sale of the Ranch is $692,363. Accepting plaintiffs' numbers for purposes of this motion, the amount omitted is 358%.

[32] *See* US Memo 19-26.

is an "overstated deduction," not a component of their omitted gross income.[33] Even if true, this contention undercuts their claim that the Ranch was a "good." If the Ranch were a "good," its basis would be considered "cost of goods sold" ("COGS").[34] COGS is an component of gross income – ***not*** a "deduction" – because COGS is subtracted from gross sales to compute "gross income derived from business" under § 61(a)(2). *In re Lilly*, 76 F.3d 568, 572 (4th Cir. 1996); *see also Lawson v. Commissioner*, T.C. Memo. 1994-286, 1994 WL 273946, *4-6 (1994). It logically follows that if the Ranch's basis is a "deduction," the Ranch's basis is not COGS and the Ranch itself is not a "good."

**2. The Supreme Court's *Colony*[35] Decision Is Inapposite.**

Unable to meet the requirements of § 6501(e)(1)(A)(i), plaintiffs argue that *Colony*, 357 U.S. 28, defines the gross income from the Ranch's sale as the $7,188,588 gross sales price, and thus no omission exists. Plaintiffs exaggerate *Colony*'s holding, however. Section 275(c) of the 1939 Code, at issue in *Colony*, contained no trade or business exception (nor an adequate disclosure exception) akin to § 6501(e)(1)(A).[36] Section 6501(e)(1)(A)'s enactment confined *Colony* to its narrow facts.[37] Extending the trade or business exception to all sales of property, not just "sales of goods" in the ordinary course of business, would **(i)** violate the tenet that

---

[33]Pl. Reply at 15.

[34]As shown on the Government's Exhibit A, the Partnership did not report the Ranch's basis as part of the COGS stated on line 3 and in Schedule A of the 12/31/99 Partnership Return.

[35]*Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958)

[36]*See Colony*, 357 U.S. at 29 n.1 (text of former § 275(c)); *id*. at 37 n.3 (text of § 6501(e)(1)(A)).

[37]*See CC&F*, 273 F.3d at 407; *Lawson*, T.C. Memo. 1994-286, 1994 WL 273946 at *4 ("[W]ith respect to taxable years beginning after August 17, 1954, Congress . . . resolved the problem addressed in *Colony* . . . by enacting section 6501(e)(1)(A) of the 1954 Code.").

§ 6501(e)(1)(A) must be strictly construed in the Commissioner's favor,[38] **(ii)** cause the narrow trade or business exception to engulf the general definition of gross income from sales of property under § 61(a)(3), and **(iii)** render the trade or business exception superfluous.[39]

Courts thus limit the trade or business exception under § 6501(e)(1)(A) to sales of "goods" in the ordinary course of business, and refuse to enlarge this exception to encompass sales of property generally.[40] This Court should do likewise and reject the plaintiffs' claim that *Colony* loosens the requirements of § 6501(e)(1)(A)(i).

**C. The adequate disclosure requirement is not met where the partner's reporting of the short sale that allegedly inflated the Ranch's basis by over $4.5 million was deceptive.**

As our opening brief explains, the partners' 1999 Form 1040 fails to disclose the following material transactional facts: 1) The partners' sale of U.S. Treasury Notes was a short sale; 2) The partners transferred their short sale position – and the liability to close that sale – to Salman Ranch; 3) Salman Ranch closed out the short position and incurred a loss passed through to the partners. In fact, the partners' returns make the transaction appear to be a simple sale of

---

[38] *Badaracco*, 464 U.S. at 391.

[39] *See Grapevine*, 71 Fed.Cl. at 342 (applying *Colony*'s gross proceeds standard to all sales of property, contrary to § 6501(e)(1)(A), "would violate the canon that a legislature is presumed to have used no superfluous words" (internal quotation omitted)). The plaintiffs also rely on dicta in *Colony* to the effect the decision was "in harmony" with § 6501(e)(1)(A). (Pl. Reply 16-17, quoting *Colony*, 357 U.S. at 37.) But plaintiffs overlook the reason why the result in *Colony* was in harmony with § 6501(e)(1)(A) – the taxpayer was in the business of selling residential lots, and thus would have met the trade or business exception under § 6501(e)(1)(A), had that provision then been in effect. Here, in contrast, the Partnership was not engaged in the trade or business of selling ranches.

[40] *Schneider v. Commissioner*, T.C. Memo. 1985-139, 49 T.C.M. (CCH) 1032, 1034-35 (1985); *Insulglass*, 84 T.C. at 208-10; *Lilly*, 76 F.3d at 572; *Lawson*, T.C. Memo. 1994-286, 1994 WL 273946 at *4; *Phinney*, 392 F.2d at 685; *Fry*, 88 T.C. at 1022-23; *Frane v. Commissioner*, 98 T.C. at 356-57; *cf. CC&F*, 273 F.3d at 406 n.2.

treasury notes with no involvement by the partnership whatsoever.

Additionally, there are two other items with respect to the Son of BOSS transaction to be considered. First, the short position assumed by the Partnership on July 13, 1998 was a liability within the meaning of 26 U.S.C. § 752.[41] Second, the adjusted basis of the Ranch at the time of its sale, reported as $6,850,276 5, must be reduced by $4,467,949 in the event the Court sustains the United States' position in this matter.

In their reply brief, the plaintiffs concede the short sale transaction was "one item that affected [the] basis" of the Ranch that was reported in the 12/31/99 Partnership Return.[42] Yet, the reporting of that transaction was deceptive in that it was not reported as a short sale and the reporting by the partners disguised the fact that the Partnership actually closed the short position and used the shelter transaction to inflate the basis of the Ranch. These facts are fatal.

Substance, not form, governs federal income taxation.[43] Courts, recognizing this principle, agree that a return must disclose a transaction's substance, not its mere form as conceived by the taxpayer, to meet the adequate disclosure requirement under § 6501(e)(1)(A)(ii).[44] To unravel the artificial basis-inflation scheme, one must look to its true economic substance. The short sale transactions, the plaintiffs now concede, are the key to understanding the actual substance of the Ranch's sale. Because the partners' 1999 Form 1040 is at best misleading and at worst deceptive as to the short sale transactions, the partners fail to

---

[41] *Colm Producer v. United States*, 460 F. Supp. 2d 713 (D. N.D. Tex. 2006).

[42] Pl. Response, at 15.

[43] *Gregory v. Helvering*, 293 U.S. 465 (1935); *Coltec v. United States*, 454 F.3d 1340 (Fed. Cir. 2006); *H.J. Heinz v. United States*, Fed. Cl. No. 03-2847, 2007 WL 1536885, (May 24, 2007).

[44] *CC & F Western*, 273 F.3d 402 (First Cir. 2001); *In re G-I Holdings*, Civ. No. 02-3082, 2006 WL 3511150, at *2 (D.N.J. Dec. 5, 2006).

meet the adequate disclosure requirement.

Despite the inadequate disclosure in the partners' Form 1040, the plaintiffs cling to the notion that the 12/31/99 Partnership Return's disclosure of the gross sale price of the Ranch, without more, is somehow "adequate" under § 6501(e)(1)(A)(ii).[45] But the plaintiffs are wrong. In the first place, for the reasons given above and in our opening brief, § 6501(a) forecloses consideration of the 12/31/99 Partnership Return for purposes of determining whether the partners adequately disclosed their artificial basis-inflation scheme. And even assuming the Court could properly take the 12/31/99 Partnership Return into consideration, the mere reporting of gross sale proceeds in that return falls far short of what the law requires.

With one narrow exception, inapplicable here, a return that discloses the gross sale proceeds, without more, does not meet the adequate disclosure requirement.[46] In *Phinney v. Chambers*, 392 F.2d 680 (5th Cir. 1968), the taxpayer's return correctly reported the gross proceeds from a sale of stock. *Id*. at 682. No gain was reported, however, because the return also reported a basis in the stock equal to the gross sale proceeds. The reported basis originated in part from a basis step-up that the taxpayer claimed upon her husband's death. *Id*. at 682-83; *see* 26 U.S.C. § 1014 (providing that basis of property received from decedent is stepped up to fair market value at date of death). More than three years after the return was filed, the IRS denied the claimed basis step-up and issued a deficiency notice. Relying on *Colony* – as the plaintiffs do here – the taxpayer argued that the six-year period under § 6501(e)(1)(A) did not apply because a return omits no gross income when it reports the correct amount of gross sale

[45]Pl. Response, p. 14.

[46]The inapplicable exception, discussed above, applies to trade or business gross income under § 6501(e)(1)(A)(i).

proceeds. *Phinney*, 392 F.2d at 683. The Fifth Circuit disagreed.

*Colony* did not address § 6501(e)(1)(A)(ii), enacted as part of the 1954 Code. Rather, a predecessor statute, section 275(c) of the 1939 Code, which contained ***no*** adequate disclosure language, was at issue. Accordingly, case law predating the 1954 Code, including *Colony*, is simply inapposite to the adequate disclosure inquiry under current law. *See CC&F Western Operations Ltd. P'ship v. Commissioner*, 273 F.3d 402, 407 (1st Cir. 2001).

Recognizing this crucial distinction in *Phinney*, the Fifth Circuit "conclude[d] that the enactment of [the adequate disclosure exception in] subsection (ii) as a part of section 6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item of income of the requisite amount or ***misstating of the nature of an item of income***.[47] On that reasoning, the Fifth Circuit held that the taxpayer's disclosure of gross sale proceeds did not meet the adequate disclosure requirement under § 6501(e)(1)(A)(ii).[48]

Disclosing the Ranch's gross sale price is not enough. The partners can point to nothing – for there is nothing – in the 12/31/99 Partnership Return that discloses the short sale transactions, nor the other key facts animating their artificial basis-inflation scheme. Courts agree that "a taxpayer seeking the benefit of a disclosure in or on a tax return to avoid the 6-year statute [under § 6501(e)(1)(A)] must not be niggardly or as here misleading in the statement of facts" in the tax return.[49] As it fails to disclose the material transactional facts, the 12/31/99

---

[47]*Phinney*, 392 F.2d at 685 (emphasis added).

[48]*Id.*

[49]*Estate of Fry v. Commissioner*, 88 T.C. 1020, 1023 (1987). *See also CC&F*, 273 F.3d at 406-08 (no adequate disclosure where material facts omitted); *Phinney*, 392 F.2d at 681-86 (same); *In re G-I Holdings Inc.*, 2006 WL 2595264, *7-8 (D.N.J. 2006) (same); *Insulglass Corp. v. Commissioner*, 84 T.C. 203, 205-08 (1985) (same); *Miller v. Commissioner*, T.C. Memo. 1992-

Partnership Return does not insulate the partners from the six-year limitation period under § 6501(e)(1)(A). For the same reasons, the 6-year statute of 6229(c) also applies.

Seeking to distract the Court from their inadequate disclosure, the plaintiffs urge that the "Defendant had 3 years to verify the reported cost [of the Ranch] and the Defendant's omission to do so should not be charged against the plaintiffs."[50] They essentially ask the Court to excuse their nondisclosure on the theory the Commissioner, had he launched an exhaustive investigation, might have discovered the partners' artificial basis-inflation scheme before the three-year period under § 6501(a) expired. But adequate disclosure under § 6501(e)(1)(A)(ii) does not "speak to what a sophisticated IRS agent may have discovered about the . . . [t]ransaction had he or she decided, based on various unconnected entries in the . . . [r]eturn, to embark on a full-scale and exhaustive investigation." *In re G-I Holdings Inc*., 2006 WL 3511150, *2 (D.N.J. 2006). Laying the blame at the Commissioner's door, while absolving taxpayers from the consequences of their inadequate return disclosures, would undermine "the system of self-assessment which is so largely the basis of our American scheme of income taxation." *Commissioner v. Lane-Wells Co*., 321 U.S. 219, 223 (1944).[51]

Voluntary disclosure is the very bedrock of our federal tax system. By conditioning the normal three-year statute of limitations on adequate disclosure when major sums of unreported income are at stake, Congress sought to encourage greater tax return disclosure of unreported

---

612, 1992 WL 279823 (1992) (same).

[50]Pl. Response, at 14.

[51]*See also Helvering v. Mitchell*, 303 U.S. 391, 399 (1938) ("In assessing income taxes the Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires him to make in his annual return.").

income. Via adequate disclosure, taxpayers have the opportunity to terminate their exposure to IRS audits in the normal three years, rather than six years. Therefore, section 6501(e)(1)(A)(ii) gives taxpayers an incentive to voluntarily bring potentially controversial transactions to light for timely examination and determination of the proper tax treatment.[52]

If the taxpayer, spurning this incentive, fails to adequately disclose on his return the nature and amount of a substantial omitted gross income item, he is subject to the six-year statute of limitations. Failing to give the IRS this additional time would turn the nation's self-reporting tax system on its head. Rather than relying chiefly on taxpayers' voluntary reporting to initially identify substantial gross income omissions, the IRS would have to audit every tax return filed by every taxpayer. The federal budget could not bear such a system's cost, and America's taxpayers would resent its intrusiveness.

Moreover, as shown above, § 6501 is a statute of limitation which must be strictly construed in favor of the Government. [53] Strictly construing § 6501(e)(1)(A)(ii), and requiring a far greater level of return disclosure than the partners have made, honors the intent of Congress to encourage greater voluntary disclosure by taxpayers. With that in mind, the Court should reject the plaintiffs' attempt to refocus the inquiry on whether the IRS should have detected the

---

[52]The intent of Congress to encourage full and voluntary disclosure by taxpayers is evidenced by the Code's other provisions that give the IRS an extended statute of limitations in which to investigate and assess a tax whenever the taxpayer is less than forthcoming. *See* § 6501(c)(1) (unlimited statute of limitations when the taxpayer files a fraudulent tax return); § 6501(c)(3) (unlimited statute of limitations when no return filed). In contrast, the partners' stingy approach to tax return disclosure, if sustained, would codify the well known but unlawful "audit lottery," whereby aggressive taxpayers gamble that undisclosed transactions may not come to light before the statute of limitations runs against the IRS. *See*, *e.g.*, *Estate of Kluener v. Commissioner*, 154 F.3d 630, 637 (6th Cir. 1998); *Caulfield v. Commissioner*, 33 F.3d 991, 994 (8th Cir. 1994).

[53]*Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984).

artificial basis-inflation scheme before the three-year period under § 6501(a) expired.

Buttressing this conclusion, case law holds that the Service's actual discovery and knowledge of gross income omitted from a tax return, before the three-year statute runs, is irrelevant to whether the return meets the adequate disclosure requirement.[54] The adequacy of the partners' disclosures was fixed when they filed their tax returns, and later events cannot make the original return disclosure more adequate under § 6501(e)(1)(A)(ii). Whether, in hindsight, the IRS could have discovered additional information from other sources is immaterial. As one court recently explained:

> [T]he adequate disclosure standard is not met by a retrospective demonstration that the transaction was not so well concealed that a competent IRS agent could not have unraveled the scheme given diligent efforts. Such a standard would turn the statute on its head and turn the inquiry from the adequacy of [the taxpayer's] disclosure to the effectiveness of its efforts at concealment.

*In re G-I Holdings Inc.*, 2006 WL 3511150, *2 (D.N.J. 2006).[55] On like reasoning, and the other grounds stated herein and in our opening brief, the Court should hold as a matter of law that the partners did not adequately disclose their artificial basis-inflation scheme, and the resulting understatement of their gain from the Ranch's sale, as § 6501(e)(1)(A)(ii) requires.

---

[54] *Insulglass Corp. v. Commissioner*, 84 T.C. 203, 207 (1985).

[55] *See also Taylor v. United States*, 417 F.2d 991, 993 (5th Cir. 1969) ("[T]he Government is not to be penalized by a taxpayer's failure to reveal the facts. As Congress recognized, the Government cannot be required to act promptly on information that is not known to it.")

**CONCLUSION**

For the reasons set forth above and in our opening brief, the Court should deny the plaintiffs' motion for summary judgment, and grant the United States' cross-motion for partial summary judgment, regarding the limitation periods under 26 U.S.C. §§ 6501(e)(1)(A) and 6229(c)(2).

WHEREFORE, the defendant prays that the Court deny plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

Respectfully submitted,

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3366
(202) 540-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims
GROVER HARTT, III
Senior Litigation Counsel

s/ Gover Hartt, III
OF COUNSEL