# In the United States Court of Federal Claims

No. 06-503T
(Filed November 9, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | Taxes; TEFRA partnership |
| | * | proceeding; refund of income |
| **SALMAN RANCH LTD, a New Mexico** | * | tax; Final Partnership |
| **Limited Partnership, and William J.** | * | Administrative Adjustment; |
| **Salman, as Tax Matters Partner,** | * | extension of three-year statute of |
| | * | limitations under 26 U.S.C. |
| Plaintiffs, | * | (“I.R.C.”) § 6501(e)(1)(A) |
| | * | (2000), due to omission of |
| v. | * | amount includible as partnership |
| | * | income; extension of statute of |
| **THE UNITED STATES,** | * | limitations under I.R.C. |
| | * | § 6229(c)(2), due to substantial |
| Defendant. | * | omission of income; adequate |
| | * | disclosure. |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Adam M. Cohen, Denver, CO, for plaintiffs. Alan Poe, Holland & Hart LLP, of counsel.

David R. House, Washington, DC, with whom was Acting Assistant Attorney General Richard T. Morrison, for defendant. Grover Hartt, III, Department of Justice, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER, Judge.**

This case is before the court after argument and supplemental briefing on cross-motions for summary judgment. Taxpayers assert that the statute of limitations set forth in 26 U.S.C. (“I.R.C.”) §§ 6501 and 6229 (2000), bars the Internal Revenue Service’s (the “IRS”) proposed adjustments to partnership items of Salman Ranch, Ltd., as reflected in the Final Partnership Administrative Adjustment, issued on April 10, 2006 for the partnership’s 1999 income-tax returns. The dispositive issue is whether the Final Partnership Administrative Adjustment was issued timely under the six-year statute of limitations extension period of I.R.C. § 6501(e) or, alternatively, § 6229(c)(2), due to the substantial omission of income from both the partnership and the partners’ individual 1999 income-tax returns.

## FACTS

The following facts are undisputed for purposes of these cross-motions. On January 1, 1987, the owners of Salman Ranch (also referred to as the "ranch"), operating in Mora County, New Mexico (previously William Salman Ranch, Inc.), formed Salman Ranch, Ltd. ("Salman Ranch" or the "partnership"). Principal shareholders included William J. Salman, David M. Salman, Frances S. Koenig, and the Frances D. Salman Testamentary Trust. 1/ Other shareholders included various Salman and Koenig family members. In exchange for partnership interests in Salman Ranch, the owners of the ranch transferred their interests therein to the partnership.

On December 30, 1998, the New Mexico Secretary of State recorded the filing of certificates of limited partnership for the William J. Salman Family Limited Partnership ("WJS"), the David M. Salman Family Limited Partnership ("DMS"), and the Frances S. Koenig Family Limited Partnership ("FSK") (collectively, the "family partnerships").

On October 8, 1999, the Salman Ranch partners entered into short sales (a transaction whereby the partners borrowed securities from a third party and sold them for cash to another third party) of U.S. Treasury Notes (the "Treasury Notes"). These sales generated $10,982,373.00 in cash. On or about October 13, 1999, the partners purportedly transferred the approximately $10.9 million cash proceeds from the short sales and the accompanying short positions (the obligation following the short sale to replace the borrowed securities) to Salman Ranch. Following the transfer, Salman Ranch closed the short position on the Treasury Notes at a cost of $10,980,866.00.

On November 30, 1999, the Salman Ranch partners contributed, in accordance with each partner's respective family membership, a portion of their partnership interests in Salman Ranch to the three newly formed family partnerships: WJS, DMS, and FSK. Each family partnership, with each of the respective family members as partners, now held a partnership interest in Salman Ranch, which, in turn, held the ranch.

The Salman Ranch partners' transfer of their interests to their respective family partnerships caused a technical termination of the partnership pursuant to I.R.C.

---

1/ Plaintiffs' proposed findings of uncontroverted fact, at one point, incorrectly designate the Frances D. Salman Testamentary Trust as the "Frances D. Koenig Testamentary Trust." Plfs.' Proposed Findings of Fact No. 2, filed Feb. 1, 2007.

§ 708(b)(1)(B). 2/ The Salman Ranch's final partnership tax return for the period ending November 30, 1999, included a statement electing to adjust basis pursuant to I.R.C. §§ 754 3/ and 743(b)(1). 4/ The election to adjust the basis of partnership property purported to increase the partners' basis in the ranch to a reported amount of $6,850,276.00, a step-up in basis reflecting the original basis in the ranch, plus the value of the short-sale cash proceeds contributed to the partnership.

On December 23, 1999, the partnership sold a portion of the ranch for $7,088,588.00 and an option to acquire the remainder of the ranch at an option price of $100,000.00 and an exercise price of $656.12 per acre. Salman Ranch filed its final partnership return for the period ending December 31, 1999, on April 16, 2000. The partnership reported the sale of

---

2/ I.R.C. § 708(b)(1)(B) provides:

> (1) General rule.--For purposes of subsection (a), a partnership shall be considered as terminated only if–
>
> . . . .
>
> (B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

3/ I.R.C. § 754 provides, in pertinent part:

> If a partnership files an election, in accordance with regulations prescribed by the Secretary, the basis of partnership property shall be adjusted, . . . in the case of a transfer of a partnership interest, in the manner provided in section 743.

4/ I.R.C. § 743(b)(1) provides, in pertinent part:

> (b) Adjustment to basis of partnership property.--In the case of a transfer of an interest in a partnership by sale or exchange . . . , a partnership with respect to which the election provided in section 754 is in effect . . . shall–
>
> (1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property

the ranch that reflected gross proceeds of $7,188,588.00, a cost or other basis of $6,850,276.00, and a resulting gain of $338,312.00.

Line 6 of schedule K-1 issued by Salman Ranch to each of its partners for the 1999 tax year reported each partner's proportionate share from the sale of the ranch. Each of the three family partnerships, WJS, DMS, and FSK, also reported its partners' share from the sale of the ranch on Line 6 of schedule K-1. Each partner to Salman Ranch and to the family partnerships reported on his individual 1999 tax return an amount purporting to be the respective share of each partner from the sale of the ranch.

On April 10, 2006, the IRS issued the Final Partnership Administrative Adjustment (the "FPAA"), adjusting Salman Ranch's December 31, 1999 partnership tax return. The adjustment reduced the basis in the ranch (by deducting the partnership's obligation to close the short position). The result was a $4,567,949.00 increase to the reporting of the capital gain from the sale. Defendant contends that the basis in the ranch was inflated because it "was not reduced by the liability to close that short position." Def.'s Br. filed Apr. 2, 2007, at 4.

According to defendant, the partners' individual 1999 tax returns report that "the [T]reasury [N]otes were acquired on 'various' dates and sold on October 8, 1999[,] for a small capital loss. There is no indication in the partners' individual Form 1040 returns filed for 1999 that the partnership had assumed liability to cover the short position in Treasury Notes." Def.'s Br. filed Apr. 2, 2007, at 5 (citation omitted). Moreover, defendant maintains that the partners' individual returns did not report "the loss incurred when the partnership closed the short position in Treasury Notes and, in turn, passed that loss through to the partners as a partnership transaction," or that Salman Ranch was the entity that closed the short position on the Treasury Notes at all. Id.

Defendant deems this series of transactions, undertaken by plaintiffs, to be a "variant of the Son of BOSS tax shelter described in Notice 2000-44." Id. at 10 (citing I.R.S. Notice 2000-44, 2000-2 C.B. 255). 5/ Defendant condemns such transactions for "refus[ing] to

---

5/ Notice 2000-44 put taxpayers on notice that the IRS deemed Son of BOSS transactions as officially "listed transactions" that "may be subject to challenge under [I.R.C.] § 752, or under [Treasury Regulation] § 1.701-2 or other anti-abuse rules. In addition, in the case of individuals, these transactions may be subject to challenge under [I.R.C.] § 165(c)(2)." I.R.S. Notice 2000-44, 2000-2 C.B. 255. The United States Tax Court has described a Son of BOSS transaction, as follows:

properly treat the partnership's assumption of the partners' liability to close the short sale" by decreasing the partners' basis in the partnership according to the partnership's assumption of the liability. Id. at 10-11. Thus, according to defendant, the "basis adjustments from the proceeds and obligation contribution would have essentially offset each other providing no increase in basis." Id. at 11. Defendant insists that this improper treatment resulted in an understatement of the "gain from the sale of the ranch in the amount of $4,567,946[.00]," a position echoed in the FPAA. Id. at 5,11. The partnership and William J. Salman, its Tax Matters Partner ("plaintiffs"), filed the instant lawsuit in response to the FPAA.

## DISCUSSION

I. Standards for summary judgment

Plaintiffs' motion for summary judgment contends that any proposed increase in their tax liability sought in the FPAA is time barred by the three-year statute of limitations set

---

5/ (Cont'd from page 4.)

> Son-of-BOSS is a variation of a slightly older alleged tax shelter known as BOSS, an acronym for "bond and options sales strategy." There are a number of different types of Son-of-BOSS transactions, but what they all have in common is the transfer of assets encumbered by significant liabilities to a partnership, with the goal of increasing basis in that partnership. The liabilities are usually obligations to buy securities, and typically are not completely fixed at the time of transfer. This may let the partnership treat the liabilities as uncertain, which may let the partnership ignore them in computing basis. If so, the result is that the partners will have a basis in the partnership so great as to provide for large – but not out-of-pocket – losses on their individual tax returns. Enormous losses are attractive to a select group of taxpayers – those with enormous gains.

Kligfeld Holdings v. Comm'r, 128 T.C. 192, 194 (2007). Notice 2000-44 reflects the IRS's position that "[t]he purported losses resulting from the transactions described above do not represent bona fide losses reflecting actual economic consequences as required for purposes of [I.R.C.] § 165. The purported losses from these transactions (and from any similar arrangements designed to produce noneconomic tax losses by artificially overstating basis in partnership interests) are not allowable as deductions for federal income tax purposes." I.R.S. Notice 2000-44, 2000-2 C.B. 255.

forth in I.R.C. §§ 6501 and 6229. Defendant cross-moves for summary judgment, arguing that the time period for assessing taxes attributable to partnership items was open when the FPAA was issued by reason of the six-year extension of the statute of limitations period in section 6501(e)(1)(A) or, alternatively, in section 6229(c)(2).

Summary judgment is warranted when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Palahnuk v. United States, 475 F.3d 1380, 1382 (Fed. Cir. 2007). The fact that both parties have moved for summary judgment does not change the standard and "the court must evaluate each motion on its own merits, resolving reasonable inferences against the party whose motion is under consideration." First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir. 2003). On cross-motions for summary judgment, the duty of the court is to "grant judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Lima Surgical Assocs., Inc. v. United States, 944 F.2d 885, 888 (Fed. Cir. 1991) (internal quotations omitted) (setting forth in tax refund suit standard for resolving cross-motions for summary judgment). Given that no material facts are in dispute concerning the legal issues, resolution by summary judgment is appropriate.

II. I.R.C. §§ 6501 and 6229

Pursuant to I.R.C. § 6501(a), the IRS must assess tax on a partner's individual tax return within three years after the return was filed. I.R.C. § 6501(a). Section 6501 also sets forth the applicable statute of limitations for the assessment of partnership items unless I.R.C. § 6229(a) extends that period. AD Global Fund, L.L.C. v. United States, 481 F.3d 1351, 1352 (Fed. Cir. 2007). Section 6501(e)(1)(A) extends the limitations period to six years "[i]f the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." I.R.C. § 6501(e)(1)(A). Similarly, section 6229(c)(2) extends the limitations period applicable to partnership items when the partnership makes a substantial omission of income, defined as an omission "from gross income [of] an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." I.R.C. § 6229(c)(2).

Unlike I.R.C. § 6229(c)(2), however, section 6501(e)(1)(A) includes sub-provisions that limit the applicability of the extended six-year statute of limitations. Section 6501(e)(1)(A)(i) (the "gross receipts provision") provides an exception to the general definition of gross income, stating that, "[i]n the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services . . . prior to diminution by the cost of such sales or services." I.R.C.

§ 6501(e)(1)(A)(i). Section 6501(e)(1)(A)(ii) (the "adequate disclosure provision") provides a "safe harbor" for a taxpayer who otherwise has made a substantial omission, stipulating that,

> [i]n determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary [of the Treasury, meaning the IRS] of the nature and amount of such item.

I.R.C. § 6501(e)(1)(A)(ii). As sections 6229(c)(2) and 6501(e)(1)(A) materially differ only in this regard, the parties recognize that the resolution of this dispute turns on the critical language contained in both statutes: "omits from gross income an amount properly includible therein." I.R.C. §§ 6229, 6501(e)(1)(A). If it is determined that plaintiffs' reporting falls within this language, plaintiffs can prevent application of the six-year extended statute of limitations by establishing that the definition of gross income in the gross receipts provision applies to the partnership's income and/or that their reporting falls within the safe harbor of the adequate disclosure provision.

Accordingly, plaintiffs' arguments against the applicability of the six-year extended statute of limitations period can be distilled to three principal contentions: (1) plaintiffs did not omit any gross income, because an understatement of basis does not constitute an omission at all; (2) plaintiffs did not omit any gross income, because the gross receipts provision is applicable to plaintiffs' reporting; and, (3) even if plaintiffs' reporting is determined to be an omission of gross income, the subject returns adequately disclosed the nature and amount of the income considered omitted within the ambit of the adequate disclosure provision. Defendant rejoins that plaintiffs did omit gross income that exceeded the threshold of 25 percent of income stated in the return, that plaintiffs do not qualify for the exception to the definition of gross income set forth in the gross receipts provision, and that plaintiffs' reporting failed to disclose the nature and amount of income omitted in a manner adequate to apprise the IRS.

III. Omission from gross income

Plaintiffs' first contention depends on the construction of the language "omits from gross income an amount properly includible therein" of I.R.C. § 6501(e)(1)(A). As in all cases of statutory interpretation, the court begins with the language of the statute itself. Electrolux Holdings, Inc. v. United States, 491 F.3d 1327, 1330 (Fed. Cir. 2007). "[I]f the statutory language is unambiguous and the statutory scheme is coherent and consistent," the court's inquiry ends. AD Global Fund, 481 F.3d at 1353 (internal quotations omitted). The

court must attempt "to read the statute as a whole, to give effect to all of its parts, and to avoid, if possible, rendering language superfluous." Hawkins v. United States, 469 F.3d 993, 1000 (Fed. Cir. 2006) (internal quotations omitted); see also Mellon Bank, N.A. v. United States, 265 F.3d 1275, 1280-81 (Fed. Cir. 2001) (applying principle to I.R.C. § 67(e)(1) to avoid taxpayer's interpretation that "eliminates the second requirement of section 67(e)(1)").

Defendant maintains that plaintiffs, through their failure properly to report the basis of the ranch, omitted over $4.5 million from gross income. Plaintiffs respond that the word "omits" used in section 6501(e)(1)(A) has a settled interpretation that does not include errors from the overstatement of basis. Plaintiffs rely upon a United States Supreme Court decision interpreting 26 U.S.C. § 275(c) (1939), 6/ the predecessor statute to I.R.C. § 6501(e)(1)(A), and recent decisions applying the holding. See Colony, Inc. v. Comm'r, 357 U.S. 28 (1958); Grapevine Imports, Ltd. v. United States, 77 Fed. Cl. 505 (2007) (holding six-year extended statute of limitations period provided in I.R.C. § 6501(e)(1)(A) inapplicable to partnership's overstatement of basis); Bakersfield Energy Partners v. Comm'r, 128 T.C. 207 (2007) (same). Plaintiffs draw support from Colony's holding that, by the language "omits from gross income an amount properly includible therein," "Congress was addressing itself to the specific situation where a taxpayer actually omitted some income receipt or accrual in his computation of gross income, and not more generally to errors in that computation arising from other causes." Colony, 357 U.S. at 33. Although Colony interpreted a provision of the pre-1954 Internal Revenue Code, plaintiffs point out that the language is the same in the current I.R.C. § 6501(e)(1)(A) and that the Supreme Court in Colony determined its conclusion to be "in harmony with the unambiguous language of § 6501(e)(1)(A)." Id. at 37.

Defendant challenges plaintiffs' reliance on and interpretation of the Colony decision, arguing that I.R.C. § 6501(e)(1)(A) was a change from the pre-1954 provision and that the facts of Colony reveal that the case is "in harmony with the unambiguous language of § 6501(e)(1)(A)" to the extent that the taxpayer in Colony was in the trade or business of selling real estate – unlike plaintiffs in the case at bar. Defendant's August 9, 2007 post-argument brief cites to a recent decision interpreting the application of Colony to section 6501(e)(1)(A) in a case factually similar to the present. See Brandon Ridge Partners v.

---

6/ 26 U.S.C. § 275(c) (1939) provides:

> Omission from Gross Income. —If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

United States, No. 8:06-CV-1340-T-24MAP, 2007 WL 2209129 (M.D. Fla. July 30, 2007) (holding six-year extended statute of limitations period of I.R.C. § 6501(e)(1)(A) applicable to partnership's overstatement of basis in Son of BOSS transaction). While it is arguable whether Colony's holding carries over to section 6501(e)(1)(A) at all, 7/ the court need not resolve that controversy, because Colony, read both as anchored by its factual context and as ensuring that no provision of section 6501(e)(1)(A) is rendered superfluous by its holding, does not compel the result that plaintiffs seek. As the overriding issue turns in part on the Colony decision, an analysis of the decision in light of the parties' competing arguments and the case law is warranted.

1. Colony, Inc. v. Commissioner

The United States Supreme Court undertook in Colony to determine "the proper scope of § 275(c)" the predecessor provision to section 6501(e)(1)(A). Colony, 357 U.S. at 32. As I.R.C. § 6501(e)(1)(A), former 26 U.S.C. § 275(c) (1939), provided an extended period for assessing taxes "[i]f the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." 26 U.S.C. § 275(c) (1939). Unlike section 6501(e)(1)(A), however, section 275(c) did not contain the exception to the definition of gross income provided in the gross receipts provision or the "safe harbor" provided in the adequate disclosure provision.

The taxpayer, The Colony, Inc., was a real estate company in the principal business of developing and selling residential lots. Colony, Inc. v. Comm'r, 26 T.C. 30, 31 (1956), aff'd, 244 F.2d 75 (6th Cir. 1957), rev'd, 357 U.S. 28 (1958). The IRS determined "that the taxpayer had understated the gross profits on the sale of certain lots of land for residential purposes as a result of having overstated the 'basis' of such lots by erroneously including in their cost certain unallowable items of development expense." Colony, 357 U.S. at 30.

---

7/ See CC & F W. Operations Ltd. P'ship v. Comm'r, 273 F.3d 402, 406 n.2 (1st Cir. 2001) ("Whether Colony's main holding carries over to section 6501(e)(1) is at least doubtful. That section's first 'special rule' adopts Justice Harlan's gross receipts test but only for sales of goods and services. The arguable implication is that it does not apply under section 6501 to other types of income." (citation omitted)). The Colony decision itself stated that the Court granted certiorari "because the question as to the proper scope of § 275(c), *although resolved for the future by § 6501(e)(1)(A)* . . . remains one of substantial importance in the administration of the income tax laws *for earlier taxable years*." Colony, 357 U.S. at 32 (emphasis added) (citations omitted).

The Supreme Court in Colony interpreted the "critical statutory language, 'omits from gross income an amount properly includible therein.'" 357 U.S. at 32 (quoting 26 U.S.C. § 275(c) (1939)). The Supreme Court ultimately rejected the Commissioner's focus on the word "amount" and his buttressing the IRS's position by "touch[ing] lightly on the word 'omits' and bear[ing] down hard on the words 'gross income.'" Id. (quoting 26 U.S.C. § 275(c) (1939)). Instead, the Court decided to take "full account of the word 'omits,'" which the Court credited with its commonly attributed meaning of "'to leave out or unmentioned; not to insert, include or name.'" Id. (quoting Webster's New International Dictionary (2d ed. 1939)). The Court confirmed that this understanding was echoed in the legislative history of section 275(c) which revealed Congress's "use of such phrases as 'failed to disclose' or 'to leave out' items of income." Id. at 35.

Applying the law to the facts of the case, the Court noted that the taxpayer reported accurately its gross receipts, not having omitted any income receipt or accrual, although The Colony, Inc., had overstated its basis. To the Colony Court, the common definition of "omit," reinforced by the provision's legislative history, militated in favor of a ruling that the taxpayer had not omitted gross income in its reporting because an overstatement of basis did not amount to an omission of a specific receipt or accrual of an income item. Given the facts forming the legal issue before the court, Colony's holding essentially adopted a "gross receipts" test for determining an omission from gross income: an omission from gross income is found where a taxpayer entirely omits a gross receipt.

2. Recent case law

Reexamination of Colony has resurfaced during the past decade by courts asked to apply the current section 6501(e)(1)(A). The decisions cited by the parties were not issued by the United States Supreme Court or the United States Court of Appeals for the Federal Circuit and thus do not constitute binding precedent on the United States Court of Federal Claims. Nonetheless, following the sound practice of "accord[ing] great weight to the decisions of our sister circuits when the same or similar issues come before us," Admiral Fin. Corp. v. United States, 378 F.3d 1336, 1340 (Fed. Cir. 2004), the court seeks instruction from these cases and their holdings, as well as the recent Tax Court decision that appears to trump its own precedents.

1) Bakersfield Energy Partners v. Commissioner

The partners sold their partnership interests in Bakersfield Energy Partners ("BEP"), owner of interests in oil and gas reserves, to Bakersfield Resources, L.L.C. ("BRLLC"), thereby causing a technical termination of BEP. BEP then made an election pursuant to I.R.C. §§ 754 and 743(b) to adjust basis in the partnership assets to reflect BRLLC's basis

in the acquired BEP partnership interests. BEP sold its interests in the oil and gas reserves during the 1998 taxable year, reporting a stepped-up basis in the reserves from the I.R.C. § 754 basis adjustment. The IRS issued an FPAA on October 4, 2005, adjusting the basis reflected on BEP's Form 4797 (Sales of Business Property) to zero. BEP moved for summary judgment on the ground that the three-year statute of limitations had run and that an "overstatement of basis is not an omission from gross income for purposes of the extended period of limitations under section 6501(e)(1)(A) or, in the alternative, that the amount omitted was 'disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.' Sec[tion] 6501(e)(1)(A)(ii)." Bakersfield, 128 T.C. at 210.

The Tax Court found that "the precedents interpreting section 6501(e)(1)(A)(ii) have been held equally applicable to section 6229(c)(2)," and proceeded to consider the application of Colony to the facts presented. Id. at 212. The court concluded that "[t]he precise holding of the Supreme Court in Colony, Inc. v. Commissioner . . . was that the extended period of limitations applies to situations where specific income receipts have been 'left out' in the computation of gross income and not when an understatement of gross income resulted from an overstatement of basis." Id. at 213. While the IRS in Bakersfield argued that Colony's holding should be understood as limited to the current gross receipts provision of I.R.C. § 6501(e)(1)(A)(i), the court was "unpersuaded" and did "not believe that either the language or the rationale of Colony, Inc. [could] be limited to the sale of goods or services by a trade or business." Id. at 215. 8/ The Tax Court granted summary judgment in favor of BEP, concluding that the six-year statue of limitations did not apply to BEP's overstatement of basis.

---

8/ The Tax Court decision in Bakersfield failed to discuss three prior inconsistent opinions of the Tax Court applying I.R.C. § 6501(e)(1)(A). See Estate of Fry v. Comm'r, 88 T.C. 1020 (1987) (applying I.R.C. § 6501(e)(1)(A) to omission from gross income arising out of dispute over value of parcel of land); Insulglass Corp. v. Comm'r, 84 T.C. 203 (1985) (holding gross receipts provision provides exception, for trade or business, to general meaning of gross income provided in section 61(a) so reporting of gross proceeds alone from sales of commodities would not prevent application of I.R.C. § 6501(e)(1)(A)); Schneider v. Comm'r, 49 T.C.M. (CCH) 1032 (1985) (holding that gross receipts provision supplies exception to general definition of gross income in case of trade or business and applying I.R.C. § 6501(e)(1)(A) to omission of income).

2) Grapevine Imports, Ltd. v. United States

The partnership, Grapevine Imports, Ltd. ("Grapevine"), filed a partnership return for 1999 showing a net short term loss of $21,884. The partners, the Tigues, filed their joint income tax return for 1999 showing a total loss of $973,087.00 owing, in part, to partnership transactions. The Tigues carried this loss forward to future taxable years along with a net operating loss carryover from 1998 to eliminate taxable income in the amount of $730,161.00. The IRS issued an FPAA to Grapevine adjusting the basis in Grapevine by $10 million for the 1999 tax year. Plaintiffs conceded, for purposes of their motion for summary judgment, that basis used to calculate partnership losses was overstated, but asserted that the FPAA was time barred by the statute of limitations contained in I.R.C. § 6229(a).

In determining whether the partnership's 1999 tax year was open by means of the six-year extended statute of limitations period in I.R.C. § 6501(e)(1)(A), the trial court revisited the Colony decision. After reciting the facts and holding of Colony, the Grapevine court noted that "a judicial debate erupted over whether the 1954 version of section 6501(e)(1)(A) is triggered only where an item of income is entirely omitted from a return," further observing that "several cases have questioned the continuing viability of Colony in light of the 1954 amendments to section 6501(e)(1)(A)." Grapevine, 77 Fed. Cl. at 509 (citing CC & F W. Operations Ltd. P'ship v. Comm'r, 273 F.3d 402, 406 n.7 (1st Cir. 2001); In re G-I Holdings, Inc., 2006 WL 2595264, at 5-6 (D.N.J. Sept. 8, 2006); Insulglass Corp. v. Comm'r, 84 T.C. 203, 210 (1985); Schneider v. Comm'r, 49 T.C.M. (CCH) 1032, 1034-35 (1985)). 9/ Countervailing that trend, the court cited the Tax Court's recent decision in Bakersfield, which had rejected the view that Colony's application was limited to a trade or business selling goods or services under the I.R.C. § 6501(e)(1)(A)(i) gross receipts provision.

Invoking the duty to follow the precedent of the Supreme Court, the Grapevine court determined that Colony's construction of 26 U.S.C. § 275(c) (1939) constituted binding precedent as to the 1954 version of I.R.C. § 6501(e)(1)(A). The court reasoned that, "[f]rom a 'plain meaning' standpoint, there is utterly no indication that the common understanding of 'omits,' which the Supreme Court took as requiring an entire income item to be missing, somehow shifted in the two decades between the passage of the 1934 Revenue Act and the 1954 Code." Id. at 510. The court also noted that, in the interval, Congress made no attempt to alter or remove the word "omit," and that the Supreme Court characterized its Colony holding as being "in harmony" with the 1954 provision. Id. at 510-11. While suggesting that the test adopted for the word "omits" in Colony "render[ed] surplusage Congress' reference

9/ See also supra note 7.

to that same test as applying [i]n the case of a trade or business" in section 6501(e)(1)(A)(i), the court in Grapevine ultimately concluded that the addition of the gross receipts provision and the adequate disclosure provision to I.R.C. § 6501(e)(1)(A) did not "somehow modif[y] section 6501(e)(1)(A), which is precisely the same as the provision construed by the Supreme Court in Colony." Id. at 510 n.7 (internal quotations omitted). The Grapevine court ruled:

> [T]his court sees no basis for limiting the Supreme Court's decision to cases involving the sale of goods or services by a trade or business. To be sure, that was the factual setting in Colony. But, neither the Supreme Court's construction of the word "omits," its examination of the legislative history, nor the remainder of its *ratio dicendi* reasonably can be confined to that setting.

Id. at 511.

3) Brandon Ridge Partners v. United States

Mr. Jefferson engaged in a series of transactions, along with his wife, in order to reduce the taxable gain on the sale of a large amount of stock with a low basis. In mid-November 1998, Mr. Jefferson formed NJ Investments, L.L.C., Brandon Ridge Partners, and Brandon Ridge, Inc., an S-corporation. On November 24, 1998, Mr. Jefferson, acting through NJ Investments, L.L.C., engaged in a short sale of Treasury Notes, generating cash proceeds of $3,258,458.33. The following day, NJ Investments, L.L.C., transferred both the cash proceeds form the short sale and the obligation to cover the short position to Brandon Ridge Partners. On November 27, 1998, Brandon Ridge Partners covered the short sale. On December 2, 1998, Mr. Jefferson contributed his stock to Brandon Ridge Partners. On the next day, the Jeffersons conveyed 99% of their partnership interests in Brandon Ridge Partners to Brandon Ridge, Inc., thereby causing a technical termination of the partnership. The partnership then made an election, pursuant to I.R.C. § 754, to adjust its basis in the partnership assets, purporting to step-up the basis in the stock by the $3,258,458.33 cash proceeds from the short sale. On December 4, 1998, Brandon Ridge Partners sold the stock for $3,315,000.00, reporting a gain on the sale of only $31,042.00.

On February 22, 2006, the IRS issued an FPAA taking the position that the basis in the stock was overstated and did not account for the contribution of both the short position liability to the partnership and the cash proceeds from the short sale. In response, Brandon Ridge Partners filed suit and sought summary judgment, arguing that the six-year extended statute of limitations of I.R.C. § 6501(e)(1)(A) was inapplicable because no omission from gross income had occurred or that, alternatively, even if an omission occurred, the gross income from the sale of the stock was disclosed adequately.

The federal district court reviewed the holding in Colony and the recent decisions in Bakersfield and Grapevine in applying Colony to the current I.R.C. § 6501(e)(1)(A). As in Grapevine, the court noted that the failure to adopt the IRS's position that Colony's gross receipts test applies only to trades or businesses selling goods or services would render the gross receipts provision of section 6501(e)(1)(A)(i) superfluous. The court observed that case law prior to Bakersfield and Grapevine supported the IRS's position. Brandon Ridge, No. 8:06-cv-1340-T-24MAP, 2007 WL 2209129, at *6-7 (citing Taylor v. United States, 417 F.2d 991, 993 (5th Cir. 1969); Phinney v. Chambers, 392 F.2d 680, 685 (5th Cir. 1968); Schneider, 49 T.C.M. (CCH) 1032; Insulglass, 84 T.C. at 210). 10/ The court also compared section 6501(e)(1)(A) to I.R.C. § 6501(e)(2) regarding estate and gift taxes which provides a six-year extended statute of limitations when a "'taxpayer omits . . . items includible in [the] gross estate or [the] total gifts.'" Id. at *7 (quoting I.R.C. § 6501(e)(2)). Because Congress used the word "item" in that section, instead of "amount" as in I.R.C. § 6501(e)(1)(A), the court reasoned:

> This suggests that the extended limitations period in § 6501(e)(2) regarding estate and gift taxes only applies when an item is completely left out, while the extended limitations period in § 6501(e)(1) regarding income taxes applies

---

10/ The Brandon Ridge court observed that the Fifth Circuit precedent set in Phinney bound the court. Phinney held that

> the enactment of subsection (ii) as a part of section 6501(e)(1)(A) makes it apparent that the six year statute is intended to apply where there is either a complete omission of an item of income of the requisite amount or misstating of the nature of an item of income which places the "commissioner . . . at a special disadvantage in detecting errors."
>
> This provision of the statute [section 6501(e)(1)(A)(ii)] says that in determining whether "an amount" had been omitted from gross income, there shall not be taken into account any amount which is omitted if such amount is so shown on the return as to make it reasonably possible for the Secretary to detect errors. This, it seems to us, is to say that if an item of income is shown on the face of the return or an attached statement that is not shown in a manner sufficient to enable the secretary by reasonable inspection of the return to detect the errors then it is the omission of "an amount"' properly includ[i]ble in the return.

392 F.2d at 685 (quoting Colony, 357 U.S. at 36).

> both in cases where an item of income is completely left out and in situations where the amount of gross income reported is understated due to an error in the calculation.

Id. The court concluded that "the phrase 'omits from gross income an amount properly includible therein' encompasses not only situations where an item of income is completely left out, but also situations where the amount of gross income is understated due to an error in the calculation." Id. (quoting I.R.C. § 6501(e)(1)(A)).

Because the court concluded that the partnership omitted gross income in an amount greater than 25 percent of the amount of gross income stated in the return, the court proceeded to determine whether the partnership qualified for the safe harbor afforded by the adequate disclosure provision. The court first determined that both the individual partner and the partnership returns should be examined in determining whether adequate disclosure had been made. Reading the adequate disclosure provision in light of its purpose to give the taxpayer the shorter limitations period when the taxpayer omits income, but discloses the nature and amount of the omission in substance, the court concluded that "[i]f an item of income is not shown on the face of the return or an attached statement 'in a manner sufficient to enable the [IRS] by reasonable inspection of the return to detect the errors,' then the item is not adequately disclosed." Id. at *10 (quoting Phinney, 392 F.2d at 685).

Upon reviewing the information contained in the returns, the court found that

> what is not disclosed in any of the returns is the fact that the proceeds of the short sale, *along with the obligation to cover the short sale,* was contributed to the Partnership, and the Jeffersons did not reduce their basis in the Partnership by the value of the obligation to cover the short sale that was assumed by the Partnership. Additionally, the returns do not disclose that the basis of the FES stock was increased by $3,258,458.33 or that the FES stock was the only "Investment Asset" held by the Partnership.

Id. Based on this predicate finding, the court concluded that the "substance of the transactions . . . was not disclosed in a manner that was adequate to apprise the IRS of the true amount of capital gain that resulted from the sale." Id. at *11. Consequently, the six-year extended statute of limitations applied.

3. Colony's application

In arguing that Colony (supported by the recent decisions of Bakersfield and Grapevine) governs this case, plaintiffs emphasize the Colony Court's statement that its

conclusion is "in harmony with the unambiguous language of § 6501(e)(1)(A)." Colony, 357 U.S. at 37. This, plaintiffs argue, requires the court to apply the holding in Colony – that the language "omits from gross income an amount properly includible therein" only embraces situations "where a taxpayer actually omitted some income receipt or accrual in his computation of gross income"– with its determinative impact to the same language employed in section 6501(e)(1)(A). Id. at 33. However, a full explication of the "in harmony" statement undermines this contention.

The Court stated that its conclusion in Colony "is in harmony with the *unambiguous* language of § 6501(e)(1)(A)." Id. at 37 (emphasis added). An earlier passage in the decision concluded that the language "omits from gross income an amount properly includible therein" in section 275(c) "cannot be said [to be] unambiguous," which was the justification for the Court's examining legislative history. Id. at 33. As a matter of logical consistency, for the Court to consider section 275(c) ambiguous and section 6501(e)(1)(A) unambiguous, with both containing the same "omits from gross income an amount properly includible therein" language, I.R.C. § 6501(e)(1)(A) must differ in some respect from section 275(c). Because section 6501(e)(1)(A) only differs from section 275(c) in its inclusion of the gross receipts and adequate disclosure provisions, the Court's statement that its conclusion "is in harmony with the unambiguous language of § 6501(e)(1)(A)," must signify that its conclusion is in harmony with the addition of those two provisions. Id. at 37.

Understanding that the Court's decision in Colony is in harmony with the I.R.C. § 6501(e)(1)(A) gross receipts and adequate disclosure provisions leads to a straightforward interpretation of Colony's applicability to the scope of the current section 6501(e)(1)(A). In Colony the Supreme Court addressed the applicability of section 275(c) to a taxpayer engaged in the trade and business of developing and selling residential real estate lots. Colony, 26 T.C. at 31. Customarily, in a trade or business, gross income from the sale of goods or services is determined by subtracting the "Cost of Goods Sold" or "COGS" from the gross receipts of the sales. In re Lilly, 76 F.3d 568, 572 (4th Cir. 1996); Lawson v. Comm'r, 67 T.C.M. (CCH) 3121, *4-6 (1994). However, I.R.C. § 6501(e)(1)(A)(i) provides that, "[i]n the case of a trade or business, the term 'gross income' means the total of the amounts received or accrued from the sale of goods or services . . . prior to diminution by the cost of such sales or services." I.R.C. § 6501(e)(1)(A)(i). Thus, section 6501(e)(1)(A)(i) provides an exception to the customary definition of gross income in the event of sales of goods or services by a trade or business, allowing that "gross income," as used in section 6501(e)(1)(A), will be defined as the "gross receipts" alone of those sales. Under I.R.C. § 6501(e)(1)(A), in order for an omission from gross income to arise in the context of sales of goods or services by a trade or business (which under the I.R.C. § 6501(e)(1)(A)(i) gross receipts provision actually should read "omits from gross 'receipts'"), an omission of a receipt must occur. The Colony Court's declaration that section

275(c) is "limited to situations in which specific receipts or accruals of income items are left out of the computation of gross income" makes eminent sense because The Colony, Inc. was a trade or business selling goods or services. Colony 357 U.S. at 33. The Court's conclusion that The Colony, Inc. had not omitted any gross income and thus was not liable under section 275(c) is "in harmony with the unambiguous language of s 6501(e)(1)(A)," in that the resolution would be the same under either provision. Id. at 37.

Plaintiffs' contention that a taxpayer never may be liable for an omission from gross income due to an overstatement of basis is an impermissibly broad rendering of the Colony holding. It is more accurate to say that Colony held that section 275(c) – in harmony with the unambiguous language of I.R.C. § 6501(e)(1)(A) – only imposes liability on a taxpayer engaged in a trade or business selling goods or services where the taxpayer "omitted some income receipt or accrual in his computation of gross income." Id. at 33. Thus, Colony does not speak generally, as plaintiffs urge, to the meaning of the word "omit," and the Supreme Court did not set forth a general prescription for every instance in which an omission of income may be contested. The term "omit," as used in section 275(c) and again in I.R.C. § 6501(e)(1)(A), cannot be defined and understood without reference to the qualifying term "gross income" and, consequently, to the nature of the taxpayer's business. Plaintiffs advocate that deciding whether an omission occurred is a threshold step before reaching the remaining language of the statute. Yet, the Supreme Court did not mandate such an approach in Colony, and this court is not persuaded to follow such an approach. Instead, the court must import the meaning of "gross income" in the Internal Revenue Code in order to ascertain what constitutes "omits from gross income."

4. When "omits" means "omits"

According to I.R.C. § 61(a), gross income is defined to include "[g]ains derived from dealings in property." I.R.C. § 61(a)(3); see also Treas. Reg. § 1.61-6(a). Gains from the disposition of property later are defined as "the excess of the amount realized therefrom over the adjusted basis." I.R.C. § 1001(a); see also Treas. Reg. § 1.61-6(a). Thus, "gross income" in the context of the sale of property refers to the calculation of the "gain" by subtracting the basis from the gross receipts of the sale. This definition of gross income requires the court to determine what constitutes an "omission from gross income," pursuant to I.R.C. § 6501(e)(1)(A), by asking whether an "omission from gain" occurred. Because gain, unlike gross receipts, is an amount that is determined via mathematical calculation (subtracting basis from gross receipts), an omission from gain may not occur only through omission of a gross receipt (which is but one figure used to derive gain), as in Colony and under the gross receipts provision, but also may occur due to an overstatement of the basis figure (the second figure used to derive gain).

Plaintiffs' construction of this critical term "omits" without reference to the term "gross income" focuses only on one component of the calculation, thereby excluding consideration of one of the two figures that generates the gain – the calculation of basis – and in tandem rendering the gross receipts provision of I.R.C. § 6501(e)(1)(A)(i) superfluous. As this result cannot be sanctioned, unless plaintiffs can invoke the exception to the definition of gross income provided in the gross receipts provision of I.R.C. § 6501(e)(1)(A)(i) and applied in Colony, the customary definition of gross income found in I.R.C. § 61(a) applies.

IV. The gross receipts provision

Plaintiffs next argue that the sale of the ranch is covered by I.R.C. § 6501(e)(1)(A)(i), the gross receipts provision. Plaintiffs bolster this contention by pointing out that the partnership was engaged in the trade or business of ranching and that the sale of the ranch qualifies as the sale of a "good." Plfs.' Br. filed May 14, 2007, at 11. Plaintiffs admit that the business of ranching involves the sale of crops and cattle – not the sale of ranches. See Plfs.' Response to Def.'s Proposed Findings of Fact No. 1, filed May 14, 2007. Plaintiffs reported their income from the sale of the ranch on Form 4797 as section 1231 gain – *i.e.*, gain from the sale of real property used in a trade or business. See I.R.C. § 1231. This is distinct from the calculation of Salman Ranch's "Farm Income" reported on Schedule F attached to the partnership's Form 1065, which reflected the "[s]ales of livestock and other items . . . bought for resale," and "[s]ales of livestock, produce, grains and other products. . . raised." DX B at B6. The amount stated on Schedule F is the only figure comprising plaintiffs' "trade or business income" reported in lines 1-8 of Form 1065. DX B at B2. Section 1231 income is treated quite differently for tax purposes than "trade or business income," which is reported and taxed as ordinary income. Plaintiffs nonetheless contend that the phrase "sale of goods and services," as used in I.R.C. § 6501(e)(1)(A)(i), is not restricted to sales in the ordinary course of business or sales from inventory.

I.R.C. § 6501 provides no definition for "sale of goods and services." 11/ However, the Colony Court's treatment of The Colony, Inc.'s reporting of trade or business income persuades the court that goods and services cannot be defined in the broad fashion that plaintiffs seek. The Court analyzed The Colony, Inc.'s gross income as gross receipts because the taxpayer was in the trade or business of selling residential real estate lots. The Colony, Inc. reported its real estate lot sales in its tax return as trade or business income. Plaintiffs in the instant case, in contrast, reported the sale of the ranch as section 1231 property used in a trade or business – not trade or business income from the sale of crops and cattle reported in plaintiffs' Schedule F. Plaintiffs' own reporting of the one-time sale of the ranch does not recognize the sale as having produced trade or business income from the sale of goods or services. Thus, the sale of the ranch does not qualify for treatment under I.R.C. § 6501(e)(1)(A)(i) as the sale of goods or services by a trade or business. As such, the gross receipts provision does not apply to plaintiffs' sale of the ranch.

---

11/ Plaintiffs' contention that the ranch qualifies as a "good," as defined elsewhere in the Internal Revenue Code, is unpersuasive. Plaintiffs point to Treasury Regulation 1.170A-13(f)(5) as an example of a broad definition of the term "goods or services," that encompasses "property." Treas. Reg. § 1.170A-13(f)(5) ("Goods or services means cash, property, services, benefits, and privileges."). This Treasury Regulation, however, deals with "Substantiation of charitable contributions of $250 or more," appearing in the section of the Internal Revenue Code covering itemized deductions in determining taxable income. Id. The regulation defines "goods or services" in the context of requiring a "donee organization" to substantiate in writing whether it "*provides* any goods or services in consideration" of a charitable contribution. Id. (emphasis added). As a donee organization need not be a trade or business at all under I.R.C. § 170(c), which defines donee organizations to include, among other entities, governments, trusts, and foundations, see I.R.C. § 170(c), the provision cannot be conclusive in the Internal Revenue Code section on limitations periods determined in reference to the calculation of gross income from the sale of goods or services by a trade or business. As such, Treasury Regulation 1.170A-13(f)(5) does not resolve whether the term "goods or services" in section 6501(e)(1)(A)(i) encompasses the sale of Salman Ranch.

Plaintiffs' reliance on defendant's characterization of the sale of properties in Colony as being a sale of "goods," Def.'s Br. filed Apr. 2, 2007, at 20, is equally unavailing. The characterization is colored by the fact that plaintiff in Colony actually was in the trade or business of selling real estate properties; thus, it equally supports defendant's interpretation of the term as encompassing only goods or services sold in the ordinary course of business or from inventory.

Because plaintiffs cannot invoke the exception to the definition of gross income provided in the gross receipts provision, the general definition of gross income applies in determining whether plaintiffs "omitted from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return." I.R.C. § 6501(e)(1)(A). The parties have stipulated to the accuracy of the adjustments made to plaintiffs' returns for purposes of this motion. Plfs.' Response to Def.'s Proposed Finding of Fact No. 19, filed May 14, 2007. The finding follows that plaintiffs' overstatement of the basis in the ranch resulted in an omission from the gain reported on the sale of the ranch of over $4.5 million that was properly includible in gross income. This omission is well in excess of 25 percent of the amount of gross income stated in the returns. 12/ Therefore, unless plaintiffs qualify for the safe harbor afforded by I.R.C. § 6501(e)(1)(A)(ii) through adequate disclosure, the six-year statute of limitations applies, and the FPAA was timely issued.

V. The adequate disclosure provision

Invoking the adequate disclosure provision of section 6501(e)(1)(A), plaintiffs argue that "summary judgment in favor of the Plaintiffs is still warranted because the Partnership's Return disclosed the nature and amount of the income that would be considered to be omitted." Plfs.' Br. filed Feb. 1, 2007, at 15. I.R.C. § 6501(e)(1)(A)(ii) provides:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

---

12/ In response to defendant's proposed findings of fact regarding whether omissions of gross income by plaintiffs were in excess of 25 percent of gross income stated in the return, plaintiffs disputed that any omission of gross income occurred at all. Plfs.' Response to Def.'s Proposed Finding of Fact Nos. 26, 32, 35, filed May 14, 2007. However, this matter does not appear to be one of substantial controversy between the parties, as the omissions found by the court are so substantial as to render any "quibbling over distinct items in the Forms 1040" incapable of bringing the omitted gross income to stated gross income ratio below the 25-percent threshold. See Def.'s Br., filed Apr. 2, 2007, at 19. Although the amounts will be proved at trial, the fact that the threshold was exceeded is beyond material dispute. See RCFC 56(c).

1. Returns considered

The court first must determine which returns are used to evaluate adequate disclosure. Defendant argues that the court may only look to a partner's individual return to determine adequate disclosure. Defendant directs the court to I.R.C. § 6501(a), which was amended in 1997 to provide: "For purposes of this chapter, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)." I.R.C. § 6501(a). Plaintiffs argue that, in applying I.R.C. § 6501, courts have long looked to the partnership return, in addition to the return of an individual partner. See Benson v. Comm'r, 91 T.C.M. (CCH) 925, *4 (2006); Hoffman v. Comm'r, 119 T.C. 140, 147 (2002); Robinson v. Comm'r, 117 T.C. 308, 317 (2001); Harlan v. Comm'r, 116 T.C. 31, 54 (2001). Plaintiffs also direct the court to Treasury Regulation 1.702-1(c)(2), which states:

> In determining the applicability of the 6-year period of limitation on assessment and collection provided in section 6501(e) (relating to omission of more than 25 percent of gross income), a partner's gross income includes his distributive share of partnership gross income (as described in section 6501(e)(1)(A)(i)). In this respect, the amount of partnership gross income from which was derived the partner's distributive share of any item of partnership income, gain, loss, deduction, or credit (as included or disclosed in the partner's return) is considered as an amount of gross income stated in the partner's return for the purposes of section 6501(e).

Treas. Reg. § 1.702-1(c)(2). Defendant discounts plaintiffs' reliance on cases adjudicating tax years prior to the 1997 amendment and Treasury Regulation 1.702-1(c)(2) promulgated in 1960, pronouncing, "'Statutes trump conflicting regulations.'" Def.'s Br. filed May 14, 2007, at 10 (quoting Caldera v. J.S. Alberici Constr. Co., 153 F.3d 1381, 1383 n.** (Fed. Cir. 1998).

The only case of which this court is aware that has addressed the amended regulation is Brandon Ridge. In a factual situation similar to this case, the court in Brandon Ridge concluded:

> While the language of the statute does provide that the term, "return," refers to the return required to be filed by the taxpayer, the Court is not persuaded that the Partnership's Form 1065 Return and Brandon Ridge, Inc.'s Form 1120S are not relevant to the issue of whether there was adequate disclosure in this case. The case law regarding tax years prior to 1998 provides that if the taxpayer's individual return contains references to a pass-through entity, such

> as a partnership or S-corporation, the returns of the pass-through entity should be considered together with the taxpayer's individual return. The Court finds that this case law can be reconciled with the 1997 amendment to § 6501(a): Under § 6501(a), a court only looks at the taxpayers return unless there are references to income in that return from a pass-through entity, in which case, the returns from the pass-through entity can also be considered.

Brandon Ridge, No. 8:06-cv-1340-T-24MAP, 2007 WL 2209129, at *8 (citations omitted).

This court notes that there appears to be no ambiguity in I.R.C. § 6501(a) regarding the meaning of the word "return," but also is cognizant of plaintiffs' well-founded concerns with restricting a review for adequate disclosure to the individual partners' returns. In an abundance of caution, this court will analyze whether plaintiffs meet the standard for adequate disclosure after examining both the individual partners' returns and the partnership returns. Only if the court finds that the adequate disclosure standard is met in examining the returns of the individuals and partnership together need the court consider whether that standard would be met examining only the partners' individual returns.

2. Adequacy of disclosure

I.R.C. § 6501(e)(1)(A)(ii) provides, in full:

> In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

A court inquiring into whether something is disclosed adequately must be mindful of the underlying purpose implemented by Congress's enactment of the extended statute of limitations period. Language from the Supreme Court's Colony opinion is again instructive:

> We think that in enacting § 275(c) [predecessor to section 6501(e)(1)(A)] Congress manifested no broader purpose than to give the Commissioner an additional two years [now, three years] to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from

> an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage.

357 U.S. at 36. The "clue" standard from Colony does not require "a clue sufficient to intrigue the likes of Sherlock Holmes," nor does it require a detailed disclosure of every precise fact that may underlie a transaction. CC & F W. Operations Ltd. P'ship v. Comm'r, 80 T.C.M. (CCH) 345, *4 (2000); see also CC & F W. Operations, 273 F.3d at 407. Instead, the touchstone is the purpose behind the extension of the limitations period – "to give the taxpayer the shorter limitations period where the taxpayer omitted a particular income item from its calculations but disclosed it in substance." CC & F W. Operations, 273 F.3d at 408.

Plaintiffs contend that "the Partnership disclosed the nature and amount of the allegedly omitted income. . . . [because] the full amount of the alleged omission was reported by the full reporting of the gross receipts of the sale." Plfs.' Br. filed May 14, 2007, at 13-14. This proposition is belied by plaintiffs' erroneous understanding of what constitutes an omission from gross income. Absent the exception provided for a trade or business selling goods or services in the gross receipts provision, an omission of gross income can occur either in the omission of a gross receipt or in an overstatement of basis. Thus, resting on the contention that gross receipts from the sale of the ranch were reported fully, standing alone, will not suffice.

The omission from gross income in the case at bar resulted from plaintiffs' alleged overstatement of basis – the erroneous calculation of which, according to defendant, was due to plaintiffs' failure properly to attribute the obligation to close, and subsequent closure, by the partnership of the short position on the Treasury Notes. The dispute between the parties centers on the calculation of the basis in the ranch: Plaintiffs rely on the I.R.C. § 754 election to step-up basis in the ranch to reflect the contribution of the proceeds from the sale of the Treasury Notes to the partnership, whereas defendant contends that no basis adjustment is appropriate because the Treasury Notes short sale is, essentially, a wash due to the contemporaneous transfer to the partnership of the obligation to close the short position on the Treasury Notes. The substance of the contested omission, of course, is the effect of the short sale on the calculation of the ranch's basis. The amount allegedly omitted as a result of this disputed calculation is approximately $4.5 million. The language of I.R.C. § 6501(e)(1)(A)(ii) identifies this $4.5 million figure as the "such amount," which must be "disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." I.R.C. § 6501(e)(1)(A)(ii). The appropriate question becomes whether the partnership and individual returns disclosed in substance the amount and nature of the $4.5 million omission.

An examination of the partnership returns reveals that plaintiffs reported the gross proceeds from the sale of the ranch as $7,188,588.00, the basis in the ranch as $6,850,276.00, and the net gain on the sale as $338,312.00. DX B at B9. The Treasury Notes short-sale transaction that took place is not disclosed in the partnership returns. An examination of the individual partners' returns shows reporting of the Treasury Notes purchased on "various" dates and sold at a small loss. DX C, Form 1040 Schedule D, at C9; DX D, Form 1040 Schedule D, at D7. The individual partners' returns do not indicate that the sale of the Treasury Notes was a short sale or that the partnership had any involvement whatsoever in the transactions.

To be cognizant of the "amount" omitted ($4.5 million), one must have an idea of the method by which plaintiffs reached their calculation of basis. To understand how plaintiffs reached their basis step-up figure, one must have a "clue" that a transfer of the proceeds from the short sale of the Treasury Notes to the partnership took place – a fact that is not apparent from the face of the returns viewed together. Even to recognize that a dispute could arise over this calculation – that an omission even possibly occurred – one must also have a "clue" as to the "nature" of the transaction: that the partners transferred an accompanying obligation to close the short position, along with the transfer of proceeds from the short sale of Treasury Notes to the partnership. The critical facts that the Treasury Notes transaction was a short sale and that the accompanying obligation to close the short position was transferred to the partnership, along with the proceeds, are not disclosed in substance or by implication anywhere in the returns.

The partnership returns and the partners' individual returns do not disclose the nature and amount of the omitted gross income in a manner adequate to apprise the IRS. Plaintiffs' inadequate reporting put the IRS at a "special disadvantage in detecting errors," as recognized in Colony, 357 U.S. at 36, because the IRS had no clue as to how the partnership arrived at its basis figure or that this calculation would be a point of potential dispute due to the nature of the short sale transaction in producing both a transfer of proceeds to the partnership and an accompanying obligation to close the short position. Plaintiffs therefore may not take advantage of the safe harbor afforded by the adequate disclosure provision of I.R.C. § 6501(e)(1)(A)(ii). Because plaintiffs have not met the adequate disclosure standard in an examination of both the individual partners' and partnership returns, the court need not consider whether that standard has been met in an examination of the individual partners' returns alone.

Defendant has carried its burden to prove that the extended six-year statute of limitations of section 6501(e)(1)(A) applies due to an over-25 percent omission from gross income. Plaintiffs have failed to establish that they qualify for the exception to the definition

of gross income provided in the gross receipts provision or that they qualify for the safe harbor of the adequate disclosure provision. The FPAA was timely issued.

## CONCLUSION

Accordingly, based on the foregoing, defendant's cross-motion for partial summary judgment is granted, and plaintiffs' motion for summary judgment is denied. Accordingly,

**IT IS ORDERED**, as follows:

Absent a timely request to certify an interlocutory appeal, 28 U.S.C. § 1292(d)(2) (2000), the parties shall submit a Joint Status Report by November 20, 2007, proposing a schedule of pretrial proceedings, and trial, not to exceed ten days, beginning no later than June 16, 2008.

s/ Christine O.C. Miller

___________________________________

**Christine Odell Cook Miller**
Judge